C.A. No.  16-1422

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

United States of America,
Appellee,

v.

Marijan Cvjeticanin,
Appellant.

---

On Appeal From an Order of the
The United States District Court for the
District of  New Jersey
(D.N.J. Crim. No. 14-274)
Sat Below:  Hon. Michael A. Shipp U.S.D.J.

---

Brief & Appendix, Volume One (pages 1-14)
of Appellant Marijan Cvjeticanin

LGR LAW, LLC
Lorraine S. Gauli-Rufo, Esq.
130 Pompton Avenue
Verona, NJ 07044
Office (973) 239-4300
Fax     (973) 239-4310

On the Brief:
Lorraine S. Gauli-Rufo, Esq.

# <u>TABLE OF CONTENTS</u>

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Citations . . . . . . . . . . . . . . . . . . . . . . . . ii

Statement of Subject Matter and Appellate Jurisdiction . . . . . . . . . . . . 1

Statement of Issues and Standard of Review . . . . . . . . . . . . . . 1

Statement of Related Cases and Proceedings . . . . . . . . . . . . . 3

Statement of The Case . . . . . . . . . . . . . . . . . . . . . . 4

Summary of The Argument . . . . . . . . . . . . . . . . . . . 10

Legal Argument . . . . . . . . . . . . . . . . . . . . . . . . .12

## Point I

**THE DISTRICT COURT COMMITTED REVERSIBLE ERROR IN DENYING CVETICANIN'S MOTION TO DISMISS THE SUPERSEDING INDICTMENT ON THE BASIS THAT THE ALLEGATIONS AGAINST HIM AMOUNT TO A CIVIL DISPUTE, NOT A CRIMINAL CASE** . . . . . . . . . . . . . . . . . .12

## Point II

**THE DISTRICT COURT COMMITTED REVERSIBLE ERROR IN DENYING DEFENDANT MARIJAN CVJETICANIN'S MOTION FOR A NEW TRIAL UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 33 WHERE THE GOVERNMENT REMOVED EVIDENCE FROM THE COURTROOM, MAKING IT UNAVAILABLE FOR JURY DELIBERATIONS AND THUS VIOLATING CVJETICANIN'S DUE PROCESS RIGHT TO A FAIR TRIAL** . . . . . . . . . . . . . . . . . . . . . . . . . 16

## Point III

**THE DISTRICT COURT COMMITTED REVERSIBLE ERROR IN CALCULATING THE LOSS FIGURE UNDER U.S.S.G. § 2B1.1 TO BE $676,000 AND REJECTING THE DEFENSE'S PROPOSED**

**LOSS CAULCULATION OF $28,783** . . . . . . . . . . . . . . . . . . . . . 27

## Point IV

**THE DISTRICT COURT COMMITTED REVERSIBLE ERROR IN FIXING THE AMOUNT OF RESTITUTION THAT CVJETICANIN OWES** . . 33

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Certification of E-Filing and Virus Check . . . . . . . . . . . . . . . . . . . . . . . . 43

Certification of Bar Membership . . . . . . . . . . . . . . . . . . . . . . . . . . . . .43

# **TABLE OF CITATIONS**

Page(s)

## Cases

*United States v. Small*, 793 F.3d 350, 352 (3d Cir . 2015) . . . . . . . . . . .1,12

*United States v. Pavulak*, 700 F.3d 651, 671 (3d Cir . 2012) . . . . . . . . . .2,16

*United States v. Napier* 273 F.3d 276, 278 (3d Cir . 2001) . . . . . . . . . . 2,27

*United States v. Quillen*, 335 F.3d 219, 221 (3d Cir . 2003) . . . . . . . . . 3,33

*United States v. Copple*, 74 F.3d 479, 482 (3d Cir . 1996) . . . . . . . .   .  3,33,37,39

*United States v. D'amato* 39 F.3d 1249, 1261 n. 8 (1994) . . . . . . . . . . 13

*McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 791 (1st Cir .1990) . . . . . . . . . . . . . . . . . . . . . . . . 13

*Soper v. Simmons Int'l, Ltd.,* 632 F. Supp. 244, 249 (S.D.N.Y. 1986) (San d, J.)  13

*People v. Foster*, 73 N.Y.2d 596, 603-04, 543 N.Y.S2D 1, 4 (1989) . . . . . .  13

*United States v. Starr*, 816 F.2d 94, 98 (2d Cir .1987) . . . . . . . . . . . 13

*United States v. Brennan*, 326 F.3d 176, 189 (3d Cir . 2003) . . . . . . . . 16,17

*United States v. Quiles*, 618 F.3d 383 (3d Cir .  2010) . . . . . . . . . .17

*United States v. Johnson*, 302 F.3d 139, 150 (3d Cir  .2002) . . . . . . . . . 17

*Crane v. Kentucky*, 476 U.S. 683, 690 (1986) . . . . . . . . . . . . . . . . 23

*United States v. Cronic*, 466 U.S. 648, 656 (1984) . . . . . . . . . . . . . 23

*Washington. Texas*, 388 U.S. 14, 23 (1967) . . . . . . . . . . . . . . . . .23

*United States v. Deutsch*, 987 F.2d 878, 886 (2d Cir . 1993) . . . . . . . . 28

*United States v. Sepulveda*, 115 F.3d 882, 890 (11th Cir .1997) . . . . . . . 28,31

*United States v. Wilson*, 993 F2.d 214, 218 (11th Cir . 1993) . . . . . . . . .28,31

Page(s)

## **Cases**

*United States v. Berry*, 553 F.3d 273, 280 (3d Cir . 2009) . . . . . . . . . . .   31,32

*United States v. Warren*, 186 F.3d 358, 364-65 (3d Cir . 1999) . . . . . . . . .   31

*United States v. Turcks*, 41 F.3d 893, 902 (3d Cir. 1994) . . . . . . . . . .   37,38

*United States v. Logar*, 975 F.2d 958, 961 (3d Cir . 1992) . . . . . . . . . . .   37

*United States v. Palma*, 760 F.2d 475, 480 (3d Cir.   1985) . . . . . . . . . .   37

*United States v. Fallon*, 470 F.3d 542, 549-49 (3d Cir . 2006) . . . . . . . . .   39

*United States v. Ganz*, 90 F. Supp. 3d 388,390 (E.D . Pa  2015) . . . . . . . . .   39

*United States v. Vaknin*, 112 F.3d 589, 589 (1ˢᵗ Cir . 1999) . . . . . . . . . . .   39

## STATEMENT OF SUBJECT MATTER & APPELLATE JURISDICTION

The District Court of New Jersey had subject matter jurisdiction under 18 U.S.C. § 3231. This Court has appellate jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

## STATEMENT OF ISSUES AND STANDARD OF REVIEW

**Issue #1**: Did the district court commit reversible error in denying Cvjeticanin's motion to dismiss the superseding indictment because the allegations against him amount to a civil dispute, not a criminal case?

**Where Preserved**: Cvjeticanin argued *in limine* motions before the district court, raising this argument as a basis for dismissal of the superseding indictment. Pa. 17-19.

**Standard of Review**: In reviewing a district's court's decision on a motion to dismiss an indictment, an appellate court applies a mixed standard of review: plenary review of the court's legal conclusions and clear error of the factual findings. *United States v. Small*, 793 F.3d 350, 352 (3d Cir. 2015) (quotation omitted).

**Issue #2**: Did the district court commit reversible error in denying Defendant Marijan Cvjeticanin's new trial motion under Federal Rule of Criminal Procedure 33 where the Government removed evidence from the courtroom, making it

unavailable for jury deliberations and thus violating Cvjeticanin's due process right

to a fair trial?

**Where Preserved**: Cvjeticanin argued before the district court in post-trial

motions that the Government committed misconduct by removing key evidence

from the courtroom and making it unavailable for jury deliberations, which created

an unfair trial for him.  Pa. 10-14. **Standard of Review**:  An appellate court

reviews the denial of a Rule 33 new trial motion for abuse of discretion.  *United*

*States v. Pavulak*, 700 F.3d 651, 671 (3d Cir. 2012) (citations omitted).

**Issue #3**:  Did the district court commit reversible error in calculating the loss

figure under U.S.S.G. § 2B1.1 for sentencing purposes to be $676,000, and

rejecting the defense's proposed loss calculation of $28,783, which is the amount

that coincides with the nine mail fraud counts that the jury convicted Cvjeticanin of

and the nine invoices that correspond to those counts?

**Where Preserved**: Cvjeticanin argued in support of a reduced loss calculation

during a pre-sentencing conference and at sentencing.  Pa. 597-616, 621 **Standard**

**of Review**: In reviewing a district court's loss calculation, an appellate court

applies plenary review to an "interpretation of the Sentencing Guidelines,

including what constitutes 'loss.'"  The appeals court, however, shall review a

district court's factual findings on loss for clear error.  *United States v. Napier*, 273

F.3d 276, 278 (3d Cir. 2001) (internal citations omitted).

**Issue #4**: Did the district court commit reversible error in fixing the amount of restitution that Cvjeticanin owed without making requisite factual findings under the mandate of 18 U.S.C. § 3664(a) and also in treating Cvjeticanin's employer, Wildes & Weinberg, as a "victim" of the offenses for restitution purposes?

**Where Preserved**:  Cvjeticanin argued his position in support of restitution at a separate, post-sentencing hearing, objecting there to the amount of restitution imposed. Pa. 823-829, 932-934, 708-749.

**Standard of Review**: In reviewing a restitution order, an appellate court applies plenary review as to whether restitution is permitted by law, and looks for abuse of discretion as to the propriety of the specific award.  *United States v. Quillen*, 335 F.3d 219, 221 (3d Cir. 2003) (citations and quotations omitted); *United States v. Copple*, 74 F.3d 479, 482 (3d Cir. 1996) (citation omitted).


## STATEMENT OF RELATED CASES AND PROCEEDINGS

Based upon information and belief, no other related cases or proceedings exist.

3

## STATEMENT OF THE CASE

### A. Relevant Facts

Marijan Cvjeticanin emigrated from Croatia in approximately 1990 and became a naturalized citizen of the United States on March 31, 2005.  Pa. 87. PSR ¶ 82).  Cvjeticanin earned a law degree in Croatia and then, after moving to the United States, worked first as a paralegal and, later, as a practicing attorney here. PSR ¶¶ 88-90, 97.  Fittingly, Cvjeticanin focused his legal practice on immigration law.  PSR ¶ 93.

Cvjeticanin became employed at the immigration law firm of Wildes & Weinberg in New York City in 1996 and, at all relevant times, worked at that firm. A. 86. He worked there first as a paralegal and, then, when he became a licensed attorney in 2010, practiced as an attorney there.  Pa. 87-88. Cvjeticanin worked on labor certifications for foreign nationals so that they could work at major corporations within the United States, specifically, Automatic Data Processing ("ADP"), a business outsourcing company, and Broadridge Financial Solutions ("Broadridge"), a global technology company and operations provider to the financial services industry. A. 88. Even as a paralegal, Cvjeticanin possessed the authority to manage accounts and oversaw other paralegals and even attorneys. Pa. 88. He personally handled the ADP and Broadridge accounts and was also responsible for overseeing

the advertising process.  Advertisements had to be placed for the employment

position that either the ADP or Broadridge corporations intended to sponsor

an employee for. Pa. 88.

In or around 2002-2003, when Cvjeticanin was a paralegal at the firm,

he was overseeing the labor certifications and realized there was a need for a

new advertising company to get involved when clients had problems with the

company that the firm was then using for advertising, Creative Effects. Pa.

94. PSR ¶34).   Cvjeticanin asked the firm's Managing Partner, Steven

Weinberg, if he could change advertising companies, and Weinberg

responded affirmatively.   Weinberg told Cvjeticanin that he could choose a

new advertising company and have the new company bill ADP and

Broadridge directly for the costs involved.  At the time, Weinberg did not

express any care or concern about Cvjeticanin's choice and did not ask any

questions about the new company at all.   Similarly, ADP, which is a Fortune

500 company, did not inquire about the new advertising company or who

was involved in the new company.  Pa. 94.

Cvjeticanin began using Flowerson Holdings, a New York corporation

that Cvjeticanin himself incorporated in the 1990's, to handle the advertising

in place of Creative Effects.  Pa. 94. Flowerson Holdings was a small 'mom

and pop' style advertising company, created by both Cvjeticanin and his

wife.

Cvjeticanin personally had all the knowledge necessary to handle the advertising process based upon his experience with immigration law and work within the law firm. In fact, he had no hidden agenda or deviant scheme; he simply believed that using Flowerson would enable him to earn extra income while accomplishing the advertising function more effectively for ADP and Broadridge. Pa. 94-95. Flowerson Holdings handled the ADP and Broadridge advertising via the Wildes & Weinberg firm for ten years. Pa. 102, 106.

Either Cvjeticanin or his wife handled the advertising work through Flowerson Holdings, placing advertisements in newspapers all over the country and billing in advance on invoices for advertisements. The charges ranged in cost from approximately $1,000 to $3,000 per advertisement. Indeed, no one was complaining at Wildes & Weinberg; the firm processed over one thousand (1,000) applications for foreign nationals and went through thirty to fifty (30-50) audits without losing one. However, at some point, Cvjeticanin started losing money by having all of this work go through Flowerson Holdings as well as Global Media, another company he had incorporated in 2007 or 2008, which was a media design and communications company that represented individuals. (See PSR ¶¶ 34, 35).

Ultimately, a grand jury charged Cvjeticanin with nine counts of mail fraud, which violates, 18 U.S.C. §§ 1341 & 2, for knowingly and intentionally devising, between the years of 2010-2012, a scheme and artifice to defraud ADP and Broadridge by fraudulently billing and collecting monies from ADP and Broadridge for services allegedly provided through Flowerson Holdings, Inc.. Pa. 750-760. Cvjeticanin was further charged with knowingly and intentionally placing and causing to be placed in the mail nine fraudulent invoices in the respective amounts of $3,276, $3,195, $2,770, $3,343, $3,128, $3,242, $3,380, $3,222, and $3,219 (totaling $28,783) for advertisements that Flowerson Holdings and Mr. Cvjeticanin did not place. Pa. 750-760.

A jury trial began on June 22, 2015. On June 29, 2015, the jury returned a guilty verdict against Mr. Cvjeticanin on all nine counts of the Second Superseding Indictment. Pa. 2-9, 750-760.

## B. Procedural History

By indictment, a grand jury charged Cvjeticanin with nine counts of mail fraud, which violates 18 U.S.C. §§ 1341 & 2, for knowingly and intentionally devising, between the years of 2010-2012, a scheme and artifice to defraud ADP and Broadridge by fraudulently billing and collecting monies from ADP and Broadridge for services allegedly provided through Flowerson Holdings, Inc. (*See* Second Superseding Indictment). Cvjeticanin was

further charged with knowingly and intentionally placing and causing to be placed in the mail nine fraudulent invoices in the respective amounts of $3,276, $3,195, $2,770, $3,343, $3,128, $3,242, $3,380, $3,222, and $3,219 (totaling $28,783) for advertisements that Flowerson Holdings and Mr. Cvjeticanin did not place. Pa. 750-760.

A jury trial began on June 22, 2015. On June 29, 2015, the jury returned a guilty verdict against Mr. Cvjeticanin on all nine counts of the Second Superseding Indictment. Pa. 2-9, 750-760.

Cvjeticanin filed a post-trial motion for a new trial, but the District Court Judge Michael A. Shipp, U.S.D.J., denied his motion. Pa. 10-14.

At sentencing, Judge Shipp imposed concurrent prison terms of (57) months on each of the nine counts of conviction. The court also imposed concurrent three year supervised release terms on each count with special conditions, as well as a special assessment of $900.00 ($100.00 on each count). Pa. 2-9.

The District Court Judge held a separate hearing on restitution and then ordered Cvjeticanin to pay restitution in the amount of $1,254,163.36. Pa. 2-9, 731-732. A notice of appeal was filed timely. Pa. 1.

## C. Rulings Presented for Review

The rulings presented for review are the following:

(1) The district court's denial of Cvjeticanin's motion *in limine* to dismiss the superseding indictment because the allegations pled constitute a civil dispute, not a criminal prosecution.  Pa. 17-19.

(2) The district court's denial of Cvjeticanin's new trial motion under Federal Rule of Criminal Procedure 33 after the Government removed evidence from the courtroom and prevented the jury from having access to such evidence Pa. 10-14.

(3)  The district court's order calculation of loss under U.S.S.G. § 2B1.1 as $676,000 and rejecting of Cvjeticanin's proposed loss calculation of $28,783. Pa. 599-601, 611, 621, 2-9.

(4) The district court's award of restitution in the amount of $1,254,163.36, which critical fact findings and is inflated based on a finding that Cvjeticanin's then employer, the law firm, Wildes & Weinberg, is a "victim" for restitution purposes?  Pa. 709-719, 725-731, 830-837, 838.

# SUMMARY OF ARGUMENT

On this appeal, Defendant Marijan Cvjeticanin raises four main issues for the Court's review.

First, the district court erred as a matter of law in denying Cvjeticanin's motion to dismiss the superseding indictment on the basis that the allegations against him amount to a civil dispute, not criminal conduct. The allegations pleaded in the Superseding Indictment establish on their face a breach of contract or failure to satisfy a civil obligation. For this reason, the district court should have agreed that the criminal charges against Cvjeticanin could not stand as pleaded.

Second, the district court abused its discretion in denying Cvjeticanin's motion for new trial under Federal Rule of Criminal Procedure 33 where the Government removed evidence from the courtroom, making it unavailable for jury deliberations and thus violating Cvjeticanin's due process right to a fair trial. The district court erred in deciding a critical issue concerning documents that the Government physically removed from the courtroom <u>before</u> the jury returned verdicts on all counts against Cvjeticanin, and these documents could have made a meaningfully influenced the jurors' deliberations.

Third, the district court's loss calculation at sentencing amounts to clear error. The district court committed reversible error in calculating the loss figure under U.S.S.G. § 2B1.1 for sentencing purposes to be $676,000, and rejecting the

10

defense's proposed loss calculation of $28,783, which is the amount that coincides with the nine mail fraud counts that the jury convicted Cvjeticanin of and the nine invoices that correspond to those counts.  The loss in this case should be capped at the amount the jury found based on their verdicts.   Any other loss calculation must be rejected as speculative and unreliable.

Fourth, the district court erred as well in fixing the amount of restitution owed by Cvjeticanin. It awarded the amount of restitution owed by Cvjeticanin without making requisite factual findings under the mandate of 18 U.S.C. § 3664(a). Additionally, it should not have considered Cvjeticanin's employer, Wildes & Weinberg, as a "victim" of the offenses for restitution purposes.  The firm is not a victim in the case.  The true victims in the case are ADP and Broadridge Corporations, not Wildes & Weinberg.  Thus, the restitution amount award to the firm should be excluded from the total restitution award.

## **LEGAL ARGUMENT**

## **POINT I.**

### **THE DISTRICT COURT COMMITTED REVERSIBLE ERROR IN DENYING CVJETICANIN'S MOTION TO DISMISS THE SUPERSEDING INDICTMENT ON THE BASIS THAT THE ALLEGATIONS AGAINST HIM AMOUNT TO A CIVIL DISPUTE, NOT A CRIMINAL CASE.**

#### **A. Standard of Review**

In reviewing a district's court's decision on a motion to dismiss an indictment, an appellate court applies a mixed standard of review: plenary review of the court's legal conclusions and clear error of the factual findings. *United States v. Small*, 793 F.3d 350, 352 (3d Cir. 2015) (quotation omitted).

#### **B. Argument**

The district court erred as a matter of law in failing to dismiss the charges against Cvjeticanin and not recognizing this matter as a breach of contract or civil matter. The district court wrongly denied Cvjeticanin's motion to dismiss the mail fraud counts against him on this basis, stating only that the Government had satisfied pleading requirements under Federal Rule of Criminal Procedure 7(c)(1). Pa. 765-767, 19.

The crux of the allegations against Cvjeticanin in this case is that he did not place ads for employment positions that were supposed to be placed. (Superseding

Indictment ¶¶ 12-17.)   The breach of a civil contractual obligation does not rise to the level of criminal mail fraud and, thus, the superseding indictment should have been dismissed.

It is well established that a breach of contract, or the failure to fulfill a civil obligation, is not a crime.  *See, e.g. United States v. D'Amato*, 39 F.3d 1249, 1261 n.8 (1994).  After all, to infer "fraudulent intent from mere nonperformance" would eviscerate the distinction between a breach of contract and fraud." *Id.*; *see also McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 791 (1st Cir. 1990) (a breach of contract in itself does not constitute a scheme to defraud); *Soper v. Simmons Int'l, Ltd.*, 632 F. Supp. 244, 249 (S.D.N.Y. 1986) (Sand, J.) (mere failure to perform an obligation or promise does not constitute fraud); *People v. Foster*, 73 N.Y.2d 596, 603-04, 543 N.Y.S.2d 1, 4 (1989) (not all acts that are wrongful in a civil context constitute criminal conduct).   And, "[m]isrepresentations amounting only to a deceit are insufficient to maintain a mail or wire fraud prosecution." *D'Amato*, 39 F.3d at 1257 (quoting *United States v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987)).  Rather, failure to comply with a contractual obligation is only fraudulent when the promisor never intended to honor the contract.

Here, the allegations in the Superseding Indictment should not survive Cvjeticanin's motion to dismiss.  Cvjeticanin had every intention to honor the

contract between Flowerson and ADP (pleaded as "Company A") and Broadridge (pleaded as "Company B"). Implicit in the contracts between Flowerson and ADP and Broadridge was the understanding that ADP and Broadridge needed certain advertisements for employment placed to be able to retain their respective foreign employees. The ultimate purpose of and an underlying reason for the contracts between Flowerson and ADP and Broadridge was to ensure that Flowerson and Broadridge were able to keep their foreign employees. In the end, ADP and Broadridge were able to retain most of their foreign employees for whom Flowerson placed required job advertisements. Flowerson substantially complied with its contractual obligations it had with ADP and Broadridge. Any non-compliance is the sort of non-compliance that routinely occurs in civil contracts, not criminal matters.

The right to contracts forms the very foundation of our system of law. Records of contract date all the way back to the Norman Conquest, when recovery for the breach of a promise could be obtained in an action of covenant or in "assumpsit." Williamson M. Evers, *Toward a Reformulation of the Law of Contracts*, *Journal of Libertarian Studies*, Vol. 1, No.1, p.3 Pergamon Press (Great Britain).

By indicting him, the Government here sought to impose criminal liability against a party whose conduct was essentially civil in nature. Cvjeticanin should

not have been the subject of criminal prosecution, particularly where Flowerson

substantially complied with its contractual obligations and ADP and Broadridge

got the ultimate benefit of their contract with Flowerson, i.e., the retention of their

foreign employees.  If ADP and Broadridge had chosen to sue Flowerson in a civil

action to recover all monies paid to Flowerson for advertising, then Flowerson

would have had a host of civil defenses as to why no refund would be due the

companies, e.g., quantum meruit, substantial completion, accord and satisfaction,

unclean hands on the part of ADP and Broadridge.  In short, Flowerson did provide

quantifiable and beneficial services to ADP and Broadridge.  Flowerson and ADP

and Broadridge also had a long-established course of business.  The Government

did not plead criminal conduct on Cvjeticanin's part, and the District Judge should

have dismissed the counts against him.[1]

Finally, making a criminal case out of what, at most, is a civil suit implicates

grave jurisdictional issues.  This is particularly true in light of the substantially

higher burden of proof in a criminal case.  Therefore, the district court erred as a

matter of law in denying dismissal of the superseding indictment against

Cvjeticanin and allowing the Government to proceed with the criminal prosecution

against him.

---

[1] Cvjeticanin also objected to Venue, since his home in Saint James, New York, was about 4 ½ to 5 hours away from the Trenton, N.J. Federal Courthouse.

## POINT II.

**THE DISTRICT COURT COMMITTED REVERSIBLE ERROR IN DENYING DEFENDANT MARIJAN CVJETICANIN'S MOTION FOR A NEW TRIAL UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 33 WHERE THE GOVERNMENT REMOVED EVIDENCE FROM THE COURTROOM, MAKING IT UNAVAILABLE FOR JURY DELIBERATIONS AND THUS VIOLATING CVJETICANIN'S DUE PROCESS RIGHT TO A FAIR TRIAL.**

### A. Standard of Review

An appellate court reviews the denial of a Rule 33 motion for a new trial for an abuse of discretion. *United States v. Pavulak*, 700 F.3d 651, 671 (3d Cir. 2012) (citations omitted).

### B. Argument

This Court should reverse the district court's abuse of discretion in denying Cvjeticanin's new trial motion based on the Government's conduct in removing evidence from the courtroom that should have been made available to the jury for its deliberations on the mail fraud counts. Under Federal Rule of Criminal Procedure 33, "[u]pon the Defendant's motion, the Court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. Proc. 33. The Court can order a new trial where it believes "that a miscarriage of justice has occurred." *United States v.*

16

*Brennan*, 326 F.3d 176, 189 (3d Cir. 2003).  The decision to grant a new trial

is within the district court's sound discretion.  *U.S. v. Quiles*, 618 F.3d 383

(3d Cir. 2010).  In considering a Rule 33 motion, courts should not consider

evidence in the light most favorable to the Government.  "[R]ather, on a Rule

33 motion, the court exercises its own judgment in assessing the

Government's case" to determine whether a judgment of conviction

constitutes a manifest injustice in light of the evidence admitted at trial. *See*

*United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002); *see also*

*Brennan*, 326 F.3d at 189.  The district court erred in evaluating a critical

issue concerning documents that the Government removed from the

courtroom before the jury returned verdicts on all counts against Cvjeticanin.

    During defense counsel's closing argument, the defense made certain

representations to the jury regarding the existence of documents critical to

Cvjeticanin's mail fraud defense.   In the presentation of its case at trial, the

Government alleged that Cvjeticanin defrauded corporate victims when he

sent invoices to such victims for advertisements that were never placed.  Pa.

477-478. The Government further alleged that Cvjeticanin profited from his

scheme to defraud because he kept money that should have been used to pay

for such advertisements.  Pa. 480-481.

Defense counsel represented to the jury during closing arguments that, contrary to the Government's contentions, Cvjeticanin actually paid for and placed advertisements on behalf of the corporate victims, thus negating one of the Government's major allegations.  Pa. 510-512. More importantly, defense counsel represented to the jury in closing arguments that the advertisements that Cvjeticanin paid for <u>were included within the Government's own</u> <u>exhibits</u>.  Defense counsel went so far as to display a chart to the jury during closing arguments.  The chart listed the specific Government Exhibit and page number where each advertisement placed by Cvjeticanin could be located and set forth the specific advertisements the jury should look for in the governments exhibits, that corresponded with the particular counts of the superseding indictment.  Pa. 510-514.

Before the defense's closing arguments, the jury was completely unaware of the existence of the advertisements Cvjeticanin had actually paid for and placed in various Sunday newspapers.  The jury was unaware that these advertisement even existed because, for tactical reasons, the advertisements referenced in defense counsel's closing arguments were not published to the jury during any defense cross-examination.  The reason for this is because the defense called no witnesses.  And, the Government did not publish any of the advertisements referenced in defense counsel's closing arguments.

As to the existence of advertisements placed by Cvjeticanin, defense

counsel told the jury during closing:

> What I'm submitting to you, is that was Marijan's
> desire to be perfect in his dealings with ADP and
> with Wildes and Weinberg.  But, what the Government
> didn't tell you is that if you look – if you look at the
> counts of the indictment, and you go through these
> papers, I just put them down in here, like Count 1,
> you're going to find and ad for 12/19/10, Government
> and Weinberg – from Flowerson Holdings on 1/16/11,
> that's going to be Government Exhibit 78, Section 10,
> Page 8. You don't need to memorize these because all
> you need to do to verify what I'm saying is, ladies and
> gentleman, with the four counts of the indictment that
> deal with the audit files, go to the 9089, find out what
> are the two dates of publication, what the publication
> is – is it the Star Ledger or the Seattle Times, look at
> the classified sections and look for an ad that was
> written by Flowerson Holdings, it's got hiringinfo@aol.com,
> you're going to find an ad, and it's most likely going to
> be a computer ad.  What I submit to you is that, that ad
> was not perfect.  And why am I bringing this up?  Because
> the fact that there is an ad in the newspaper on the date
> in question, the date that is on the 9089, shows that
> Flowerson and Marijan paid for an ad, they paid for an
> ad that was wrong. There was no intent to defraud.
> The Government's theory is you money because you
> don't put the ad in, and you keep the money in your pocket.
> But in this scenario, they put the ad in.  It doesn't make
> sense that you would spend money on an ad that is
> incorrect and waste your money.

Pa. 509-510.

Ultimately, the jury unfairly convicted Cvjeticanin on all nine counts of mail

fraud without having had the opportunity to view the advertisements which defense

counsel. Counsel vigorously asserted in closing arguments two key points: (1) these advertisements existed and (2) they served as a principal reason for why Cvjeticanin was not guilty of mail fraud.

The court excused the jury from the courtroom to begin deliberations at 12:07 p.m. Pa. 522. At 1:37 p.m., the jury issued the first of four Jury Communications.(Jury Communication #1, attachment to new trial motion).   At 2:07 p.m., the court placed on the record the contents of Communication #1, which reads, "Need newspapers for counts 1 and 5." Pa. 522. The contents of Jury Communication #1 was placed on the record a full 40 minutes after the jury actually wrote Jury Communication #1.   During the on-the-record colloquy, the Government and defense counsel agreed, with the court's approval, that the newspapers for count 1 and 5, as well as all the other newspapers admitted into evidence during trial, but not yet given to the jury, should be given to the jury for use in its deliberations. The colloquy in connection with Jury Communication #1 ended at 2:11 p.m.  Pa. 524. At 2:39 p.m., Jury Communication # 2 was communicated by the jury. (Jury Communication #2, attachment to new trial motion).  At 2:42 p.m.,  the contents of Jury Communication # 2 was placed on the record by the court, "The Court has received what's marked as jury communication number 10, however, it's really jury communication number 2, but apparently they feel like it's number 10. Their note says, quote, 'what is going on, question mark. We have been waiting for

over an hour, exclamation point' So, apparently, you have a very anxious jury."
Pa. 524. That colloquy ended at 2:45 p.m. Pa. 525. At 2:57 p.m., the
jury sent Jury Communication # 3, which was placed on the record at 3:09
p.m., which read simply, "We have a verdict." Pa. 763. This communication
was sent before the jury actually received the evidence it had requested
in Jury Communication #1, which request had been made almost 2 hours
before the verdict. It is clear from the record that the jury did not receive
the evidence it requested two hours earlier because the Government
removed from the courtroom the specific evidence that had been requested.
As the prosecutor explained:

> No, your Honor. The -- so here's what we have. We
> have all the documents here, all the newspapers for
> all counts except for one newspaper that we are getting
> from the U.S. Attorney's Office. I think it was
> inadvertently taken back there. So minus that one
> newspaper, we have everything. It was Count 5, Judge.
> It's that one newspaper that we were missing
> relates to Count 5, of course.

Pa. 526.

The jury clearly reached a verdict before having received the evidence it had
requested to review. While the district court attempted to remedy the fact that the
jury had rendered a verdict without evidence it had requested and should have had,
the court's attempt was ultimately insufficient. The District Court ruled:

> Okay. In an abundance of caution, I
> think it's appropriate that we make sure they have
> that.   Even though they say they have a verdict,
> there's nothing that requires us to do that. I think it's
> only appropriate just so that they make sure what
> they requested initially has no bearing whatsoever
> on their verdict. And I think it's the appropriate thing
> to do. So I'm going to go ahead and let them at least
> peruse through that document, and then once
> they've looked at whatever that document is, they can
> advise the Court if they have a verdict at that time.
> So I think that what I'm going and what I'm inclined to do, is
> as soon as you have that newspaper, or whatever it is
> that you are waiting for, all that go down together to the jury
> and then let them decide what they want to do with it.
> I'm not sending any instruction whatsoever, but just to say
> that this is in response to your first jury communication.
> And then they may very well say, Okay, Judge, thank you,
> but we have a verdict.

Pa. 526-528.

At 3:35 p.m., Jury Communication #4 was sent to the Court, which provided in very large letters, "We have a Verdict." Pa. 764. At 3:44 p.m., the jury was brought back to the courtroom and the verdict received. Pa. 529. Before the requested evidence was provided to the jury, the jury was neither instructed by a note nor given instructions by the judge as to how to handle the failure to receive the evidence it had requested through Jury Communication #1.

Under these circumstances, the district court abused its discretion in denying a new trial under Federal Rule of Criminal Procedure 33.   In failing to so grant, the District Court violated Cvjeticanin's due process rights.  The Due Process

Clause of the Fourteenth Amendment, together with the Compulsory Process or

Confrontation clauses of the Sixth Amendment, guarantees criminal Defendants "a

meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476

U.S. 683, 690 (1986). The *Crane* Court held:

> We break no new ground in observing that an essential
> component of procedural fairness is an opportunity to be heard.
> (citations omitted). That opportunity would be an empty one
> if the State were permitted to exclude competent, reliable evidence
> bearing on the credibility of a confession when such evidence is
> central to the Defendant's claim of innocence. In the absence of
> any valid state justification, exclusion of this kind of exculpatory
> evidence deprives a Defendant of the basic right to have the
> prosecutor's case encounter and survive the crucible of
> meaningful adversarial testing.

*Id.* at 691 (*citing United States v. Cronic*, 466 U.S. 648, 656 (1984));

s*ee also Washington v. Texas*, 388 U.S. 14, 23 (1967).

The *Crane* holding is applicable to the current case because "reliable"

evidence bearing directly on Cvjeticanin's claim of innocence was excluded. The

newspapers that the jury requested, but never received were central to Cvjeticanin's

claim of innocence. That evidence established that newspaper advertisements were

placed and thus controverted the Government's assertion that no newspaper

advertisements were placed. As a result, Cvjeticanin was deprived of this basic right

to test the Government's theory and assertion during trial, and his due process rights

were violated.

Here, this Court should remand for a new trial because a manifest injustice occurred during the trial and denied Cvjeticanin a fair trial that he is guaranteed under the Due Process Clause of the Fifth Amendment. The fundamental fairness of a trial is undermined where the jury is unable to receive and review evidence that is vital to a defendant's defense. Particularly in a case, such as this, where that evidence is admitted without being published. The newspaper advertisements were admitted into evidence *via* a stipulation by the parties, and the Government did not publish to the jury at any time any specific portion of the newspapers.

The materiality of this evidence to the defense was established when in closing arguments defense counsel clearly implored the jury to review the advertisements, and directed it to the specific locations in the Government's evidence to the newspapers relevant to the counts in the indictment. Indeed, the jury's specific demand on two separate occasions to view this evidence is perhaps an even more telling example of just how important this evidence is to Cvjeticanin's defense. The requested evidence was not provided to the jury because of several issues that prevented the evidence from being sent back to them. Not only was the evidence not in any organized order relevant to the counts of the superseding indictment that each newspaper pertained to, but the Government had physically removed from the courtroom at least one newspaper that had been admitted into evidence. This removed evidence included one of the newspapers that the jury specifically

requested.  The Government's conduct prevented the district court from providing the jury with the requested evidence in an expeditious, timely matter.  In fact, two hours after its initial request for newspapers relevant to two counts of the superseding indictment, the evidence still had not been sent back to the jury.

Here, the newspaper advertisements that were requested to go to the jury were contained in many bankers' boxes (perhaps 10 or more) in a disorganized and haphazard fashion; they were not complete (several newspapers were missing); and they were not contained in boxes relevant to each count of the superseding indictment.  Following the initial request in Jury Communication #1, the Government attorneys, together with two paralegals, the case agent, one defense attorney and the defense investigator all attempted to retrieve the documents that were responsive to jury's request in Jury Communication #1 (which demand was reiterated one hour and a half later in Jury Communication #2).  However, the disorderly organization of the large amount of documents that the Government had put into evidence resulted in an inability to gather and assemble the documents relevant to the counts requested by the jury.  When it was discovered that the Government had removed evidence from the courtroom, it became impossible to comply with the jury's request.  The Government's conduct in removing evidence from the courtroom prevented the jury from receiving the requested evidence that was vital to the Defendant's defense before the jury returned its verdict.  This

action in particular prevented the timely and orderly receipt of requested evidence into the jury room and violated Cvjeticanin's right to due process under the law by blocking his ability to present a complete defense under the United States Constitution.

After the jury had communicated that they had reached a verdict, but before they had announced their verdict, the judge asked them to "hold tight on their verdict," voicing concerns regarding the failure to get them all the evidence that they had requested.  Pa. 445.  However, the District Court Judge's efforts in sending back the evidence at that late stage, after the jury had reached a verdict and without any instruction regarding the issues with the Government's evidence, did not remedy the miscarriage of justice that occurred in the two hours before receiving such evidence.  Defense counsel challenged the jury to "verify what I am saying" by simply finding the advertisements that were sitting on the table right beside the jury box. The jury accepted the defense's challenge when it asked to see the advertisements that had not been sent into the jury room. Clearly, the jury believed that the defense failed miserably in meeting the challenge it had proposed to the jury. The jury did not believe defense counsel because, if verifying the existence of Cvjeticanin's advertisements was such a simple task, then those advertisements would have been produced in a matter of minutes. The guilty verdicts returned here constitute a manifest injustice in light of the evidence

admitted at trial but not provided to the jury for review when requested. Such actions violated Cvjeticanin's rights to receive due process of law and present a complete defense under the United States Constitution.

## POINT III.

### <u>THE DISTRICT COURT COMMITTED REVERSIBLE ERROR IN CALCULATING THE LOSS FIGURE UNDER U.S.S.G. § 2B1.1 TO BE $676,000 AND REJECTING THE DEFENSE'S PROPOSED LOSS CALCULATION OF $28,783.</u>

#### A. Standard or Review

In reviewing a district court's loss calculation, an appellate court applies plenary review to an "interpretation of the Sentencing Guidelines, including what constitutes 'loss.'" The appeals court, however, shall review a district court's factual findings on loss for clear error. *United States v. Napier*, 273 F.3d 276, 278 (3d Cir. 2001) (internal citations omitted).

#### B. Argument

The district court erred in inflating the loss attributable to Cvjeticanin, instead of accepting the defense's proposed calculation of $28,783, which is consistent with the nine mail fraud counts that the jury convicted Cvjeticanin of and the nine invoices that correspond to those counts. The U.S.S.G. for mail fraud cases carries a base offense level of 7 and the Guideline offense level is incrementally increased based on the amount of loss, as well as other factors that

27

the Court might find applicable. U.S.S.G. § 2B1.1. Note 3(A) to § 2B1.1 defines

"loss" in the context of a fraud conviction as the "greater of actual loss or intended

loss." USSG § 2B1.1, n. 3(A)). "Actual loss" means "reasonably foreseeable

pecuniary harm that resulted from the offense." Pecuniary harm is "reasonably

foreseeable" under the Guidelines if Mr. Cvjeticanin "knew or, under the

circumstances, reasonably should have known was a potential result of the

offense." "Intended loss" is defined as "pecuniary harm that Mr. Cvjeticanin

purposely sought to inflict." In determining a loss amount for purposes of

Guidelines calculation, a district court's findings must be grounded in the evidence

and not derived from mere speculation. *See United States v. Deutsch*, 987 F.2d

878, 886 (2d Cir. 1993). "While estimates are permissible, courts must not

speculate concerning the existence of a fact which would permit a more severe

sentence under the guidelines." *See United States v. Sepulveda*, 115 F.3d 882, 890

(11th Cir. 1997) (citing *United States v. Wilson*, 993 F.2d 214, 218 (11th Cir.

1993)). The Government has the burden to prove loss by a preponderance of the

evidence and that burden must be satisfied with "reliable and specific

evidence." *Id.* (internal quotes omitted); *see also Sepulveda,* 115 F.3d at 890-91.

The defense argued that the jury's verdict was "reliable and specific

evidence" supporting the loss calculation, and thus the district court should have

calculated loss consistent with the nine invoices corresponding to the counts of

conviction.  Accordingly, the District Court should have found that the loss amount

totaled $28,783, which is the amount set forth in the superseding indictment and

the amount that the jury ultimately found Mr. Cvjeticanin guilty of.  Pa. 621, 338

The Government bears the burden of providing proof of the amount of loss and by

a preponderance of the evidence.  The jury's verdict as to the nine counts should be

determinative as to the amount of loss.  (See id. at 22, 24, 25) The jury made no

finding of fraud as to any other invoices in evidence, and thus those invoices

should not have been used to inflate the loss calculation. Pa. 638,640,641[2]

Initially, the defense argued that there was no actual loss.  ADP and

Broadridge did not demand refund for the invoices.  They submitted to Wildes and

Weinberg expenses for a minimal number of employees, most of whom are not

even the subject of the advertising invoices.  These employees have nothing to do

with the fraudulent invoices by Cvjeticanin.  Additionally, the defense argued that

that there was no intended loss in the case as well, pointing to the trial testimony of

Steven Weinberg, who testified that that the only thing that Cvjeticanin ever

wanted to do was be a good lawyer.  Pa. 122. He simply wanted the applicants to

become employees for ADP and Broadridge and, in fact, he was successful in

getting the applications done, and ADP and Broadridge got their employees.

Cvjeticanin wanted praise as a good lawyer; he did not intend to defraud anyone.

---

[2] Cvjeticanin also objected to enhancements at sentencing for abuse and trust and obstruction of justice.

Pa. 641.  Additionally, the defense contended that the Government's amounts were speculative.  Pa. 641-643.

The district court gave lip service to the the defense's alternative proposed loss calculation of $28,783.  It also noted the Government's proposed, much more substantial loss figure of $1,967,338.  Pa. 650. The court referred to the Government's chart of actual losses submitted within its sentencing brief in explaining its loss determination Pa. 650.  The court found that the Government had satisfied its burden in proving Row A (Counts I-9 of the Indictment), Row F (Wildes & Weinberg Creative Effects Re-Advertising Fees For U.S.C.I.S. Immigration Petitions), and Row G (Wildes & Weinberg U.S.C.I.S. Immigration Petition Re-Filing Fees), and these loss amounts should be included in the loss calculation.  Pa. 651. As to Row H (Wildes & Weinberg Remediation Employee Expenses), the court reduced the Government's proposed loss amount from $1,115,435.10 to $465,000.  Pa. 651. The Court excluded the remaining Rows B-E, noting the defense's dispute to these items and further noting that their inclusion would make no difference to the ultimate calculation:

> Adding these loss numbers together, the actual loss equals $676,000 which increases the offense level by 14 levels, resulting in a total offense level of 23. Because defendant disputes the inclusion of the remaining loss numbers, rows B to E, and even if the Court were to include these numbers in their entirety in its calculation, these numbers would not affect the offense level.  The Court need not include these numbers it its calculation of

the losses. Pa. 651-652.

However, the district court should have excluded from its loss calculation all amounts that Wildes & Weinberg claimed as losses because they are, as a general matter, unreliable and speculative, and the Government did not sustain its burden of proof on these claims. Wildes & Weinberg's refusal to provide the Government and the district court with additional evidence justifying its claimed amounts of loss leave those claims suspect and extremely speculative. Thus, they should not have been part of the loss calculation. "[I]nformation relied upon at sentencing must have a 'sufficient indicia of reliability to support its probable accuracy." *United States v. Berry*, 553 F.3d 273, 280 (3d Cir. 2009) (quoting *United States v. Warren*, 186 F.3d 358, 364-65 (3d Cir. 1999); *see also Sepulveda*, 115 F.3d 882, 890 ("[w]hile estimates are permissible, courts must not speculate concerning the existence of a fact which would permit a more severe sentence under the guidelines") (citing *United States v. Wilson*, 993 F.2d 214, 218 (11th Cir.1993)).

Mr. Weinberg gave suspect testimony at trial when he claimed to have obtained all of the advertisements and gave them all to the Government before trial. Certainly, if this were true, the Government would have turned over these

---

[3] The Court determined the loss calculation at sentencing, but before sentencing, held two telephone conferences on November 24, 2015 and February 17, 2016, to discuss issues related to sentencing, including loss and restitution.

documents to the defense. But in his post-trial submission, Mr. Weinberg testified that he only had to refile 93 of those applications (and readvertise the same amount), and then, based upon documents disclosed to the defense, it was apparent that he actually refiled half of that claimed amount (47) and readvertised only 65. Pa. 871-931. To the extent that the district court relied upon this evidence, the district court erred because it was conflicting and failed to establish loss by a preponderance of the evidence. It is not evidence that has a 'sufficient indicia of reliability to support its probable accuracy." *See Berry,* 553 F.3d at 280. The Government did not show by a preponderance of the evidence that these amounts are reliable and/or accurate or that they were as a result of Mr. Cvjeticanin not advertising in relation to the invoices introduced at trial. Therefore, these alleged amounts should have been excluded from the loss calculation.

Further, the district court erred in including a loss calculation of $465,000 for "Wildes & Weinberg's Remediation Employee Expenses" under Row H. Even though the Government initially requested a higher loss amount, the Court's reduced calculation is still unreasonable, unsupported, and unproven. The amounts that Wildes & Weinberg employees claimed as employee salaries were not only salaries, but also 401k payments (from both employee and employer) and health care costs. Pa. 871-931. Clearly such exaggerated employee claims are not rationally related to the small amount of re-filings actually done by Wildes &

Weinberg. In addition, these claimed amounts do not include costs associated with the re-advertisements since this was done by an outside agency, Creative Effects. Simply, no correlation exists between what is claimed and what was done, and there is no way to reduce the amount of claimed salaries to support its probable accuracy. *See Berry,* 553 F.3d at 280. [4] Thus, the amounts claimed for the employees should not have been counted in the loss amount, and the district court erred in doing so.

## POINT IV.

## THE DISTRICT COURT COMMITTED REVERSIBLE ERROR IN FIXING THE AMOUNT OF RESTITUTION THAT CVJETICANIN OWES.

### A. Standard of Review

In reviewing a restitution order, an appellate court applies plenary review as to whether restitution is permitted by law and looks for abuse of discretion as to the propriety of the specific award. *United States v. Quillen*, 335 F.3d 219, 221 (3d Cir. 2003) (citations and quotations omitted); *United States v. Copple*, 74 F.3d 479, 482 (3d Cir. 1996) (citation omitted).

### B. Argument

The district court made two fundamental errors in fixing the restitution award. First, the court failed to make requisite factual findings under the

---

[4] Moreover, Cvjeticanin argued below that Wildes & Weinberg were not victims of this offense for purposes of amount of loss calculations. Also, Cvjeticanin argued that the amount of loss calculated by the court and attributable to the invoices was not forseeable, nor did the court clearly set forth how it arrived at its amount of loss figure.

applicable statute before imposing restitution.  Second, the court mistakenly

considered Cvjeticanin's employer, Wildes & Weinberg, a "victim" of the offenses

committed in calculating the restitution now owed.   Both of these errors amount to

an inflated award and require a reversal and remand for a new calculation of the

restitution amount.

The Government sought restitution in the amount of $1,316,902.90, to be

distributed among the following entities: (1) ADP ($482,660); (2) Broadridge

($186,317); (3) Liberty International ($165,779.90); and (4) Wildes and Weinberg

($482,146).  Pa. 710. The restitution amount is intended to cover:

> (a) the fraudulent invoices sent by ADP and Broadridge;
> (b) Computer World's advertising fees paid to Flowerson by
> ADP; (c) Computer World's advertising fees paid to
> Flowerson by Broadridge; (d) advertising paid to Flowerson
> by ADP; (e) advertising fees paid to Flowerson by Broadridge;
> (f) Wildes and Weinberg Creative Effects' re-advertising fees for
> the immigration petition re-filing fees; (g) Wildes and
> Weinberg's immigration petition re-filing fees; and (h) Wildes
> and Weinberg's remediation employee expenses.

Pa. 710.

The district court again referred to the chart that the Government submitted

in resolving the restitution issue.  Though the defense objected to restitution under

Rows (D)-(G), the court found no dispute as to restitution based on Rows (A)-(C).

Pa. 710-711, 718.  The court also found no dispute as to the "calculation of the

$465,000 for the Wildes and Weinberg's remediation employee expenses, which is

reflected in Row H, [thus] the losses which total $690,688 are properly included in

the amount of restitution." Pa. 711. The defense also objected to some of the invoices included in Rows D and E as improper because: (1) some of the invoices relate to some other legal service rather than advertising; (2) some are undated so it is unclear that they pertain to services that were provided; (3) for some of the invoices Flowerson was prevented from advertising because the November 2002 cease and desist order did so; (4) at trial, Weinberg and the Government recognized that some of the advertisements had been placed; and (5) Cvjeticanin asserts that at the sentencing hearing he introduced evidence that showed he placed at least $83,000 worth of advertisements. Pa. 711.

But Cvjeticanin clarified on the record that he objected to owing any restitution for either Computer World's advertising fees paid to Flowerson by ADP or for Computer World's advertising fees paid to Flowerson by Broadridge. Pa. 713. Then, as to the $465,000 for the Wildes and Weinberg's remediation employee expenses (in Row H), Cvjeticanin further clarified that he, in fact, objected to this figure as well on the basis that the firm should not be considered a "victim" of the offense, arguing that the true victims of the offenses committed were ADP and Broadridge. Responding further to the court's comments, the defense also noted its objections on the record to the Government's proposed restitution awards for Rows A, B, C, and E. Pa. 713-714.

After the district court heard oral argument from both parties as to restitution, the judge, lacking the requisite preliminary findings, made the following conclusions regarding restitution based upon the Government's chart:

(1) $28, 775 in restitution shall be due as to Row A;
(2) $148, 435 in restitution shall be due as to Row B;
(3) $48,478 in restitution shall be due as to Row C;
(4) $318,690 in restitution shall be due as to Row D;
(5) $124,599 in restitution shall be due as to Row E;
(6) $ 89,446.36 in restitution shall be due as to Row F;
(7) $30,740 in restitution shall be due as to Row G; and
(8) $465,000 in restitution shall be due as to Row H.

Pa. 731,732.  The total restitution award imposed on Cvjeticanin was $1, 254,163.36.  Pa. 732. The defense objected to the restitution calculation as well as the ability to argue for forfeiture at the previous proceeding.  Pa. 732.

1. <u>The district court failed to make the requisite factual findings to justify the restitution order imposed</u>.

This Court should reverse and remand the restitution order for resentencing because the district court failed to comply with precedential law requiring certain findings be made before restitution is made in any case, thus prejudicing Cvjeticanin.

Though the district court did not specify, it presumably ordered restitution under its authority in 18 U.S.C. § 3664 (a), which provides:

> The court, in determining whether to order restitution under section 3663 of this title and the amount of this title and the amount of such restitution, shall consider the amount of the loss sustained by any victim as a result of the offense, the

> financial resources of the defendant, the financial needs
> and earning ability of the defendant and the defendant's
> dependents, and such other factors as the court deems
> appropriate.

Based on the statute, this Court requires that district courts make specific factual

findings before ordering that a defendant pay restitution. *United States v. Turcks*,

41 F.3d 893, 902 (3d Cir. 1994) (citations omitted); *accord United States v.*

*Copple*, 24 F.3d 535, 549 (3d Cir.), *cert. denied*, 513 U.S. 989 (1994); *United*

*States v. Logar*, 975 F.2d 958, 961 (3d Cir. 1992); *United States v. Palma*, 760

F.2d 475, 480 (3d Cir. 1985).  Specifically, a district court must make factual

findings on the record of:

> 1) the amount of loss, 2) the defendant's ability to pay and the
> financial need of the defendant and the defendant's dependents,
> and 3) the relationship between the restitution imposed and the
> loss caused by the defendant's conduct.  We also [hold] that,
> notwithstanding estimates of loss in a presentence report, the
> district court judge must point to the evidence in the record
> supporting the calculation of loss to the victims.

*Turcks*, 41 F.3d at 902 (quoting *Copple*, 24 F.3d at 549-50 (citation omitted)).

At the hearing, the district court ordered Cvjeticanin to pay Cvjeticanin a total

of $1, 254,163.36 for restitution and allocated that amount to specified victims.

However, the district court failed to make any findings regarding Cvjeticanin's

ability to pay, Cvjeticanin's financial need, or the financial need of his dependents.

Additionally, the district court judge did not specifically explain the "relationship

between the restitution imposed and the loss caused by the defendant's conduct."

*See id.* Under *Turcks*, the district court judge's burden is a substantial one; the judge must be precise in explaining the reasons warranting a restitution order; yet here, the judge simply relied generally on the "submissions from the parties" and offered no other explanation or findings before making his conclusion as to the restitution award. Pa. 728. This is insufficient to satisfy the obligation that the judge "must point to the evidence in the record supporting the calculation of loss to the victims." *Turcks*, 41 F.3d at 902. The district court's omissions constitute clear error.

Thus, this Court should reverse and remand this matter for a redetermination of the amount of restitution after the court takes into account all of the required fact findings and then reimpose an appropriate order of restitution.

2.  Wildes & Weinberg should not have been considered a "victim" of the offenses convicted for restitution purposes and the $465,000 restitution award granted to the firm should be vacated.

Of the $1,254,163.36 total restitution award, the district court awarded $465,000 to Wildes Weinberg, Cvjeticanin's employer when he committed the offenses in this case. The district court erred in considering the firm as a "victim" as that term is defined for restitution purposes and, for this reason, the restitution award should be vacated to correct such error.

Restitution under the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, is mandatory for certain types of crimes, including any offense

"in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663(A)(c)(1)(B).  The MVRA defines "victim" to mean "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." *Id.* § 3663A(a)(2).  If the offense "involves as an element a scheme, conspiracy, or pattern of criminal activity," the term "victim" includes "any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." *Id.*

A two-prong test exists to determine whether a victim was "directly and proximately harmed" such that restitution is proper under the MVRA. *United States v. Fallon*, 470 F.3d 542, 549-49 (3d Cir. 2006); *United States v. Ganz, 90 F. Supp*. 3d 388, 390 (E.D. Pa. 2015). First, "restitution should not be ordered in respect to a loss which would have occurred regardless of the defendant's conduct." *Id.* at 549. (quoting *United States v. Vaknin*, 112 F.3d 579, 589  (1st Cir. 1999)).  Second, "[e]ven if but for causation is an acceptable theory, limitless but for causation is not.  Restitution should not lie if the conduct underlying the offense of conviction is too far removed, either factually or temporally, from the loss." *Fallon*, 470 F.3d at 549.

Defense counsel argued during the restitution hearing that Wildes and Weinberg were not victims of this offense.  The true victims of this offense were ADP and Broadridge.  Pa. 713.

As defense counsel explained:

> Wildes and Weinberg voluntarily threw themselves into
> the mix to make things right for ADP and Broadright and
> were very involved and partial in the case, in doing that,
> trying to save their two biggest clients, ADP and Broadridge,
> in the process, decided to re-file and redo whatever they
> want to and could have spent $10 million in doing that, but
> my client should not be responsible for what they
> determined without outside help to make that
> determination what they had to re-file for ADP
> and Broadridge.  ADP and Broadridge in this case have
> not claimed $615,000;  . . . they claimed $20,000, ADP,
> for legal fees.  And Broadridge hasn't claimed any
> amount of loss in this case that Mr. Cvjeticanin
> took from them. . . .

Pa. 713.

In applying the two-prong test, this Court should not conclude that Wildes
and Weinberg was a victim of Cvjecticanin's mail fraud as contemplated by the
MVRA.  Under a "but for" causation test, this Court should find that causation
does not exist because Wildes and Weinberg <u>voluntarily</u> acted on their own accord,
getting involved with ADP and Broadridge and interfering with any alleged causal
link.  Second, even assuming Wildes & Weinberg suffered any losses, such losses
result from the re-filings done for ADP, which ADP has claimed.  The losses do
not directly or proximately result from any other party, including Cvjeticanin.

Thus, the district court should not have treated the firm as a victim, and the
$465,000 figure awarded to them is unjustified and without support.  A reversal

and remand on these grounds is entirely warranted because the restitution award must be recalculated.

## <u>CONCLUSION</u>

For all the reasons explained above, this Court should reverse and vacate

Defendant Marijan Cvjeticanin's judgment of conviction and/or, alternatively,

vacate his sentence and grant a remand for re-sentencing.

/s Lorraine Gauli-Rufo, Esq.
Attorney for Appellant,
Marijan Cvjeticanin

Dated: July 9, 2016

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 37(a)(7)(C)(I) of the Federal Rules of Appellate Procedure, I certify that, according to the Word word-counting function, this Brief contains exactly __9211__ words, inclusive of footnotes, through and including the "Conclusion" section, and employs 14-Point Times New Roman Font.

Dated: July 9, 2016                               /s/ Lorraine Gauli-Rufo, Esq.


## CERTIFICATION OF E-FILING AND VIRUS CHECK

Under Rule 31.1(c) of this Court's Local Appellate Rules, I certify that the text of the electronically file Brief is identical to the text of the paper copies of this Brief as filed with the Clerk.  The electronic (PDF) version of this Brief has been checked by Norton antivirus program, with all current updates, and no virus was detected.

 Dated: July 9, 2016                               /s/ Lorraine Gauli-Rufo, Esq.


## CERTIFICATION OF BAR MEMBERSHIP

Pursuant to Rules 28.3(d) & 46.1(e) of the Local Appellate Rules, I certify that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

Dated: July 9, 2016                               /s/ Lorraine Gauli-Rufo, Esq.

C.A. No.  16-1422

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

United States of America,
Appellee,

v.

Marijan Cvjeticanin,
Appellant.

On Appeal From an Order of the
The United States District Court for the
District of  New Jersey
(D.N.J. Crim. No. 14-274)
Sat Below:  Hon. Michael A. Shipp U.S.D.J.

Brief & Appendix, Volume One (pages 1-14)
of Appellant Marijan Cvjeticanin

LGR LAW, LLC
Lorraine S. Gauli-Rufo, Esq.
130 Pompton Avenue
Verona, NJ 07044
Telephone #: 973-239-4300
Fax #:  973-239-4310

ON THE BRIEF:

Lorraine S. Gauli-Rufo, Esq.

# TABLE OF CONTENTS TO APPENDIX

## VOLUME ONE

Page

Notice of Appeal, filed February 27, 2016. . . . . . . . . . . . . . . . . . . . . . . . . . . . Pa-1

Amended Judgment of Conviction, filed March 28, 2016  . . . . . . . . . . . .  Pa-2[1]

Judge Shipp Order, filed August 6, 2015. . . . . . . . . . . . . . . . . .. . . . . . . . . . . Pa-10

## VOLUME TWO

Transcript of Cvjeticanin Trial dated June 18, 2015. . . . . . . . . . . . . . . . . . . Pa- 15

Transcript of Cvjeticanin Trial dated June 22, 2015. . . . . . . . . . . . . . . . . . Pa-68

Transcript of Cvjeticanin Trial dated June 24, 2015. . . . . . . . . . . . . . . . . . Pa-116

## VOLUME THREE

Transcript of Cvjeticanin Trial dated June 25,2015. . . . . . . . . . . . . . . . . . . .Pa-297

Transcript of Cvjeticanin Trial dated June 29,2015. . . . . .. . . . . . . .. . . . . .Pa-437

## VOLUME FOUR

Transcript of Cvjeticanin Trial dated January 14, 2016. . . . . . . . . . . . .  Pa-563

Transcript of Cvjeticanin Trial dated February 17, 2016. . . . . . . . . . . . Pa- 597

Transcript of Cvjeticanin Trial dated February 18, 2016. . . . . . . . . . . . Pa-617

Transcript of Cvjeticanin Trial dated March 23, 2016. . . . . . . . . . . . . .Pa-708

---

[1] Cvjeticanin acknowledges that Pa. 8 is blank.

## VOLUME FIVE

Second Superseding Indictment dated June 19, 2015. . . . . . . . . . . . . . . . . .Pa-750

Jury Communications dated July 15, 2015 . . . . . . . . . . . . . . . . . . . . . . . . . Pa-761

Order Denying Omnibus Motion dated June 19, 2015 . . . . . . . . . . . . . . . Pa-765

Motion for New Trial dated July 13, 2015 . . . . . . . . . . . . . . . . . . . . . . . . . Pa-768

Supplemental Motion for New Trial dated July 17, 2015 . . . . . . . . . . . . . .Pa-784

Government Exhibit 7 (Count One). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Pa-787

Government Exhibit 274 (Count One) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .Pa-801

Government Exhibit 278 (Count One) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .Pa-803

Government Exhibit 2 (Count Five)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .Pa-804

Government Exhibit 289 (Count Five). . . .. . . . . . . . . . . . . . . . . . . . . . . . Pa-821

## VOLUME SIX

Government Actual Loss Chart . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .Pa-822

Defense Restitution Memorandum and Exhibits. . . . . . . . . . . . . . . . . . . . . Pa-823

Defense Sentencing Memorandum and Exhibits . . . . . . . . . . . . . . . . . . . . .Pa-839

Defense Restitution Reply Brief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .Pa-932

District of New Jersey Docket Sheets 3:14-cr-00274-MAS . . . . . . . .. . . . . . Pa-935

Amended Order of Restitution dated March 24, 2016 . . . . . . . . . . . . . . . . .Pa-955

United States District Court
District of New Jersey

UNITED STATED OF AMERICA    :
    :
    v.                  :     CRIM. NO. 14-274
    :
Marijan Cvjeticanin

## NOTICE OF APPEAL

Notice is hereby given that Marijan Cvjeticanin, defendant in the above –named case, appeals to the United States Court of Appeals for the Third Circuit from a Judgment in a Criminal Case filed in this matter on February 24, 2016.

Respectfully submitted,

/s/
Lorraine Gauli-Rufo
Attorney for Marijan Cvjeticanin

Date: February 27, 2016

**Pa 1**

AO 245C (Mod. D/NJ 12/06) Sheet 1 - Amended Judgment in a Criminal Case

# UNITED STATES DISTRICT COURT
## District of New Jersey

UNITED STATES OF AMERICA

   v.

                                     Case Number    3:14-CR-274-01 (MAS)

MARIJAN CVJETICANIN

   Defendant.

## AMENDED JUDGMENT IN A CRIMINAL CASE
### (For Offenses Committed On or After November 1, 1987)

**Date of Original Judgment:** 2/23/16
**Reason for Amendment:** Modification of Restitution Order (18 U.S.C. § 3664)

The defendant, MARIJAN CVJETICANIN, was represented by Lorraine Gauli-Rufo, CJA and Thomas Ambrosio, CJA.

The defendant was found guilty on counts 1ss-9ss by a jury verdict on 6/29/15 after a plea of not guilty. All previous counts of the original indictment (counts 1-6) and superseding indictment (counts 1s-12s) are dismissed. Accordingly, the court has adjudicated that the defendant is guilty of the following offense:

| Title & Section | Nature of Offense | Date of Offense | Count Numbers |
|---|---|---|---|
| 18:1341 & 2 | MAIL FRAUD | 9/2010-7/2012 | 1ss-9ss |

As pronounced on 2/18/16, the defendant is sentenced as provided in pages 2 through 7 of this Judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

It is ordered that the defendant shall pay to the United States a special assessment of $900, for counts 1ss-9ss ($100 on each count), which shall be due immediately. Said special assessment shall be made payable to the Clerk, U.S. District Court.

It is further ordered that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this Judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States Attorney of any material change in the defendant's economic circumstances.

Signed this the 28th day of March, 2016.

_MICHAEL A. SHIPP_
United States District Judge

I HEREBY CERTIFY that the above and foregoing is a true and correct copy of the original on file in my office.
ATTEST
WILLIAM T. WALSH, Clerk
United States District Court
District of New Jersey

By: _____
    Deputy Clerk

AO 245C (Mod. D/NJ 12/06) Sheet 2 - Imprisonment

Defendant:    MARIJAN CVJETICANIN
Case Number:    3:14-CR-274-01

## IMPRISONMENT

    The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 57 Months on each of counts 1ss through 9ss, to be served concurrently.

    The Court makes the following recommendations to the Bureau of Prisons: Designate a facility for service of this sentence as near as possible to the defendant's home address.

    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons on Date and Time to be determined by the Bureau of Prisons.

## RETURN

    I have executed this Judgment as follows:

_____

_____

_____

_____

At _____, with a certified copy of this Judgment.

Defendant delivered on _____ To _____

_____
United States Marshal

By _____
Deputy Marshal

**Pa 3**

AO 245C (Mod. D/NJ 12/06) Sheet 3 - Supervised Release

Defendant:     MARIJAN CVJETICANIN
Case Number:   3:14-CR-274-01

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of 3 years on each of counts 1ss through 9ss, all such terms to run concurrently.

Within 72 hours of release from custody of the Bureau of Prisons, the defendant shall report in person to the Probation Office in the district to which the defendant is released.

While on supervised release, the defendant shall comply with the standard conditions that have been adopted by this court as set forth below.

Based on information presented, the defendant is excused from the mandatory drug testing provision, however, may be requested to submit to drug testing during the period of supervision if the probation officer determines a risk of substance abuse.

If this judgment imposes a fine, special assessment, costs, or restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine, assessments, costs, and restitution that remains unpaid at the commencement of the term of supervised release and shall comply with the following special conditions:

NEW DEBT RESTRICTIONS

You are prohibited from incurring any new credit charges, opening additional lines of credit, or incurring any new monetary loan, obligation, or debt, by whatever name known, without the approval of the U.S. Probation Office. You shall not encumber or liquidate interest in any assets unless it is in direct service of the fine and/or restitution obligation or otherwise has the expressed approval of the Court.

SELF-EMPLOYMENT/BUSINESS DISCLOSURE

You shall cooperate with the U.S. Probation Office in the investigation and approval of any position of self-employment, including any independent, entrepreneurial, or freelance employment or business activity. If approved for self-employment, you shall provide the U.S. Probation Office with full disclosure of your self-employment and other business records, including, but not limited to, all of the records identified in the Probation Form 48F (Request for Self Employment Records), or as otherwise requested by the U.S. Probation Office.

**Pa 4**

AO 245C (Mod. D/NJ 12/06) Sheet 3a - Supervised Release

Defendant:     MARIJAN CVJETICANIN
Case Number:   3:14-CR-274-01

Judgment – Page 4 of 7

## STANDARD CONDITIONS OF SUPERVISED RELEASE

While the defendant is on supervised release pursuant to this Judgment:

1) The defendant shall not commit another federal, state, or local crime during the term of supervision.

2) The defendant shall not illegally possess a controlled substance.

3) If convicted of a felony offense, the defendant shall not possess a firearm or destructive device.

4) The defendant shall not leave the judicial district without the permission of the court or probation officer.

5) The defendant shall report to the probation officer in a manner and frequency directed by the Court or probation officer.

6) The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.

7) The defendant shall support his or her dependents and meet other family responsibilities.

8) The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons.

9) The defendant shall notify the probation officer within seventy-two hours of any change in residence or employment.

10) The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute or administer any narcotic or other controlled substance, or any paraphernalia related to such substances.

11) The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered.

12) The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer.

13) The defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer.

14) The defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer.

15) The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court.

16) As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

(17) You shall cooperate in the collection of DNA as directed by the Probation Officer.

*(This standard condition would apply when the current offense or a prior federal offense is either a felony, any offense under Chapter 109A of Title 18 (i.e., §§ 2241-2248, any crime of violence [as defined in 18 U.S.C. § 16], any attempt or conspiracy to commit the above, an offense under the Uniform Code of Military Justice for which a sentence of confinement of more than one year may be imposed, or any other offense under the Uniform Code that is comparable to a qualifying federal offense);*

(18) Upon request, you shall provide the U.S. Probation Office with full disclosure of your financial records, including co-mingled income, expenses, assets and liabilities, to include yearly income tax returns. With the exception of the financial accounts reported and noted within the presentence report, you are prohibited from maintaining and/or opening any additional individual and/or joint checking, savings, or other financial accounts, for either personal or business purposes, without the knowledge

**Pa 5**

AO 245C (Mod. D/NJ 12/06) Sheet 3a - Supervised Release

Defendant:    MARIJAN CVJETICANIN

Case Number:    3:14-CR-274-01

Judgment – Page 5 of 7

and approval of the U.S. Probation Office. You shall cooperate with the Probation Officer in the investigation of your financial dealings and shall provide truthful monthly statements of your income. You shall cooperate in the signing of any necessary authorization to release information forms permitting the U.S. Probation Office access to your financial information and records;

(19)  As directed by the U.S. Probation Office, you shall participate in and complete any educational, vocational, cognitive or any other enrichment program offered by the U.S. Probation Office or any outside agency or establishment while under supervision;

(20)  You shall not operate any motor vehicle without a valid driver's license issued by the State of New Jersey, or in the state in which you are supervised. You shall comply with all motor vehicle laws and ordinances and must report all motor vehicle infractions (including any court appearances) within 72 hours to the U.S. Probation Office;

---

*For Official Use Only - - - U.S. Probation Office*

Upon a finding of a violation of probation or supervised release, I understand that the Court may (1) revoke supervision or (2) extend the term of supervision and/or modify the conditions of supervision.

These conditions have been read to me. I fully understand the conditions, and have been provided a copy of them.

You shall carry out all rules, in addition to the above, as prescribed by the Chief U.S. Probation Officer, or any of his associate Probation Officers.

(Signed) _____

Defendant                                    Date

_____

U.S. Probation Officer/Designated Witness          Date

---

**Pa 6**

AO 245C (Mod. D/NJ 12/06) Sheet 3a - Supervised Release

Defendant:     MARIJAN CVJETICANIN
Case Number:  3:14-CR-274-01

## RESTITUTION

The defendant shall make restitution in the total amount of $1,254,163.36. The Court will waive the interest requirement in this case. Payments should be made payable to the **U.S. Treasury** and mailed to Clerk, U.S.D.C., 402 East State Street, Rm 2020, Trenton, New Jersey 08608, for proportionate distribution to the following victims in the following amounts:

| Name of Payee (Victim) | Amount of Restitution |
|---|---|
| Automatic Data Processing<br>c/o David Turetsky<br>1 ADP Boulevard, MS 325<br>Roseland, NJ 07068 | $482,660 |
| Broadridge Financial Solutions, Inc.<br>c/o Mark DiGidio<br>2 Journal Square Plaza<br>Jersey City, NJ 07306 | $186,317 |
| Liberty International Underwriters<br>c/o Charles S. Levine<br>55 Water Street<br>New York, NY 10041 | $120,186.36 |
| Wildes & Weinberg, P.C.<br>c/o Steven L. Weinberg<br>515 Madison Avenue, 6th Fl.<br>New York, NY 10022 | $465,000 |

The restitution is due immediately. It is recommended that the Defendant participate in the Bureau of Prisons Inmate Financial Responsibility Program (IFRP). If Defendant participates in the IFRP, the restitution shall be paid from those funds at a rate equivalent to $25 every 3 months. In the event the entire restitution is not paid prior to the commencement of supervision, the Defendant shall satisfy the amount due in monthly installments of no less than $1,000, to commence 30 days after release from confinement.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) community restitution, (6) fine interest, (7) penalties, and (8) costs, including cost of prosecution and court costs.

**Pa 7**

AO 245C (Mod. D/NJ 12/06) Sheet 3a - Supervised Release

Defendant:     MARIJAN CVJETICANIN
Case Number:   3:14-CR-274-01

## RESTITUTION AND FORFEITURE

### FORFEITURE

The defendant is ordered to forfeit the following property to the United States:

Please see judgment and order of forfeiture entered on 2/19/16.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) community restitution, (6) fine interest, (7) penalties, and (8) costs, including cost of prosecution and court costs.

**Pa 9**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA

v.

MARIJAN CVJETICANIN

Criminal Action No. 14-274 (MAS)

**ORDER**

This matter comes before the Court on Defendant Marijan Cvjeticanin's motion for post-trial relief pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure, and the Court, having considered the parties' arguments, decides the matter without oral argument.

In support of his motion, Defendant argues that he is entitled to a new trial because he was deprived of his Constitutional right to due process and because of prosecutorial misconduct. Defendant further argues that his decision not to testify on his own behalf was not a knowing and intelligent decision because his decision was premised on his belief that the jury would have certain newspaper exhibits during deliberations. Defendant's arguments center around the notion that the deliberating jury convicted him "without having had the opportunity to view the advertisements" that defense counsel argued in closing proved his innocence. This notion, however, is based on Defendant's mischaracterization of the facts.

The following relevant events occurred on June 25 and 29, 2015[1]:

June 25, 2015 (after the Government rested) –

- Outside the presence of the jury, defense counsel informed the Court that the only evidence Defendant sought to be admitted would be a stipulation, agreed to by the parties, and then the defense would rest. (6/25/15 Tr. 108:11-13, ECF No. 83.) The Court also confirmed with the parties and the courtroom deputy that the Court had all the trial exhibits. (*Id.* at 110:9-14.) In response, defense counsel raised an objection to the completeness of some of the Government's exhibits. (*Id.* at 110:20-111:9.) The Government had no objection to defense counsel's request. (*Id.* at 111:10-11.) No other objections were raised regarding

---

[1] The Court did not sit for trial on Friday, June 26, 2015.

**Pa 10**

the admitted evidence. Off-the-record, the courtroom deputy instructed counsel to review the admitted evidence she had in her possession that would be going with the jury into deliberations.

June 29, 2015 (after the jury was charged and closing arguments) –

- 12:07 pm: The jury was excused from the courtroom to begin deliberations. The jury was provided with all the evidence admitted at trial except the newspapers and Computer World magazines. (6/29/15 Tr. 86:8-9, 87:16-22, ECF No. 85.)

- 1:10 pm: The Court received Jury Communication #1, stating "need newspapers for <u>Count</u> [sic] <u>One</u> & <u>Five</u>."

- 2:07 pm: After counsel for both parties returned to the courtroom, the Court placed Jury Communication #1 on the record. Counsel agreed the best course of action was to send all the newspapers back to the jury, as well as the Computer World magazines. (*Id.* at 86:25-88:2.) The Court agreed. (*Id.* at 88:3-6.)

- 2:38 pm: The Court received Jury Communication #2, stating "What is going on? We have been waiting for over an hour!"

- 2:42 pm: The Court placed Jury Communication #2 on the record. In response, the Government stated that all the newspapers for Count One and the Computer World magazines were ready to go back to the jury. The parties, however, were still gathering the newspapers relevant to Count Five. The Government suggested sending the newspapers for Count One and the Computer World magazines back to the jury immediately, and sending the remaining materials when they were ready. Defense counsel did not object. (*Id.* at 88:22-89:6.) The Court agreed, and the newspapers for Count One and the Computer World magazines were brought to the jury.

- 2:57 pm: The Court received Jury Communication #3, stating "we have a verdict."

- 3:09 pm: The Court placed Jury Communication #3 on the record. Neither counsel requested to be heard on this communication. The Court, however, in an "abundance of caution" had the newspapers for Count Five sent to the jury for consideration before receiving the verdict.[2] (*Id.* at 89:20-90:7, 90:18-91:2, 92:9-16.) Neither party objected.

---

[2] The Government stated that all the newspapers for Count Five were ready for the jury except one that may have been "inadvertently taken back" to the United States Attorney's Office. (6/29/15 Tr. 90:8-13.) Defendant argues that this act of possibly removing evidence from the courtroom during trial constitutes prosecutorial misconduct and, therefore, Defendant is entitled to a new trial. To find Defendant is entitled to a new trial because of prosecutorial misconduct, the Court "must first be convinced that the prosecution did in fact misconduct itself." *United States v. Rivas*, 493 F.3d 131, 139 (3d Cir. 2007). Here, although the Court expects the Government to be more prepared and organized with its trial exhibits, on the facts presented, the misplacing or

- 3:35 pm: The Court received Jury Communication #4, stating: "WE HAVE A VERDICT."

- 3:44 pm: The Court received the jury's verdict, finding Defendant guilty on all counts.

Rule 33 of the Federal Rules of Criminal Procedure provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. A district court "can order a new trial only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." *United States v. Silveus*, 542 F.3d 993, 1004-05 (3d Cir. 2008) (internal quotation marks omitted). "A court must grant a motion for a new trial when a reasonable possibility exists that a trial error had a substantial influence on the verdict." *United States v. Hamilton*, No. 05-876, 2010 WL 1027412, at *1 (D.N.J. March 18, 2010) (internal quotation marks omitted). A Court will find error when the conduct in question was "sufficiently prejudicial to violate [a] defendant's due process rights." *United States v. Scarfo*, 685 F.2d 842, 849 (3d Cir. 1982).

Rule 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29. The defendant seeking relief under Rule 29 bears "a very heavy burden." *United States v. Anderson*, 108 F.3d 478, 481 (3d Cir. 1997). The court must view the totality of the evidence, resolving competing inferences and credibility issues in the prosecution's favor. *United States v. Hart*, 273 F.3d 363, 371 (3d Cir. 2001). If "any rational trier of fact could have found proof of guilt beyond a reasonable doubt," Rule 29 relief must be denied. *Silveus*, 542 F.3d at 1002.

---

unintentional brief removal of an exhibit from the courtroom does not constitute prosecutorial misconduct.

The core of Defendant's argument is that improper evidence handling procedures led to a due process violation when the jury rendered its verdict before receiving requested, unpublished evidence. Defendant's argument, however, mischaracterizes the timeline of events prior to the jury rendering a verdict and this Court accepting that verdict. Counsel was given an opportunity to review all evidence in the possession of the courtroom deputy on June 25, 2015, prior to the evidence going back with the jury to deliberations on June 29, 2015. Additionally, the parties were aware that due to the voluminous nature of the newspapers, those exhibits would remain in the courtroom during deliberations. As is clear from the jury communications, the jury also understood the newspapers were remaining in the courtroom and were available to them upon request. The jury received all of the Computer World magazines and the newspapers relating to Count One prior to rendering a verdict. As elicited at trial, the Computer World magazines provided an alternate theory upon which the jury could convict Defendant on all counts. Even after the jury communicated that it reached a verdict, but before the newspapers for Count Five could be delivered, the Court, in the utmost of caution, did not accept the jury's verdict. Instead, the Court brought the remaining newspapers requested to the jury, without instruction, and permitted the jury to communicate if it still had reached a verdict. Defendant did not object during any of these procedures, except as noted above.

Here, justice does not require a new trial. Although Defendant focuses on the jury communicating it reached a verdict prior to receiving the newspapers related to Count Five, the jury was able to reach a verdict any time after it began deliberating. The mere fact that the jury requested evidence and then determined it was able to reach a verdict without that evidence does not constitute an error. There is no serious danger that a miscarriage of justice occurred in this

case, and Defendant is not entitled to a new trial. Additionally, as Defendant asserts the same arguments in support of his Rule 29 motion, this Court's analysis equally applies to that motion.

Based on the foregoing, and for other good cause shown,

**IT IS** on this 6th day of August 2015, **ORDERED** that Defendant's motion for post-trial relief pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure (ECF Nos. 77, 88, 90) is **DENIED**.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**