No. 16-1422
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

UNITED STATES OF AMERICA,

V.

MARIJAN CJVETICANIN

APPELLANT.
_____

On Appeal From an Order of the
The United States District Court for the
District of New Jersey (D.N.J. Crim. No. 14-274)
Sat Below: Hon. Michael A. Shipp U.S.D.J.

_____

**Reply Brief
of Appellant Marijan Cvjeticanin**

LGR Law, LLC
Lorraine Gauli-Rufo, Esq.,
130 Pompton Avenue
Verona, NJ 07044
(o)(973) 239-4300
(fax) (973) 239-4310

On the Brief:
Lorraine Gauli-Rufo, Esq.

**TABLE OF CONTENTS**

**RESPONSE TO THE GOVERNMENT'S STATEMENT OF THE FACTS AND THE CASE**……………………………………………………………….1

**LEGAL ARGUMENT**

**THE DISTRICT COURT'S FAILURE TO MAINTAIN CUSTODY OF DOCUMENTS ADMITTED INTO EVIDENCE ULTIMATELY DEPRIVED CVJETICANIN OF A FAIR TRIAL BECAUSE THE JURY REACHED A VERDICT BEFORE IT HAD ALL THE EVIDENCE IT HAD SPECIFICALLY REQUESTED TO REVIEW…**……………………………………………………………………….3

**CONCLUSION**……………………………………………...………………………….10

# RESPONSE TO THE GOVERNMENT'S STATEMENT OF THE FACTS AND THE CASE

It is ironic that the Government has characterized Marijan Cvjeticanin as untrustworthy when its very own representations in its Statement of the Facts are twisted, taken out of the appropriate context, and/or simply cannot be trusted at face value. For this very reason, this Court must categorically reject the Government's Statement of the Facts, and rely instead on both Cvjeticanin's Statement as well as an independent examination of the facts based on a review of the record provided in this case. *See generally* Pa4-7.

Cvjeticanin relies fully on the statements made in his Statement of Facts and brief overall. And, by way of example only, he points out that the Government has misrepresented that Cvjeticanin took "pains" to conceal his identity of Flowerson Advertising and his wife's employment there. *See* Government's Brief at 4. As Cvjeticanin explains in his Statement of Facts, he did not actively try to conceal the fact that he was using his own company for advertising purposes. Neither the law firm nor its primary client, ADP, expressed any interest or question regarding Cvjeticanin's choice of advertising company or people involved in the new company. They never asked any questions and deferred greatly to Cvjeticanin's authority. Pa94-95; PSR ¶ 34.

The Government has also glaringly misrepresented that Cvjeticanin has profited from "doing nothing" because he never placed any advertisements, but that is an outright lie.  *See* Legal Argument supra & Point II. of Appellate Brief.  Cvjeticanin actually paid for <u>and</u> placed advertisements on behalf of the corporate victims, thus negating one of the Government's major allegations in the case against him.  *Id.*; *see also* Pa. 510-512.  During its closing argument, the defense made the jury specifically aware of the existence of the advertisements Cvjeticanin had actually paid for and placed in various Sunday newspapers.   The fatal problem is that the jury was precluded from viewing these advertisements until <u>after</u> they reached a verdict on all counts.  *See infra*.

Twisting the testimony again, the Government brazenly attempts to represent to this Court that Cvjeticanin declared that he was "very proud" of committing the crimes with which he was accused and ultimately convicted.  *See* Government's Brief at 7.  Again, the Government has misrepresented evidence and the Court's own independent review of the record will surely reveal this.  After all, Cvjeticanin never testified at trial, and the Government casts the false impression that Cvjeticanin not only uttered this statement about his conduct, but made it at trial!

And yet as just another blatant example of how far the Government has gone to depict Cvjeticanin in a false and negative light, the Government even boldly represents that Cvjeticanin "blamed the clients for not discovering the fraud" and posed the question, "What's wrong with people making money?"  First of all, these statements were made by <u>defense counsel</u> during closing arguments; they were not statements that Cvjeticanin personally made.  Second, the Government has completely and utterly cited these statements outside of their proper context, aside from improperly attributing them to a different speaker.  The Government's conduct in handling its entire factual statement in this manner is nothing short of offensive and improper, as was the Government's initial act of removing admitted evidence from the courtroom.

## **LEGAL ARGUMENT**

### **THE DISTRICT COURT'S FAILURE TO MAINTAIN CUSTODY OF DOCUMENTS ADMITTED INTO EVIDENCE ULTIMATELY DEPRIVED CVJETICANIN OF A FAIR TRIAL BECAUSE THE JURY REACHED A VERDICT BEFORE IT HAD ALL THE EVIDENCE IT HAD SPECIFICALLY REQUESTED TO REVIEW.**

It bears repeating that Cvjeticanin fully relies upon and reiterates all of the arguments made in his appellate brief regarding Points I-IV.  The Government has not offered any compelling or persuasive arguments to undermine

Cvjeticanin's position as to any of these Points. Additionally, as to Point II in particular, he contends the following:

The District Court Judge lost control of the courtroom when he allowed documents critical to the defense to leave the courtroom in the Government's hands. The Government removed from the courtroom key advertisements that the jury asked for during deliberations and never got to see or review before it reached a verdict. Unbelievably, the Government did this even though it had expressly reassured the Judge and the defense on record that all newspapers (containing the advertisements) were within the courtroom:

> I don't know if the jury knows this, we submitted all the newspapers in evidence, early on in the case, and maybe before they deliberate, they should just be – they should just be – they should be made aware to them, that there are all here in the courtroom. I don't know if they want to see them, but I don't know that we actually made that clear to them. To the extent that they know that all the evidence is here, I just want to get that on the record.

Pa 410-411.

That was a blatant lie.

The Judge and the Government bore responsibility for maintaining and keeping these documents within the courtroom and available for the jury upon their immediate, prompt request. During defense counsel's closing argument, the defense made certain representations to the jury regarding the

4

existence of documents critical to Cvjeticanin's mail fraud defense. Though the defense directed the jury to look at these documents, the jury was precluded from doing so because they were not in the courtroom.  When the jury asked for these documents, they were not promptly delivered to them, and the jury reached a verdict without them.

In presenting its case at trial, the Government alleged that Cvjeticanin defrauded corporate victims when he sent invoices to such victims for advertisements that were never placed.  Pa. 477-478.  The Government further alleged that Cvjeticanin profited from his scheme to defraud because he kept money that should have been used to pay for such advertisements. Pa. 480-481.

Countering that theory, defense counsel represented to the jury during closing arguments that Cvjeticanin actually paid for and placed advertisements on behalf of the corporate victims. Pa. 509-512.  More importantly, defense counsel represented to the jury in closing arguments that the advertisements that Cvjeticanin paid for <u>were included within the Government's own exhibits</u>.  Defense counsel even displayed a chart to the jury during closing arguments.  The chart listed the specific Government

Exhibit and page number where each advertisement placed by Cvjeticanin could be located. Pa. 510-514.

Indeed, Cvjeticanin had placed the advertisements that the Government represented he had failed to place. The very existence of such advertisements revealed that Cvjeticanin contradicted the Government's theory of criminality, demonstrating that Cvjeticanin did not commit the fraud that the Government accused him of.[1] But the Government withheld this evidence from the jury and, as a result, Cvjeticanin was severely and irreparably prejudiced. Had the jury been given these documents, they would have seen that Cvjeticanin placed the advertisements in question and thus was not guilty of all counts, specifically, count five.

The jury returned a verdict hastily and without all of the evidence it requested. Their notes and communications with the court easily reveal this. The court excused the jury from the courtroom to begin deliberations at 12:07 p.m. Pa. 522. At 1:37 p.m., the jury issued the first of four Jury Communications. (Jury Communication

---

1 The Government provides in its brief that the evidence sought by the Jury in Communications #1 and #2 was not exculpatory. Gov. Br. 30. However, it pompously and faultily cites to its own Brief filed in the District Court below, in Opposition to Defendant's Motion for a New Trial, for support for this contention. Government Brief at 30, citing SA 237-242. In order to aid this Court in addressing the Government's egregious rendition of the facts both in its Appellate Brief and its brief submitted before the District Court below, as well as to put the arguments raised by the defense below in their proper context, the Defense is submitting the Defendant's Motion to Dismiss (for which the Government's Opposition was filed in response), as well as Defendant's Supplemental Motion, and Reply. SAA 1 –33.

6

#1, attachment to new trial motion).   At 2:07 p.m., the court placed on the record the contents of Communication #1, which reads, "Need newspapers for counts 1 and 5." Pa. 522.  The contents of Jury Communication #1 was placed on the record a full 40 minutes after the jury actually wrote Jury Communication #1.  During the on-the-record colloquy, the Government and defense counsel agreed, with the court's approval, that the newspapers for count 1 and 5, as well as all the other newspapers admitted into evidence during trial, but not yet given to the jury, should be given to the jury for use in its deliberations. The colloquy in connection with Jury Communication #1 ended at 2:11 p.m.   Pa. 524.   At 2:39 p.m., Jury Communication # 2 was communicated by the jury. (Jury Communication #2, attachment to new trial motion).   At 2:42 p.m., the contents of Jury Communication # 2 was placed on the record by the court, "The Court has received what's marked as jury communication number 10, however, it's really jury communication number 2, but apparently they feel like it's number 10. Their note says, quote, 'what is going on, question mark. We have been waiting for over an hour, exclamation point. So, apparently, you have a very anxious jury." Pa. 524.   That colloquy ended at 2:45 p.m. Pa. 525. At 2:57 p.m., the jury sent Jury Communication # 3, which was placed on the record at 3:09 p.m., which read simply, "We have a verdict." Pa. 763. This communication was sent before the jury actually received the evidence it had

requested in Jury Communication #1, which request had been made almost 2 hours before the verdict. It is clear from the record that the jury did not receive the evidence it requested two hours earlier because the Government removed from the courtroom the specific evidence that had been requested. As the prosecutor explained:

> No, your Honor. The -- so here's what we have. We have all the documents here, all the newspapers for all counts except for one newspaper that we are getting from the U.S. Attorney's Office. I think it was inadvertently taken back there. So minus that one newspaper, we have everything. It was Count 5, Judge. It's that one newspaper that we were missing relates to Count 5, of course.

Pa 526.

The jury clearly reached a verdict before having received the evidence it had requested to review. The District Court Judge sent the evidence to the jury, but could not alter the fact that they had already reached the verdict. And the Judge gave the jury no instructions- he simply let the jury "decide what they want[ed] to do with it," explaining:

> Okay. In an abundance of caution, I think it's appropriate that we make sure they have that. Even though they say they have a verdict, there's nothing that requires us to do that. I think it's only appropriate just so that they make sure what

8

>they requested initially has no bearing whatsoever
>on their verdict. And I think it's the appropriate thing
>to do. So I'm going to go ahead and let them at least
>peruse through that document, and then once
>they've looked at whatever that document is, they can
>advise the Court if they have a verdict at that time.
>So I think that what I'm going and what I'm inclined to do, is
>as soon as you have that newspaper, or whatever it is
>that you are waiting for, all that go down together to the jury
>and then let them decide what they want to do with it.
>I'm not sending any instruction whatsoever, but just to say
>that this is in response to your first jury communication.
>And then they may very well say, Okay, Judge, thank you,
>but we have a verdict.

Pa. 526-528.

At 3:35 p.m., Jury Communication #4 was sent to the Court, which provided in very large letters, "We have a Verdict!" (Pa. 764). At 3:44 p.m., the jury was brought back to the courtroom and the verdict received. (Pa. 529). Before the requested evidence was provided to the jury, the jury was neither instructed by a note nor given instructions by the judge as to how to handle the failure to receive the evidence it had requested through Jury Communication #1.

Under these circumstances, the verdict returned was tainted and amounts to a miscarriage of justice for Cvjeticanin. The Government's actions and District Court's failures prevented the timely and proper receipt of requested trial evidence into the jury room, violating Cvjeticanin's due process right to present a complete, effective defense to the criminal charges against him.

9

Moreover, the Government's impermissible, unchecked conduct in removing from the courtroom the advertisements critical to Cvjeticanin's defense is a clear violation of the Local Civil Court Rules. Under Local Civil Rule 79.1, which governs "Custody of Original Papers, Records and Exhibits," "No original papers or records shall be taken from . . . the courtroom without an order from a Judge." L. Civ. R. 79.1(a). The Government had <u>no right</u> to remove trial evidence from the courtroom, and, indeed, the District Court and its staff breached its obligation by even allowing evidence to slip outside of the courtroom doors: "Unless the Court otherwise directs, each exhibit admitted into evidence prior to disposition of any matter shall be held in the custody of the Clerk." L. Civ. R. 79.1(b). The defense never agreed to the removal of any documents or other trial evidence from the courtroom. The Government's position that the defense ever agreed or would have agreed that any advertisements critical to Cvjeticanin's defense could be removed from the courtroom or the jury's accessibility is preposterous and should be rejected.

## **CONCLUSION**

For all the reasons explained in the initial appellate brief as well as above, this Court should reverse and vacate Defendant Marijan Cvjeticanin's judgment of

conviction and/or alternatively, vacate his sentence and grant a remand for re-sentencing.

/s Lorraine Gauli-Rufo, Esq.
Attorney for Appellant
Marijan Cvjeticanin

Dated:   September 15, 2016