No. 16-1422

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

UNITED STATES OF AMERICA,

V.

MARIJAN CJVETICANIN

APPELLANT.

_____

On Appeal From an Order of the
The United States District Court for the
District of New Jersey (D.N.J. Crim. No. 14-274)
Sat Below: Hon. Michael A. Shipp U.S.D.J.

_____

**Reply Supplemental Appendix
of Appellant Marijan Cvjeticanin**

LGR Law, LLC
Lorraine Gauli-Rufo, Esq.,
130 Pompton Avenue
Verona, NJ 07044
(o)(973) 239-4300
(fax) (973) 239-4310

On the Brief:
Lorraine Gauli-Rufo, Esq.

**TABLE OF CONTENTS**

**DEFENSE MOTION AND BRIEF FOR A NEW TRIAL AND EXHIBITS**…………………………………………………………..**1**

**DEFENSE SUPPLEMENTAL BRIEF** …………………..………………**17**

**DEFENSE REPLY BRIEF**…………….…....................…………….....**20**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARIJAN CVJETICANIN<br><br>Defendants. | Criminal No. 14-274 (MAS)<br><br>Filed Electronically<br><br>**MOTION FOR NEW TRIAL PURSUANT TO<br>RULE 29 and RULE 33** |

---

## BRIEF IN SUPPORT OF DEFENDANT MARIJAN CVJETICANIN'S MOTION FOR NEW TRIAL

---

Lorraine Gauli-Rufo, Esq.
130 Pompton Avenue
Verona, NJ 07044
973.239.4300

Thomas Ambrosio, Esq.
750 Valley Brook Avenue
Lyndhurst, NJ 07071
201.935.3005

*Attorneys for Defendant Marijan Cvjeticanin*

## Basis for New Trial

Defendant, Marijan Cvjeticanin, is entitled to a new trial because of improper trial evidence handling procedures, coupled with representations made to the jury in Defense Counsel's closing arguments likely caused the jury to believe Defense Counsel lied in closing arguments and therefore, led the jury to unfairly believe the Defendant was guilty because his attorney lied.  These actions resulted in Defendant being deprived of his Constitutional Rights to Due Process.  This argument is set forth more fully below.

## Procedural History

Defendant, Marijan Cvjeticanin, was tried before a jury in the above-captioned, nine count, mail-fraud Indictment. Jury selection in the case began and concluded on June 22, 2015. The trial immediately commenced after jury selection. Jury instructions and closing arguments were given to the jury on June 29, 2015. Prior to the jury commencing deliberations, the Court failed to recount the agreement between the Government and Defense Counsel, and to assure a proper accounting of evidence.  The record does not reveal what evidence, if any, the jury had in its possession during its deliberations.

The Government in its closing arguments set forth two separate theories of why Defendant was guilty of mail fraud. The first theory was that Defendant invoiced the corporate victims and received payments for Computer World advertisements that were never placed by Defendant. The second theory of fraud was that Defendant invoiced the corporate victims and received payment for Sunday newspaper advertisements that were not placed and/or were fraudulently placed. The Jury Verdict Form did not request the jury to indicate which theory or theories upon which it based its finding of guilt.

After three hours of deliberation the jury rendered a guilty verdict against the Defendant on all nine counts of the indictment.

## **Statement of Facts**

During Defense Counsel's closing arguments certain representations were made to the jury about the existence of documents critical to Defendant's mail fraud defense. In the presentation of its case at trial the Government alleged that Defendant defrauded corporate victims when the Defendant sent invoices to the corporate victims for advertisements that were never placed. The Government further alleged that the Defendant profited from his scheme to defraud because he kept money that should have been used to pay for advertisements.

Defense Counsel represented to the jury during closing arguments that, contrary to the Government's assertions, the Defendant actually paid for and placed advertisements on behalf of the corporate victims, thus negating a major allegation made by the Government. More importantly, Defense Counsel represented to the jury in closing arguments that the advertisements paid for by the Defendant were contained in the Government's own exhibits. Defense Counsel went so far as to display a chart to the jury, during closing arguments. The chart listed the specific Government Exhibit and page number where each advertisement placed by the Defendant could be found. Prior to the Defendant's closing arguments the jury was completely unaware of the existence of the advertisements Defendant had actually paid for and placed in various Sunday newspapers. The jury was unaware of the existence of these advertisements because, for tactical defense reasons, the advertisements referenced in Defense Counsel's closing arguments were not published to the jury during any defense cross examinations. The advertisements were not published during the Defendant's case because the Defendant called no witnesses. The Government did not publish any of the advertisements referenced in Defense Counsel's closing arguments.

A pertinent part of Defense Counsel's closing arguments concerning the existence of advertisements placed by Defendant begins on Page 73 of the June 29, 2015 Trial Transcripts and read as follows:

"                                                                 Page 73

22    What I'm submitting to you is, that was Marijan's
23    desire to be perfect in his dealings with ADP and with Wildes
24    and Weinberg. But, what the Government didn't tell you is
25    that if you look -- if you look at the counts of the

Page 74

1    indictment, and you go through these papers, I just put them
2    down in here, like Count 1, you're going to find an ad for
3    12/19/2010, Government Exhibit 74, Section 10, Page 3.    Count
4    1, there's going to be an ad from Wildes and Weinberg -- from
5    Flowerson Holdings on 1/16/11, that's going to be Government
6    Exhibit 78, Section 10, Page 8.        You don't need to memorize
7    these because all you need to do is verify what I'm saying is,
8    ladies and gentlemen, with the four counts of the indictment
9    that deal with the audit files, go to the 9089, find out what
10    are the two dates of publication, what the publication is --
11    is it the Star Ledger or the Seattle Times, look at the
12    classified sections and look for an ad that was written by
13    Flowerson Holdings, it's got hiringinfo@aol.com, you're going
14    to find an ad, and it's most likely going to be a computer ad.
15    What I submit to you is that, that ad was not perfect.
16    And why am I bringing this up?        Because the fact that
17    there is an ad in the newspaper on the date in question, the
18    date that is on the 9089, shows that Flowerson and Marijan
19    paid for an ad, they paid for an ad that was wrong.    There was
20    no intent to defraud.    The Government's theory is you make
21    money because you don't put the ad in, and you keep the money
22    in your pocket.        But in this scenario, they put the ad in.        It
23    doesn't make sense that you would spend money on an ad that is
24    incorrect and waste your money."

Ultimately, based upon the reasons set forth below, the jury unfairly convicted the Defendant on all nine counts of mail fraud without having had the opportunity to view the advertisements which Defense Counsel vigorously asserted in closing arguments existed and which Defense Counsel argued served as one of the main reasons Defendant was not guilty of mail fraud.

The Court excused the jury from the Courtroom to begin deliberations at 12:07 p.m.[1] at 1:37 p.m. the jury issued the first of four Jury Communications.[2]   At 2:07 p.m. the Court placed

[1] June 29, 2015 Trial Transcript page 86, line 8
[2] *See* Jury Communication #1, attached hereto as Exhibit A.

SAA4

on the record the contents of Communication #1 which read "Need newspapers for counts 1 and 5."[3] The placing on the record of the contents of Jury Communication #1 was a full 40 minutes after the jury wrote Jury Communication #1. During the on the record colloquy, the Government and Defense Counsel agreed, with the Court's approval, that the newspapers for count 1 and 5, as well as all the other newspapers admitted into evidence during trial, but not yet given to the jury, should be given to the jury for use in its deliberations. The colloquy in connection with Jury Communication #1 ended at 2:11 p.m.[4] At 2:39 p.m., Jury Communication # 2 was communicated by the jury.[5] At 2:42 p.m. the contents of Jury Communication # 2 was placed on the record by the Court, "The Court has received what's marked as jury communication number 10, however, it's really jury communication number 2, but apparently they feel like its number 10. Their note says, quote, 'what is going on, question mark. We have been waiting for over an hour, exclamation point' So, apparently, you have a very anxious jury."[6] That colloquy ended at 2:45 p.m.[7] At 2:57 p.m. the jury sent Jury Communication # 3 which was placed on the record at 3:09 p.m. which read simply "We have a verdict."[8] This communication was sent before the jury actually received the evidence it had requested in Jury Communication #1, which request had been made almost 2 hours prior to the verdict. It is clear from the record that the jury did not receive the evidence it requested two hours earlier, because the specific evidence requested had been removed by the Government from the Courtroom. As Francisco Navarro, AUSA, explained:

> 8  No, your Honor. The -- so here's what
> 9  we have. We have all the documents here, all the newspapers
> 10  for all counts except for one newspaper that we are getting
> 11  from the U.S. Attorney's Office. I think it was inadvertently
> 12  taken back there. So minus that one newspaper, we have
> 13  everything.
>
> 16  It was Count 5, Judge. It's that one
> 17  newspaper that we were missing relates to Count 5, of course.[9]

[3] June 29, 2015 Trial Transcript, page 86, lines 17-20
[4] June 29, 2015 Trial Transcript, page 88, lines 3-9
[5] *See* Jury Communication #2 (labeled Jury Communication # 10), attached hereto as Exhibit B.
[6] June 29, 2015 Trial Transcript, page 88, line 17-20
[7] June 29, 2015 Trial Transcript, page 89, line 17
[8] *See* Jury Communication #3, attached hereto as Exhibit C.
[9] June 29, 2015 Trial Transcript, page 90, line

The jury clearly reached a verdict prior to having been given evidence it had requested to review. The Court attempted to remedy any issue with a verdict having been rendered when as in this case, the jury was not provided with evidence it specifically requested and which had not been sent into the jury room. The Court ruled:

```
"                              Page 90
18    Okay.  In an abundance of caution, I
19    think it's appropriate that we make sure they have that.      Even
20    though they say they have a verdict, there's nothing that
21    requires us to do that.  I think it's only appropriate just so
22    that they make sure what they requested initially has no
23    bearing whatsoever on their verdict.  And I think it's the
24    appropriate thing to do.        So I'm going to go ahead and let
25    them at least peruse through that document, and then once

                               Page 91

1     they've looked at whatever that document is, they can advise
2     the Court if they have a verdict at that time.
                                        Page 92
9     So I think that what I'm going and what
10    I'm inclined to do, is as soon as you have that newspaper, or
11    whatever it is that you are waiting for, all that go down
12    together to the jury and then let them decide what they want
13    to do with it.   I'm not sending any instruction whatsoever,
14    but just to say that this is in response to your first jury
15    communication.       And then they may very well say, Okay, Judge,
16    thank you, but we have a verdict.
```

At 3:35 p.m., Jury Communication #4 was sent to the Court, which provided in very large letters, "We have a Verdict!"[10] At 3:44 p.m. the jury was brought back to the Courtroom and the verdict received.[11]

Prior to the requested evidence being provided to the jury, the jury was not instructed by a note, nor was it brought out into open Court to be instructed as to how it was to handle the failure to receive the evidence it had requested in Jury Communication #1.

[10] Jury Communication #4, attached hereto as Exhibit D.
[11] June 29, 2015 Trial Transcript, page 93, line 2

## Legal Argument

### A.    The Interests of Justice Require the Granting of a New Trial

Under Federal Rule of Criminal Procedure 33, "[u]pon the Defendant's motion, the Court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. Proc. 33. The Court can order a new trial where it believes "that a miscarriage of justice has occurred." *United States v. Brennan,* 326 F.3d 176, 189 (3d Cir.2003). The decision to grant a new trial is within the sound discretion of the district Court. *U.S. v. Quiles*, 618 F.3d 383 (3d Cir. 2010).  In considering a Rule 33 motion, Courts should not consider evidence in the light most favorable to the Government, in stark contrast to the standard for a Rule 29 Motion. "[R]ather, on a Rule 33 motion, the Court exercises its own judgment in assessing the Government's case" to determine whether a judgment of conviction constitutes a manifest injustice in light of the evidence admitted at trial. *See United States v. Johnson,* 302 F.3d 139, 150 (3d Cir.2002); *see also Brennan,* 326 F.3d at 189.

The Due Process Clause of the Fourteenth Amendment, together with the Compulsory Process or Confrontation clauses of the Sixth Amendment, guarantee criminal Defendants "a meaningful opportunity to present a complete defense."  *Crane v. Kentucky*, 476 U.S. 683, 690 (1986).  The *Crane* Court held:

> We break no new ground in observing that an essential component of procedural fairness is an opportunity to be heard.  (citations omitted). That opportunity would be an empty one if the State were permitted to exclude competent, reliable evidence bearing on the credibility of a confession when such evidence is central to the Defendant's claim of innocence. In the absence of any valid state justification, exclusion of this kind of exculpatory evidence deprives a Defendant of the basic right to have the prosecutor's case encounter and survive the crucible of meaningful adversarial testing.

*Crane* at 691 (*citing, United States v. Cronic*, 466 U.S. 648, 656 (1984)). *See also Washington v. Texas*, 388 U.S. 14, 23 (1967).

The *Crane* holding is applicable to the current case because "reliable" evidence bearing directly on the Defendant's claim of innocence was excluded. The newspapers that were requested by the jury and never provided to it were central to the Defendant's claim of innocence. That evidence established that newspaper advertisements were placed and thus controverted the Government's assertion that no newspaper advertisements were placed. As a result, Defendant was deprived of this basic right to test the Government's theory and assertion during trial, and his Due Process rights were violated.

Here, a new trial is mandated because a manifest injustice occurred during the trial and denied the Defendant a fair trial that he is guaranteed under the Due Process Clause of the Fifth Amendment. The fundamental fairness of a trial is undermined where the jury is unable to receive and review admitted evidence that is vital to Defendant's defense. Particularly in a case, such as this, where that evidence is admitted without being published. The newspaper advertisements were admitted into evidence *via* a stipulation by the parties, and no specific portion of the newspapers was published at any time to the jury by the Government.

The materiality of this evidence to the defense was established when in closing arguments Defense Counsel clearly implored the jury to review the advertisements, and directed it to the specific locations in the Government's evidence to the newspapers relevant to the counts in the Indictment. Perhaps even more telling of the importance of this evidence for the defense, is the jury's specific demand on two separate occasions to view this evidence. The requested evidence was not provided to the jury because of several issues that prevented the evidence from being sent back to them. Not only was the evidence not in any organized order relevant to the Counts of the Indictment that each newspaper pertained to, but the Government had removed at least one newspaper that had been admitted into evidence from the Courtroom. This removed evidence was one of the requested newspapers requested by jury. Together, these actions by the Government prevented the Court from providing the jury with the requested evidence in an

expeditious and timely matter.  In fact, two hours after its initial request for newspapers relevant to two Counts of the Indictment, the evidence had not been sent back to the jury.

In the present case, the newspapers advertisements that were requested to go into the jury were contained in many bankers boxes (perhaps 10 or more) in a disorganized and haphazard fashion; they were not complete (several newspapers were missing); and, they were not contained in boxes relevant to each count of the Indictment.  Following the initial request in Jury Communication #1, the Government attorneys, together with two paralegals, the case agent, one defense attorney and the defense investigator all attempted to retrieve the documents that were responsive to jury's request in Jury Communication #1 (which demand was reiterated an hour and a half later in Jury Communication #2).  However, the disorderly organization of the large amount of documents put into evidence by the Government, resulted in the inability to gather and assemble the documents relevant to the Counts requested by the jury.  The difficulty of compliance with the jury's request because of the disarray of the documents, turned into an impossibility to comply with the jury's request, when it was discovered that evidence that been removed from the Court room by the Government. The Government's action of removing evidence from the Court prevented the jury from receiving the requested evidence that was vital to the Defendant's defense, prior to the jury rendering its verdict.  This action in particular, prevented the timely and orderly receipt of requested evidence into the jury room, and resulted in violating Defendant's right to Due Process under the law by blocking his ability to present a complete defense under the United States Constitution.

After the return of the verdict, the Court voiced its concerns with the failure of the evidence being sent back to the jury, and directed that the evidence be sent back to the jury in any event.[12]  However, sending the evidence back at that late time, without a previous instruction regarding the issues with the Government's evidence, did not remedy the miscarriage of justice that occurred in the two hours prior to receipt of the evidence.  Defense Counsel challenged the jury to "verify what I am saying" by simply finding the advertisements that were sitting on the table right beside the jury box. The jury accepted the defense's challenge when it asked to see the advertisements that had not been sent into the jury room. Clearly, the jury believed that defense

---

[12] See Trial Transcript, Page 90, lines 18 -25.

failed miserably in meeting the challenge it had proposed to the jury. The jury did not believe Defense Counsel because if verifying the existence of the "Defendant's" advertisements was such a simple task then those advertisements would have been produced in a matter of minutes. The verdict rendered here constitutes a manifest injustice in light of the evidence admitted at trial, but not provided to the jury for review when requested. Such actions violated Defendant's rights to Due Process of law and to present a complete defense under the United States Constitution. Accordingly, the facts of this case support that the Court should grant the defense its motion for a new trial pursuant to Fed. R. Crim. Pro. 33. *See United States v. Johnson,* 302 F.3d 139, 150 (3d Cir.2002)

### B. Prosecutorial Misconduct Created an Unfair Trial for Defendants

Generally, the Government's failure to produce, disclose, or preserve evidence has been grounds upon which to reverse a conviction. *See* U.S. v. Brady, 373 U.S. 83 (1963) (failure to disclose material exculpatory evidence is reversible error and denial of Due Process). Such a failure has been found to be a violation of a Defendant's Due Process right to a fair trial.

In *Smith v. Phillips,* 455 U.S. 209 (1982), the Court found "the touchstone of Due Process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Id.* at 219. The Court thus recognized that the aim of Due Process "is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused." *Id., quoting Brady v. Maryland, 373 U.S. 83 (1963).* With respect to prosecutorial misconduct, a miscarriage of justice occurs where the Government improperly conducts itself during trial in a prejudicial manner. *Marshall v. Hendricks*, 307 F.3d 36, 64 (3d Cir. 2002). The Court in *Marshall* noted the Government's improper conduct is not in itself enough to establish constitutional error. *Id.* However, "when the *impact* of the misconduct is to distract the trier of fact and thus raise doubts as to the fairness of the trial," then the impropriety may constitute a denial of Due Process.

The Government's obstruction of the evidence has been found violative in many different circumstances. *See, e.g.*, *Gregory v. U.S.*, 369 F.2d 185 (D.C. Cir. 1966) (prosecutor interferes

with Defendant counsel's ability to interview potential witnesses); *State v. Boettcher*, 338 So.2d 1356 (La. 1976) (fundamental fairness dictates that the prosecutor is forbidden from denying the Defendant the means necessary to conduct an evidence defense); *Barnard v. Henderson*, 514 F.2d 744 (5th Cir. 1975) (depriving a Defendant of access to evidence that might establish his innocence is just as much a suppression as if the evidence existed and the prosecutor withheld it).

In *Government of Virgin Islands v. Testamark*, 570 F.2d 1162 (3d Cir. 1978), the Third Circuit found "[l]oss or destruction of relevant evidence by the Government not only raises general questions of the fundamental fairness of a criminal trial, but may also deny a Defendant the right to compulsory process." *Id.* at 1166. The Court commented on fundamental aspects of a defense, including the right to subpoena evidence and disclosure of exculpatory evidence, as "inherent in the conception of a criminal trial as a truth-seeking process." *Id.* In *Testamark*, the Third Circuit found that reversal was unwarranted because the materiality of the lost evidence was unknown and speculative because it was no longer available. However, the *Testamark* Court did not comment or address the circumstance where the evidence was lost and the materiality and impact of the evidence are well known.

Here, however, the materiality of the evidence is clear because the newspapers were central to the issue of intent as to mail fraud as to all counts of the indictment. Moreover, the defense specifically directed the jury to the advertisements, and the jury sought to review them during deliberations. In contrast to the facts in *Testamark* case, this is a case where the materiality of the evidence was known and not speculative. The inability to provide the jury with otherwise admitted, material evidence because of the Government's actions, should have the same result whether that actions resulted in the loss or destruction of evidence, or the removal of the evidence from the Courtroom, making it unavailable for deliberations. In either event, the Defendant is denied of his Constitutional rights, and a reversal is warranted.

The Verdict Sheet in this case was general, finding Defendant guilty of a Count without setting forth more, such as any theory or theories. Therefore, it cannot be ascertained if some alternate theory of criminal liability was established. The failure of the jury to receive vital, requested evidence warrants an Order for a new trial in this matter.

### C.  Fed. Rule 29 Requires a Judgment of Acquittal

Pursuant to Fed. R. Crim. Pro. 29, a Court may enter a judgment of acquittal of any offense where the evidence is "insufficient to sustain a conviction." The Court must view the evidence in the light most favorable to the Government to determine if any rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979).

Presently, the inability of the jury to review admitted evidence, which evidence it specifically requested, and which evidence was vital to the defense raised by the Defendant, supports a Judgment of Acquittal pursuant to Rule 29,  and thereafter the issuance of an  Order for a New Trial, pursuant to Rule 33.

### <u>CONCLUSION</u>

For the foregoing reasons, Defendant Cvjeticanin respectfully requests that the Court enter an Order granting a new trial.

Respectfully submitted,

**LORRAINE GAULI-RUFO, ESQ.**
**THOMAS AMBROSIO, ESQ.**
Attorneys for Defendant Cvjeticanin


/s/ *Lorraine Gauli-Rufo*
 LORRAINE GAULI-RUFO

 */s/ Thomas Ambrosio*
 THOMAS AMBROSIO

Dated: July 13, 2015

UNITED STATES DISTRICT COURT
DISTRICT of NEW JERSEY

UNITED STATES OF AMERICA                    CR. _14-274_____

                                            Jury Communication #_1_

        -v-

MARIJAN CVJETICANIN

Need newspapers for Count One & Five

DATE: _____6/29/15_____        TIME: 1:10pm

FOREPERSON:

UNITED STATES DISTRICT COURT
DISTRICT of NEW JERSEY

UNITED STATES OF AMERICA

CR. 14-274

Jury Communication # 10

-v-

MARIJAN CVJETICANIN

What is going on? We have been waiting for over an hour!

DATE: 10/29/15

TIME: 238

FOREPERS(

UNITED STATES DISTRICT COURT
DISTRICT of NEW JERSEY

UNITED STATES OF AMERICA

CR. 14-274

Jury Communication # 23

-v-

MARIJAN CVJETICANIN

We have a verdict

DATE: 6/29/15

TIME: 2:57pm

FOREPERS·

UNITED STATES DISTRICT COURT
DISTRICT of NEW JERSEY

UNITED STATES OF AMERICA

CR. _14-274_____

-v-

Jury Communication #_3_

MARIJAN CVJETICANIN

WE HAVE A VERDICT!

DATE: _6/29/15_____

TIME: 335

FOREPERSON:

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 14-274 (MAS) |
| | |
| v. | <u>Filed Electronically</u> |
| | |
| MARIJAN CVJETICANIN | **MOTION FOR NEW TRIAL PURSUANT TO** |
| Defendants. | **RULE 29 and RULE 33** |
| | |
| | **SUPPLEMENTAL SUBMISSION** |

---

### SUPPLEMENTAL SUBMISSION IN SUPPORT OF DEFENDANT MARIJAN CVJETICANIN'S MOTION FOR NEW TRIAL

---

Lorraine Gauli-Rufo, Esq.
130 Pompton Avenue
Verona, NJ 07044
973.239.4300

Thomas Ambrosio, Esq.
750 Valley Brook Avenue
Lyndhurst, NJ 07071
201.935.3005

*Attorneys for Defendant Marijan Cvjeticanin*

Dear Judge Shipp:

Please accept this Supplemental Submission and consider it part of Defendant, Marijan Cvjeticanin's Brief in Support of his Motion for New Trial which was filed on July 13, 2015 (ECF Document 88). Due to the limited time Defendant was given to submit a brief in support of a new trial (Scheduling Order filed on July 9, 2015, required Defendant's brief to be filed by July 13, 2015) (ECF Document 87) and due to the fact that Defendant has been on home confinement since his June 29, 2015, Defendant did not have the opportunity to meet with defense counsel prior to the filing of the July 13, 2015 brief.

<u>Additional Statement of Facts</u>

The Defendant made a conscious, knowing and intelligent decision not to testify on his own behalf based upon his understanding and belief that defense counsel was going to argue that exculpatory evidence in the form of newspaper advertisements was contained in the Government's Exhibits. The Defendant's decision not to testify was further premised upon his good faith and reasonable belief that the deliberating jury would have possessed the exculpatory evidence during jury deliberations rather than *after* its deliberations. The failure of the jury to have been provided the exculpatory Government Exhibits during jury deliberations rendered Defendant's decision not to testify on his own behalf an unconscious, unknowing and unintelligent decision.

1

<u>Additional Conclusion</u>

A new trial is also required in this case because Defendant's decision not to testify on his own behalf was not a knowing and intelligent decision, and thus a violation of his rights under United States Constitution.


Respectfully submitted,

**LORRAINE GAULI-RUFO, ESQ.**
**THOMAS AMBROSIO, ESQ.**
Attorneys for Defendant Cvjeticanin


/s/ *Lorraine Gauli-Rufo*
LORRAINE GAULI-RUFO

*/s/ Thomas Ambrosio*
THOMAS AMBROSIO

Dated: July 17, 2015

2

IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
NEW JERSEY


UNITED STATES OF AMERICA      :

     :

     :

v.      :      Crim. No. 14-274(MAS)

     :

     :

MARIJAN CVJETICANIN      :

     :

Defendant.      :

---

## REPLY BRIEF TO GOVERNMENT'S OPPOSITION TO DEFENDANT MARIJAN CVJETICANIN'S MOTION FOR A NEW TRIAL PURSUANT TO RULE 29 and Rule 33

---

Lorraine Gauli-Rufo, Esq.,
130 Pompton Avenue
Verona, NJ 07044
(973) 239-4300


Thomas Ambrosio, Esq.,
750 Valley Brook Avenue
Lyndhurst, NJ 07071
(201) 935-3005


Attorneys for Defendant
Marijan Cvjeticanin

## SUMMARY OF ARGUMENT IN REPLY

Defendant Marijan Cvjeticanin respectfully submits this reply in response to the Government's opposition. In its response, the Government unnecessarily complicates the issue before this Court. The issue is quite simple. During deliberations the Jury requested to see evidence that had been admitted but not published at trial. An unreasonable delay in providing this evidence to the Jury - caused by a failure to follow proper protocol - resulted in the verdict having been rendered before the Jury was able to review the evidence. The failure to provide the Jury the previously unseen exculpatory evidence it requested deprived Defendant of his Constitutional right to a fair trial.[1]

## PROCEDURAL SUMMARY

The Defendant filed a timely motion for a new trial pursuant to Rule 33 and Rule 29.[2] The Court issued a Scheduling Order on July 9, 2015, giving Defendant four days to file his initial brief. Defendant Cvjeticanin filed his Brief with the Court on July 13, 2015, and

---

[1] The Government mischaracterizes Defendants issues throughout its Opposition, *e.g.,* Govt. Brief., p. 1-2. It is **not true** that "Defendant's counsel *agreed* with the government that the newspaper evidence would not be given to the jury" when it started deliberations. A Due Process violation occurred when the jury was not given the unpublished, admitted evidence after it was specifically requested by the jury on two occasions, and before the jury rendered its verdict. *See* Jury Note 1 and 2.

[2] Fed. R. Crim. Pro. 33 requires that a Notice of Motion be filed within 14 days after the verdict or finding of guilty. Defendant's Notice was filed on July 7, 2015, eight days after the Verdict was filed on June 29, 2015.

supplemented that Brief on July 17, 2015.[3] The Government was given two weeks to file opposition. The Defendant was given one week to reply to the Government's opposition.[4]

## ARGUMENT IN RESPONSE

### I.   THE EVIDENCE WAS EXCULPATORY IN NATURE.   A NEW TRIAL HOWEVER IS NECESSARY REGARDLESS OF THE NATURE OF THE EVIDENCE

The defense maintains that the evidence requested by the Jury was exculpatory and went to the heart of the defense theory. The failure to provide the Jury the previously unseen exculpatory evidence it requested deprived Defendant of his Constitutional right to due process and throws into question the fairness and integrity of the trial.

The Government incorrectly argues that the evidence is inculpatory.   The Government contends that the Defendant's right to a new trial is contingent upon the requested evidence being deemed exculpatory evidence.  The Government is wrong.  The Government completely misses the point, *i.e.*, that failure to timely provide evidence to the Jury impermissibly interfered with the Jury's fact finding functions, destroying any legitimacy to the verdict.  Regardless of how the Court classifies the evidence, it was a fatal error to allow the Jury to continue to

---

[3] The Government's attempt to characterize Defendant's supplemental Brief as a "Motion" (and thus assert it is somehow time-barred) is one of many attempts in its Brief to outwardly mislead the Court and divert attention from the real issue before the Court. (**See** Govt. Br., p. 3, fn2).  This statement also reveals the Government's lack of understanding of the Federal Rules of Criminal Procedure and/or the difference between a "Notice of Motion" and a Brief.  Defendant's supplemental filing on July 17, 2015, was not a motion filing but was a ***brief*** that supplemented his initial Brief. Defendant's Rule 33 and Rule 29 motions were both filed within the required time.

[4] Given the extremely short time frame the Defendant was given to review the trial transcripts and file a Brief, and the two weeks the Government was given to respond, the Court should dismiss the Government's claim that Defendant's Supplemental Brief should not be received by the Court. The Supplemental Brief dealt with a substantial violation of Defendant's Constitutional rights. A violation revealed to defense counsel only after its initial Brief was filed.   In addition, despite having two weeks to submit its opposition Brief, the Government's brief for the most part fails to provide citations to the transcript to support its position, makes arguments regarding unadmitted evidence, and makes broad claims totally unsupported by anything in the record. *See* Govt. Br., pp. 1-8 (no cites to record), 24-29(unadmitted evidence).

deliberate without the information it wanted to review, and worse to allow the Jury to render a verdict before it could review the evidence.

## II.    THE OPPOSITION IS FULL OF INAPPRORIATE AD HOMINEN ATTACKS UNRELATED TO THE LEAGL ISSUE RAISED IN THE MOTION.

The Government's opposition is full of glaring misrepresentations and unprofessional jabs at Defendant's counsel[5]. These tactics obfuscate the issues in a failed attempt to divert the attention from the simple issue raised in this motion – the Jury did not get to review critical evidence that it requested - evidence that was admitted but not published - the Defendant was denied of his Constitutional right to a fair trial.   The Government's *ad hominen* attacks should be disregarded by the Court.

The Government's brief fails to cover-up or even gloss over the egregious mistakes made by both the Court and the Government in the handling of admitted evidence in this case. The biggest attempted cover-up by the Government is the argument that no Constitutional violation occurred because the Court held off on receiving the Jury's Verdict when it was initially announced.  Delaying the receipt of a verdict that was already rendered in an attempt to provide the Jury with evidence it requested during deliberations – but did not receive - is of no moment.  The Constitutional violation occurred when the Jury rendered its verdict, not when the Court received it.  The Court immediately recognized the serious constitutional violation that had occurred. This is evidenced when the Court attempted to provide the evidence the Jury requested – but never got to see -  "I think it's only appropriate just so that they make sure what they

---

[5] The inclusion of an email communication between defense counsel and an AUSA is particularly disturbing. Especially an incomplete email.  Govt. Br., Ex. B.  As is the highlighting inconsequential statements from defense counsel such as "Thank you, Your Honor."   This is just another attempt by the Government to divert attention from the true problem in this case – the denial of Constitutional rights of Defendant Cvjeticanin.

requested initially *has no bearing __whatsoever__ on their verdict*". (6/29/15 Tr. at 91-92) (emphasis added) It will never be known whether providing the Jury with unpublished trial evidence - after the Jury rendered its verdict - had any bearing on the ultimate verdict. The Jury was not given any instruction by the Court to resume deliberations utilizing the evidence the Jury had requested almost 3 hours prior to the announcement of a verdict. It is not known what, if anything, the Jury did with the evidence it was given post-verdict.

The Government's actions were reprehensible both during trial, when it removed evidence from the Courtroom, and post-trial when in its brief it attempted to deflect blame and mislead the Court. The Government's attempts to shift the attention or blame onto defense counsel do not negate the constitutional error that occurred at trial.

III.     **THE REOCRD SHOWS THAT THE EVIDENCE WAS MISHANDLED AND THAT THE JURY WAS DEPRIVED OF THE ABILITY TO REVIEW CRUCIAL DEFENSE ORIENTED EVIDENCE BEFORE RENDERING THE VERDICT**.

Review of the record establishes unequivocally that the evidence was mishandled. The mishandling of evidence was not a minor error. This was a major mistake that deprived Defendant of a fair trial.[6] The Government fails to acknowledge the slightest irregularity in the post-closing handling of evidence in this case. The Government's analysis of the facts in this case leads to the absurd conclusion that the evidence handling procedures utilized in this case

---

[6] The Government's argument that Defense Counsel's comments to the Court implicitly sanctioned the exhibit handling procedures used in the trial is an unfair distortion of the facts. ***See*** Govt. Br., p. 19. Defense counsel never agreed that that *the jury should not receive requested evidence prior to rendering its verdict, or that the Government should remove admitted evidence from the court room.* The evidence handling procedures at the trial mandate a new trial under either by way of R.33, R.29, under *any* standard – even plain error. (***See eg.,*** *United States v. Brennon*, 326 F. 3d. 176 (3d. Cir. 2003).

would be acceptable in *all* cases. Depriving a deliberating jury from viewing requested evidence and/or taking admitted evidence out of the courtroom during jury deliberations is <u>never</u> <u>acceptable</u>. To argue otherwise would amount to intellectual dishonesty. The United States Attorney's Office is sworn to uphold justice and the Constitution. To argue that the evidence handling in this case was acceptable is contrary to both justice and the Constitution.

Standard post-closing, evidence handling procedures include the following non-exhaustive steps:

- Courtroom Deputy gathers the evidence admitted by both parties;

- Courtroom Deputy reviews the admitted evidence with each side. The parties agree on the record as to each item of admitted evidence;

- Both sides are given the opportunity to state, on the record, that a particular piece of evidence should not go into the jury room;

- Any disputes as to admissibility or handling of evidence (*e.g.* whether a particular piece of evidence should go into the jury room) are resolved by the Court on the record;

- After complete agreement concerning admitted evidence, that fact is placed on the record, Counsel are excused and advised to remain available for Jury questions and/or a Verdict.

- The evidence is given to a designated Court Officer, who is given an oath to keep the Jury and evidence free from outside influence.

All of the above evidence handling procedures did not happen in this case.[7] *See* July 29, 2015, Transcript, p.86, lines 10-11. It was not until after the first Jury communication was received

---

[7] The Government's suggestion that the Court actually "took custody" of the evidence is a farce meant to mislead. While the Court did ask the Deputy if she had all the Exhibits and Documents, (6/25/15 Tr. at 110) this clearly was not the case since the Government retained complete control over the newspapers, and even removed at least

(***nearly two hours after*** Jury deliberations had begun[8]) when Defendant's counsel requested that the evidence be <u>taken back from the Jury</u> so that the evidentiary handling procedures set forth above could be complied with.   ***See*** 7/29/15,Tr. at p. 87, lines 16-22.   The entire process was flawed from the start and culminated in the Jury rendering a verdict with incomplete evidence.

Defendant submits that when the Court took back all the evidence previously given to the deliberating Jury the Court should have brought the Jury back into the courtroom and instructed the Jury to cease deliberations until it was given back all the evidence, including the evidence that Jury had requested which was unpublished during the trial.

The improper evidence handling procedures utilized by the Court compounded by the Court's failure to instruct the Jury to stop its deliberations mandate a new trial. If there is any doubt as to whether a new trial is mandated in this case then it should be erased by the egregious conduct of the Government when it removed admitted evidence from the Courtroom.[9] The level of egregiousness is heightened in this case because evidence requested by the Jury was critical to the Defendant's defense, had been admitted into evidence, but had not published by either party. This evidence was specifically requested by the Jury – not once, but ***twice.*** (***See*** Jury Note 1 and

---

one from the Courtroom.  (7/29/15 Tr. at 90).

[8] The Jury was dismissed to begin deliberation at 12:07 pm (6/29/15. Tr. at 86, lines 8-9). Defense Counsel put on the record that the Government and Defense Counsel reviewed the evidence (which had been removed from the jury room after deliberations had begun and sometime after the first note was received so that counsel could review what evidence) between 2:07 pm and 2:11 pm.  (6/29/15 Tr. at 86-88).

[9] There is ***no question*** that the evidence was removed from the Courtroom by the Government. The record establishes that after the Verdict was rendered Mr. Navarro informed the Court to the newspapers for Count 5: "…let me call the office, because they were getting that newspaper.  It could be that they're on their way back right now and if we wait two minutes we can send them the whole thing."  6/29/15 Tr. at 92.   The Government in its Brief once again purposefully misleads the Court as to what happened by arguing that it did not remove evidence from the Courtroom.  Govt. Br. at 30, fn 8. (Misstating the facts that occurred at trial and stating in part: 1) that Defendant was manufacturing this issue, 2)that Defendant was speculating as to what was removed from the Courtroom, and 3) that the Government only took "duplicate exhibits" from the Courtroom).

2, Ex. A and Ex. B, respectively).   The Jury could not review this evidence because the Government had made it ***unavailable*** by removing it from the Courtroom.

The record establishes that at the time the Jury returned its verdict it had never received the requested evidence for Count 5. There is also nothing in the record to establish that the Jury received the evidence it requested for Count 1 prior to rendering its Verdict. The Government states in its brief that there was merely was a "***slight delay***" in getting the evidence to the Jury. The Governments claim that it only took 30 minutes to get some of the initially requested documents to the Jury is an outright fabrication.  The true length of the initial delay is established by the Record. The Jury's second Note states "we have been waiting for over an hour!" The Jury would not have added an exclamation mark to its note if it felt the failure to provide evidence was a "slight delay".

The egregiousness of the delay is magnified when one considers the fact that the Jury was advised in closing arguments that the requested evidence was sitting on a table approximately 6 feet from the jury box. One can infer that if the Jury believed defense was being truthful in closing arguments about the existence of the evidence (not whether it was exculpatory or inculpatory) then the Jury would also have believed the evidence would have been provided to the Jury in a matter of minutes. The "long inexcusable delay" in not providing the evidence caused the Jury to believe that defense counsel told it a lie. This, in turn, unfairly led the Jury to believe that Defendant was a liar and unfairly caused the Jury to convict the Defendant.

The following outline establishes where the evidence was at various times during Jury deliberations:

- 12:07 pm - Jury sent to deliberate – Counsel excused (7/29/15 Tr., p 86, lines8-14).

- 1: 10 pm – First Jury Note sent to Court "need newspapers for <u>count</u> <u>one</u> & <u>five</u>." (emphasis in original)(Ex. A).

- 2:07 pm  - Court reconvenes

  o **The evidence is taken out of the Jury room sometime after first Jury Note received** (7/29/15 Tr., p 86, lines8-14).

  o Defendant's Counsel puts on Record the parties have ***just*** reviewed the evidence (absent the newspapers) and parties agree on it (***Id.***, p. 87, lines 16-22). **This is more than two hours after the deliberations had started.**

  o **Court directs Government to send all newspapers back to Jury.**

- 2:11 pm – Court in recess (***Id.***, p. 88, line 9).

- 2:38 pm – Second Jury Note sent "What is going on? We have been waiting for over an hour!" (emphasis in original( Ex. B).

- 2:42 pm – Court reconvenes.

  o  Government notes that **all evidence is not in the Jury room but rather in the Courtroom**:

    - "….The Court has, over there copies of all the exhibits aside from the newspapers including Computer World. Then in the top box is all the relevant newspapers for Count 1. We are now putting together Count 5." (**it is now 1 hour, 32 minutes since the Jury request for Count 1 and Count 5 newspapers – it still has not received them**)

  o The Court directs the Government to "move as quickly as possible."

- 2:45 pm Court in recess.

- 2:57 pm – Third Jury Note sent to Court " we have a verdict" (Ex. C).

- 3: 09 pm – Court reconvenes. It is clear from the Record that the evidence requested by the Jury was in the Courtroom up until 2:45 pm. The Record is unclear whether the evidence was returned to the jury room prior to the Jury rendering its verdict. (Based upon Mr. Navarro's colloquy to the Court below - there is a strong reason to believe it had not been returned to the jury room.)

    o "All the documents are here[10], all the newspapers for all counts except for one newspaper that we are getting from the U.S. Attorney's Office. I think that it was inadvertently taken back there. So minus that one newspaper, we have everything….. It was Count 5, Judge. It's that one newspaper that we are missing related to Count 5, of course." (Transcript, p. 90, lines 8-13, 16-18).

    o Court directs Government to get the newspaper and give it to the jury with no instruction. (7/29/215, Transcript, p. 91 – 92).

    o Government addresses the Court:

        - "Your Honor, the only thing I would ask if you could let me step outside for 30 seconds, let me call the office, because they were getting that newspaper. It could be that they're on their way back right now and if wait two minutes we can send them the whole thing." (6/29/15 Tr. at 92) The Verdict has been rendered and the Jury does not have the requested Court 5 evidence, nor does it have other evidence since the Government wants to send in the "whole thing" once it receives Count 5 evidence from its office.

- 3:11 pm – Court in recess.

- 3:35 pm – Fourth Jury Note sent to Court "WE HAVE A VERDICT!" (emphasis in original) (Ex. D).

- 3:44 pm – Court reconvenes.

The Government is correct when it states in its brief that the Jury **could have** convicted

Defendant on mail fraud solely on its determination that he did not place Computer World ads.

---

[10] "Here," indicates the evidence is in the Courtroom, not with the Jury.

The more salient point is that the Jury **chose not to convict** solely on lack of Computer World ads as evidenced by its request to see evidence that was not published during the trial.  In support of its argument that the Defendant did not commit fraud - because he had placed newspaper advertisements -  defense in closing arguments directed the Jury to look at advertisements that were in evidence, but not published during the trial.  The Jury agreed to consider this defense argument evidenced by the fact that the Jury requested to review newspapers in relation to Count 1, an audited file, and Count 5 a non-audited file.   The jury was not able to examine the requested newspapers because of the improper evidence handling by procedures utilized in this case.   The record establishes unequivocally that the Jury **DID NOT** receive the evidence it requested for **Count 5** prior to rendering its verdict.  Moreover, the record does not establish that the Jury received Count 1 newspapers, before the Verdict was rendered.  In fact, the Record strongly suggests that the Jury did not receive newspapers for Count 1 or Count 5. (**See** above). The jury deliberated without information that it deemed important enough to request. The verdict was unfairly rendered without a complete review of the evidence. The evidence handling procedure improprieties in this case violated Defendant's Constitutional Rights. A new trial is required.

The Government has suggested that the Court can grant a new trial on Count 5 alone. That argument has no merit since the Defendant put forth an "all or nothing defense." The defense theory argued in closing was that the Defendant had no intent to defraud because he had paid for and placed advertisements for all counts in the indictment.  The defense further argued that on various occasions the advertisements he had placed were not sufficient to withstand an audit. On those occasions the Defendant paid for and placed corrective ads. It was argued that the corrective ads were not placed in order to defraud the corporate victims but rather to withstand a

Department of Labor audit. This defense would only have validity if the Defendant was able to establish that he actually paid for and published advertisements. The Defendant never got to establish to the Jury the fact that he placed such ads because the Jury never got to see those advertisements - a direct result of improper evidence handling procedures. The Defendant's defense argument was unfairly compromised and his Constitutional Rights violated. A new trial must be given for all counts in the indictment, not just Count 5.

The Jury was not able to determine in its deliberations whether Defendant's assertions were true, *i.e.,* that it placed advertisements. This is because the Jury was not provided with the requested evidence. The Jury is a trial's finder of fact. The Jury did not receive the evidence it requested. The Jury's fact finding function was broken because it was not given all the evidence needed for that fact finding function to work. The Government, in its brief, seems to want this Court to believe that it is the Government's post-trial job to become a Monday morning quarterback or surrogate finder of fact based upon the evidence the Government presented at trial. The Government cannot be a surrogate finder of fact, it cannot tell this Court how the Jury would have determined the facts had the Jury received the evidence it requested. The Government cannot say what the Jury would have determined had it received the evidence it requested. The opinions in the Government's brief about what a Jury would have determined have no legal weight.

Neither of the parties, nor this Court cannot know for sure what might have happened if the Jury received and reviewed the requested evidence. When the Jury did not receive the requested evidence Defendant lost his Constitutional Right to a fair trial. This was not harmless error. The newspaper ad evidence went to the heart of the theory of the defense.

## IV.  RELIANCE ON UNADMITTED EVIDENCE OR OTHER EVIDENCE AT TRIAL DOES NOT NEGATE THE CONSTITUTIONAL ERROR.

The Government sets forth evidence that was **_not admitted at trial_** in an attempt to convince the Court that the advertisements referred to in the defense closing arguments were in inculpatory and therefore render the defense arguments meaningless and a new trial not required. This argument is without merit, and evidence not admitted a trial is not persuasive.  This is a transparent attempt by the Government to correct what it now believes was a tactical trial error made at trial. The Defendant chose not to cross examine the Government's witnesses about the existence of advertisements referred to in the defense's closing. In closing it was argued the admitted but unpublished ads were exculpatory. This defense trial strategy prevented any Government witness from stating that the subject advertisements could not have been advertisements related to the counts 1 – 9 of the indictment. (If the defense had cross examined any witness about the ads then it is highly likely the Government would have published the ads on redirect testimony and would have attempted to elicit a response that the ads were not valid - much the way it did in its brief.)  Unadmitted evidence, and even other admitted evidence does not fix the Constitutional violation that occurred.  The only remedy here is a new trial.

Lastly, this case is distinguishable from the situation in the Government's brief where a Jury requests the transcripts of a witness's testimony - a witness who has already testified at trial. The advertisements at issue in this motion for a new trial were never seen by the Jury during the trial. The newspapers were entered into evidence by the Government upon stipulation from the Defense and never published to the Jury. The decision not to publish the advertisements was also

a tactical decision by the Government. Defense Counsel informed the Jury in its closing that Defendant had placed advertisements, and urged the Jury to look at the newspapers relevant to each of the applicants. The Jury acted upon that urge when it requested the newspapers for Counts 1 and 5. The Jury never received that evidence prior to rendering its verdict. That amounted to Constitutional error that directly implicated the fairness and integrity of this trial.

## CONCLUSION

For all of the foregoing reasons, a new trial should be granted in this case.

Respectfully submitted,

By:           /s/ Lorraine Gauli-Rufo
              /s/ Thomas Ambrosio

Attorneys for Marijan Cvjeticanin

DATED: August 3, 2015