C.A. No.16-1422

---

IN THE UNITED STATES COURT OF APPEALS

FOR THE THIRD CIRCUIT



---

UNITED STATES OF AMERICA

Appellee

v.

MARIJAN CVJETICANIN

Appellant

---

MOTION FOR RELEASE PENDING APPEAL   AND

MOTION FOR STAY OF ORDERS OF RESTITUTION AND FORFEITURE OF THE

U.S. DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY

(D.N.J. CRIM. No. 14-274),

SET BELOW: HON. MICHAEL A. SHIPP, U.S.D.J.

------------------------------------------------------

MOTION OF THE APPELLANT MARIJAN CVJETICANIN

PRO SE FILING

MARIJAN CVJETICANIN, #65437-050

FCI DANBURY

FEDERAL CORRECTIONAL INSTITUTION

ROUTE 37, DANBURY, CT 06811

TABLE OF CONTENTS:

TABLE OF CONTENTS...................................(i)

CERTIFICATE OF SERVICE............................(ii)

TABLE OF AUTHORITIES..............................(iii)

STATEMENT OF SUBJECT MATTER AND

APPELLATE JURISDICTION............................1

RELIEF SOUGHT.....................................2

BRIEF PROCEDURAL HISTORY..........................2

SUMMARY OF THE ARGUMENT...........................3

LEGAL ARGUMENT....................................8

CONCLUSION........................................36

CERTIFICATE OF SERVICE

I hereby certify that on October _____, 2016, I served the foregoing document on the United States by causing a true copy of the document to be mailed by overnight mail to the United States Attorney, 970 Broad Street, 7th Floor, Newark, New Jersey 07102.

I declare under the penalty of perjury, that the foregoing is true and correct.

Respectfully submitted,

_____

IVA CVJETICANIN

Date: _____

(ii)

TABLE OF AUTHORITIES

Cases:

-McDonnell v. U.S., 195 L. Ed. 2d 639 (2016);

-Skilling v. U.S., 561 US__, 130 S.Ct.___, (2010);

-Johnson v. U.S., 576 US __, 135 S.Ct. 2551 (2015);

-McNally v. U.S., 483 US 350, 107 S. Ct. 2875(1987);

-Marbury v. Madison, 5 US 137, 1 Cranch 137 (1803)

-U.S. v. D'Amato, 39 F.3d 1249, 1261 (2d Cir. 1994);

-Lanzetta v. New Jersey, 306 US 451-458, (1939);

-U.S. v. Bond, 572 US__, 134 S.Ct. __, (2014);

-Yates v. U.S., 135 S.Ct. 1074, (2015);

-U.S. v. Salerno,481 U.S. 739, 107 S. Ct. 2095(1987)

-Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678 (1965);

-Stack v. Boyle, 342 U.S. 1, S,Ct. 1, 96 (1951);

-Kolender v. Lawson, 461 US 352, 103 S.Ct.1855(1983) -Keokuk
Northern v. City of Keokuk, 95 US 80(1877);

-U.S. v. Beaman, 631 F. 2d 84 (6th Cir. 1980);

-Kenney v. Lenon, 425 F.2d 209 (9th Cir. 1970);

-Williamson v. U.S., 95 L. Ed. 1379, 1382 (1950);

- Harris v. U.S., 404 U.S. 1232, 92 S.Ct. (1971);

- U.S. v. Vastola, 652 F. Supp 1446 (D.N.J., 1987);

-Foucha v. Louisiana, 504 U.S. 71,112 S.Ct.1780,1992;

-Harbison v. Warden, 556 US__, 129 S.Ct.__ (2009);

-Parr v. U.S., 363 US 370, 4 L Ed 2d 1277 (1960);

-U.S. v. Margiotta, 688 F.2d 108 (2d Cir. 1982);

-U.S. v. Bayko, 774 F.2d 516 (1st. 1985);

-U.S. v. Perry, 788 F.2d 100, 111 (3d Cir. 1986);

-U.S. v. Miller, 753 F.2d 19,20 (3d.Cir. 1985);

( iii )

-U.S. v. Smith, 793 F.2d 85 (3d Cir. 1986);

-U.S. v. Fontaine, 697 F.3d 221 (3d Cir. 2012);

-U.S. v. Randel, 761 F.2d 122 (2d Cir. 1985);

-U.S. v. Giancola, 754 F.2d 898 (11th Cir. 1985);

-U.S. v. Handy, 753 F.2d 1487 (9th Cir. 1985);

-U.S. v. Murphy, 323 F.3d 102 (3d Cir. 2003);

-U.S. v. Lynd, 301 F.2d 818 (5th Cir.1962);

-Eastern Greyhound Lines v. Fusco, 310 F.2d 632 (6th Cir. 1962
);

- In Re McKenzie, 180 U.S. 536, 45 L.Ed. 657 (1901);

- Scripps-Howard Radio v. FCC, 316 U.S. 4, 9-10, 86 L. Ed.
1229 (1942);

-Hanover 3201 Realty, LLC v. Village Supermarkets, Inc, 2015
U.S. App. Lexis 19694, No.14-4183 (3d Cir. 2015);

-New Jersey Payphone Association v. Town of West New York, 299
F.3d 235 (3d Cir. 2002);


Books:

-John Stuart Mill: On liberty (1859);

- Joel Feinberg: Harm to Others: The Moral Limits of the
Criminal Law (1984);


Articles:

- Stuart P. Green: Why it's a Crime to Tear the Tag off a
Mattress: Overcriminalization and the Moral Content of
Regulatory Offenses, 46 Emory L.J. 1533 (1977);

- John Kadish: The Crisis of Overcriminalization, 374, The
Annals of the American Academy of Political and Social Science
157, 161 (1967);

- Alex Kozinski & Misha Tseytlin: You're (Probably) a Federal Criminal, in the Name of Justice 43-56 (Timothy Lynch ed.,2009);

-Sanford H. Kadish: Comment: The Folly of Overfederalization, 46 Hastings L.J. 1247, 1249-50 (1995);

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

This court has jurisdiction to rule on a Motion for release after judgment of conviction pursuant to the provisions of 18 U.S.C. Section 3143(b)(1) and Rule 9(b) of the Federal Rules of Appellate Procedure, as the Circuit Court jurisdiction attaches after the filing of the Notice of Appeal. In the interests of judicial economy and basic fairness to the appellant, this court can also use its powers under the Rule 2 of the Federal Rules of Appellate Procedure to grant release pending appeal despite the fact that the initial Motion for release is still pending with the U.S. District Court for New Jersey, and has been pending there for almost 3 months with no adjudication or hearing scheduled. This court has jurisdiction under the Rule 8(a)(2) of the Federal Rules of Appellate Procedure and Rule 38(e) of the Federal Rules of Criminal Procedure to stay district court order of restitution and 32.2(d) of the Federal Rules of Criminal Procedure to stay district court order of forfeiture.

The power of the Court of Appeals to issue stay and release orders, while appeal is pending, also exists by virtue of the All Writs Act (28 U.S.C. Section 1651), and is "inherent" to its powers, see In re McKenzie, 180 U.S. 536, 45 L Ed. 657 (1901), and is "part of its (the court of appeals') traditional equipment for the administration of justice", Scrripps-Howard Radio v. FCC, 316 U.S. 4, 9-10, 86 L.Ed. 1229 (1942), see also Eastern Greyhound Lines v. Fusco, 310 F.2d 632 (6th Cir. 1962) and U.S. v. Lynd, 301 F.2d 818 (5th Cir.

1962).

RELIEF AND GROUNDS FOR RELIEF SOUGHT

1) ORDER, granting appellant's Motion for Release Pending
Appeal, releasing the appellant from the custody of the U.S.
Bureau of Prisons, pursuant to the provisions of 18 U.S.C.
Section 3143(b)(2), and based on the conditions of release
respectfully requested and provided in the Appendix, document
C herein;

2) ORDER, granting appellant's Motion for Stay of District
Court orders of restitution and forfeiture in this matter
(Appendix at D);

3) ORDER, in the alternative to 1) and 2), for the Writ of
Mandamus, pursuant to 28 U.S.C. 1651 (All Writs Act) ordering
to the U.S. District Court for New Jersey to finally
adjudicate and process the appellant's Motion for Release
pending appeal filed with that court on July 2, 2016 in this
matter, and/or conduct bail hearing, if considered necessary;

4) ORDER, such other and further relief as to the court may
seem just and proper;

BRIEF PROCEDURAL HISTORY

After the jury trial, the U.S. District Court for New
Jersey entered Judgment of Conviction in this matter on
February 24, 2016 (Appendix at D). Notice of Appeal was filed
on February 27, 2016, 2016 (Appendix at E). The U.S. District

Court for New Jersey issued Amended Judgement on March 28, 2016 (Appendix at D). Appellant filed initial Motion for Release pending appeal with the U.S. District Court for New Jersey on July 2, 2016. Although a bit late, the Government responded (Appendix at G), and appellant filed his timely reply on August 1, 2016 (Appendix at F). As there had been absolutely no response from the District Court, the appellant filed two Motions to Expedite (one in August 2016 and the other one a month later in September 2016, Appendix at H), and also sent a letter to the Chief Judge of the District Court for New Jersey respectfully requesting that the matter is expedited, if possible, (Appendix at I), but to no avail.

As of the date of filing of this motion there has been absolutely no response from the U.S. District Court for New Jersey. Instead of filing a request for Mandamus order directing the U.S. District Court for New Jersey to process and adjudicate this matter, in the interests of judicial economy and basic fairness, the appellant has chosen to file the instant motion with the U.S. Court of Appeals combining both motion for release, or in the alternative, Petition for the Writ of Mandamus, should the honorable Court of Appeals consider it necessary.

SUMMARY OF THE ARGUMENT

Motions for Release Pending Appeal are governed by the provisions of the Bail Reform Act of 1984, 18 U.S.C. Section 3143(b)(1). Provisions contain a two prong test which judicial officer must apply in order to find whether a person who has been found guilty of an offense and sentenced to a term of

$-3-$

imprisonment should continue to be detained or released pending appeal.

The first prong test is whether a person, by clear and convincing evidence standard, can prove, if released, that he/she is not likely to flee, or pose a danger to the safety of any person or the community. The appellant fully meets this standard as he is 52 years old, with no prior criminal record, married for over 24 years, has 2 daughters and has been a long term resident of New York for well over 25 years. The appellant is a U.S. citizen and his whole family (spouse and both daughters) are U.S. citizens, Appendix at M). The appellant's wife works at Macy's, his eldest daughter is a graduate student and Teaching Assistant at the NYU Department of Economics and youngest daughter is a high school student at one of the most prestigious Catholic High Schools in Manhattan, the Dominican Academy. Appellant has strong ties to New York, as his whole life has been and will be in New York. Prior to being designated to self surrender to his current federal correctional facility, the appellant was free on a pre-trial bail for 24 months with no violations or problems at all. He was allowed to freely travel within New York and New Jersey areas and even outside New York with just a quick notification to Pretrial Services. His security level was deemed so low by the Court's Pretrial Services that his in-office court reporting was reduced to a bare minimum level of once per month. The Government did not ask for any change in reporting requirements even post-indictment. Appellant vehemently pled not guilty to his mail fraud charge, which is a typical "white collar" totally non-violent, immigration law

related "paperwork" crime, and is appealing the conviction.
After the trial, while preparing for sentencing hearings
appellant found proof of the so called corporate victim's
insurance fraud using his case as a background, and a motive
for false testimonies against him at the trial. He filed
criminal charges with state authorities in New York against
persons involved who also previously testified at the trial,
and the matter is currently pending (Appendix at K). Appellant
is also preparing a major new Federal Criminal Procedure Rule
33 Motion (new discovery), which will absolutely disprove the
existence of any scheme to defraud in this matter. In order to
accomplish all of these actions, the appellant must be
physically present in the jurisdiction of the court and it
would also be in the interests of justice to allow him to file
and conduct all of these legal actions from his home office in
New York rather than from the federal jail.

        In addition, the appellant does not represent the risk
of flight and danger to any person or community as he had no
prior criminal record and had a history of stellar, gainful,
employment for over 25 years as an immigration and
international law attorney. The appellant's license to
practice law in New York was absolutely clean and unblemished
at all times both prior and even post indictment. Since
appellant was not considered any risk of flight or danger to
the community, even after the indictment, in May 2014, New
York State Bar Association authorities, which almost
immediately received a copy of the indictment, declined to
proceed against him even with the standard measure of a simple
suspension from the practice until the matter is resolved.

Even more significantly, since New York State Bar Authorities obviously had some serious doubts about the appellant's trial and conviction, the appellant's license to practice law remained clean even 8 months after the trial and conviction (Appendix N).

Moreover, not only that the appellant is not a risk of flight and a danger to anyone, or his community, he is one of the leaders of his Eastern European community in New York, and even served as a pro bono attorney for his church in Manhattan (Appendix at O). He was also well known in the immigration lawyer's professional community in New York, serving in numerous professional leadership positions, including as a Co-Chair of the Immigration Committee of the Suffolk County Bar Association, etc.

Despite being heavily financially drained by the criminal process against him and his current incarceration, appellant and his spouse still own substantial assets in New York - a residential property (house) on the north shore of Long Island (St. James property) and an investment (rental) condominium located at Broadway, Astoria, New York City, with a combined market value in excess of $1 million, so he has sufficient assets and no reason to flee (Appendix at Q and R).

Appellant also suffers heavily from Diabetes 2, requiring daily treatment and at least two insulin injections daily - one in the morning and the other one in the afternoon/evening, and/or Metformin 1000 pills and other medications, making him highly unlikely to flee or endanger anyone else (Appendix at S).                 After

satisfying the first prong of the test for release pending appeal, the appellant also needs to satisfy the second prong of the test by proving, that his appeal is not for the purposes of delay, and that it raises a substantial question of law, or fact, likely to result in reversal, or an order for a new trial, or sentence that does not include a terms of imprisonment.

The appellant raises four substantial issues in his direct appeal - two challenging the conviction and two challenging the sentence imposed. First, the appellant claims that the district court erred, as a matter of law, in denying his pretrial motion to dismiss the superseding indictment because the facts stated in the indictment, even if true and proven to the jury beyond reasonable doubt, do not constitute the offense charged. Second ground is that the district court erred, in denying the appellant's motion for a new trial, which he filed due to the egregious and outrageous government misconduct and violation of appellant's due process and fair trial constitutional rights when the Government removed some key exculpatory physical evidence from courtroom making it unavailable for jury review.

Third ground for appeal is the district court's clear error in loss calculation for sentencing purposes as the District Court committed reversible error in calculating the loss figure under the U.S. Sentencing Guidelines for sentencing purposes, and in the fourth ground the appellant claims that the District Court erred also in fixing the amount of restitution and in considering corporate law firm as a "victim" in the process, which is contrary to both the

statutory definition of a victim and Common Law Respondeat
Superior doctrine. .

LEGAL ARGUMENT

1) Introduction

Framers of the Constitution considered the institution
of bail such a critically important and unalienable right of
citizens that they included excessive bail clause prohibition
directly into the text of the Constitution. Actually, bail
provisions were elevated to the same constitutional amendment
containing a prohibition against the infliction of the cruel
and unusual punishment, which was one of the original reasons
for the adoption of the Declaration of Independence and the
Revolutionary war against England. As can be seen from the
argument below, the Framer's foresight and wisdom, as well as
concerns against the government intrusion, unfortunately  were
well warranted.

The 8th Amendment to the Constitution prohibits
excessive bail and the strict construction of the text of the
Constitution does not distinguish between pretrial and post
trial bail, and presumes the issuance of the bail, which, once
issued, should not be excessive. Obviously in balancing
between individual freedoms of the citizens and the presumed
need for community safety, the Framers were overwhelmingly  in
favor of individual .freedoms.

In addition to the provisions of the 8th and 5th
Amendments, which do not explicitly establish the right to
bail, the provisions of the 9th Amendment state that not all

rights are necessarily listed and enumerated in the Constitution. The subsequent case law confirms the same. Substantive due process not only guarantees those rights specifically enumerated in the Constitution, but is even broader, including what is sometimes referred to as the "fundamental" or "inalienable" rights of man. As Justice Goldberg so eloquently noted over 50 years ago in Griswold v. Connecticut, 381 U.S. 479, 85 S. Ct. 1678 (1965) "The language and history of the 9th Amendment reveal that the Framers of the Constitution believed that there are additional fundamental rights, protected from government infringement, which exist alongside these fundamental rights specifically mentioned in the first eight constitutional amendments...".

Classical jurisprudence devoted significant time to elaborating the right to bail and conditions of bail issuance in various situations, emphasizing that the bail is not a punishment, but it instead serves "..the purpose of assuring the presence of the defendant.." Stack v. Boyle, 342 U.S. 1, S.Ct. 1, 96 (1951). Applicable to the appellant's current case, in Kenney v. Lenon, 425 F.2d 209 (9th Cir. 1970), 9th Circuit considered it important to note that "Failure to permit applicant's release for the purposes of aiding the preparation of his defense unconstitutionally interfered with his due process right to a fair trial".

Even more applicable to the instant matter, in bail pending appeal situations, the classical approach is best elaborated by the following two matters. First in Williamson v. U.S., 95 L.Ed.1379, 1382 (1950) U.S. Supreme Court Justice Jackson clearly stated that "Grave public danger is said to

— 9 —

result from what (the defendants) may be expected to do, in addition to what they have done since their conviction. If I assume that defendants were disposed to commit every opportune disloyal act helpful to communist countries, it is still difficult to reconcile with traditional American law the jailing of persons by the courts because of anticipated but yet uncommitted crimes. Imprisonment to protect society from predicted but unconstitutional offenses is...unprecedented in this country and fraught with danger of excesses and injustice".

The constitutional problem of requiring courts adjudicating release pending appeal to estimate future conduct and "anticipated but yet uncommitted crimes" heavily plagues current Bail Reform Act of 1984, as well as the Government's previous response to the District Court in this matter (Appendix at G).

Moreover, also in the case involving bail pending appeal, in Harris v. U.S., 404 U.S. 1232, 92 S.Ct. 10, 30, L.Ed. 2d 25 (1971), Justice Douglas noted that "While there is no automatic right to bail after conviction, the commend of the 8th Amendment that "Excessive bail shall not be required.." at very least obligates judges passing on the right to bail to deny such relief only for the strongest of reasons."

Finally, even after the adoption of the current Bail Reform Act of 1984, in our own district, District Court for New Jersey clearly established the existence of the right to bail, more derived from the substantive due process clause, by stating that "...because of the heightened infringement of

defendant's liberty interests resulting from the enlargement of time, the court held that continued detention wold offend due process" U.S. v. Vastola, 652 F. Supp 1446 (D.NJ.J, 1987).

2) Bail Reform Act of 1984 and The Current Jurisprudence

On October 12, 1984, Congress adopted the new law called the Comprehensive Crime Control Act of 1984. Chapter I of this Act is known as the Bail Reform Act of 1984, codified as 18 U.S.C. Section 3143(b).

As stated in the Summary, Bail Reform Act of 1984 contains a two prong test for granting release to convicted persons pending appeal and before elaborating it in more detail, we would just like to note the following introductory points.

As per Congressional intention, while the new Act of 1984 certainly makes granting of release pending appeal considerably more restrictive than under the previous 1966 Act, constitutionally guaranteed due process and other fundamental rights remain unchanged and unrestricted. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process clause from arbitrary governmental action" Foucha v. Louisiana, 504 U.S. 71, 112 S.Ct.1780, 118 L Ed. 2d 437 (1992). Even when dismissing constitutional challenges to the Bail Reform Act of 1984, which were initially successful at the circuit court level, the Supreme Court stated that "..we have always been careful not to minimize the importance and fundamental nature of the

individual's right to liberty", U.S. v. Salerno, 481 U.S. 739,

750, 107 S.Ct. 2095 (1987).

Second, due to the vague and indeterminant languge of the new statute, from the very beginning it has been subjected to heavy criticisms and challenges, inlcuding in our Circuit. At least two federal courts declared the new law, or at least some of its provisions unconstitutional, the Supreme Court, in a rare exercise of its powers to "rebuke" the legislative branch of the government, noted that the law might be unconstitutional under certain circumstances, and at least one district court judge flatly called it "ridiculous", saying that "I don't want to get into polemics about the new act, but I think that second section is ridiculous" U.S. v. Bayko, 774 F.2d 516 (1st Cir. 1985). In our Circuit it was Federal District Court Judge for the Western District of Pennsylvania, shortly after the law was adopted in 1986, in the case of U.S. v. Perry, 788 F.2d 100, 111 (3d Cir.1986), which declared the law unconstitutional.

Deciding to construe the statute rather than to invalidate it and openly challenge the Congress, our Circuit was one of the first to interpret the Bail Reform Act in the case of U.S. v. Miller, 753 F.2d 19,20 (3d Cir. 1985), which was just slightly modified a year later in U.S. v. Smith, 793 F 2d 85 (3d Cir. 1986). We present herewith both the controlling interpretation, and as to how the appellant qualifies under both test prongs of the statute.

2) The Appellant is not a risk of flight, danger to any person or to the community

As noted above, the appellant first needs to prove, by

clear and convincing evidence, that he is not a risk of flight, danger to any person or to the community. Since the text and the meaning of this first prong is closest to the old, traditional, bail provisions, the courts have been quite consistent regarding the application of the first prong of the test. This is despite the fact that the first prong is also somewhat vague and problematic as it is populated with vague definition elements such as the word "community" which in the age of the Internet could have very different meanings and outer boundaries, and also the word "danger" which is completely indeterminant, as in today's cyberspace it definitely has a different meaning than in 1984 when the current law was adopted.

However, as a general rule, the courts have consistently established that defendants convicted of violent crimes, those involving guns, drugs, almost all types of sex crimes, etc, are presumed risk of flight and danger, while defendants convicted of some non-violent, "paperwork-related" crimes such as tax fraud, bank fraud, mail fraud, wire fraud, and similar are often considered meeting this first test prong. For example, bail pending appeal was denied to violent criminals in the case of a felon in possession of a firearm (U.S. v. Moffitt, 527 F Supp 2d 474, WD NC 2002), killing of witness (U.S. v. Catala Fonfrias, 612 F Supp 999, DC Puerto Rico, 1985), convicted bank robbery conspirator (U.S. v. Daidone, 796 F Supp 715, ED NY, 1992), etc. However, bail pending appeal was granted in the case of an income tax evader (U.S. v. DeSimone, 424 F Supp 344, DC Ri, 2006), mail fraud conviction (U.S. v. Maher, 10 F. Supp 2d 594, WD Va, 1998),

and bank fraud conviction (U.S. v. Hart, 906 F Supp 102 (ND NY, 1995), etc.

In this respect, the appellant meets the definition of the first prong of the test as he is:

1) Fifty two years old, U.S. citizen, married for over 24 years, his wife and both daughters are U.S. citizens. Appellant has been a long term resident of New York for well over 25 years and is a quiet Long Island suburb type book reading nerd and a family man;

2) Before the current conviction, which is being appealed, the appellant has never been arrested or convicted in any procedure, in any court or before any government agency and had no criminal record;

3) Prior to being designated to the current correctional facility (FCI Danbury, CT), for the purposes of self-surrender, the appellant was free on bail with no violations or incidents reported from his initial arrest in May 2013 until lasat sentencing hearing in February 2016, for almost 3 years;

4) The appellant has been incarcerated since March 23, 2016, almost 7 months, with no U.S. Bureau of Prisons violation or incident reports;

5) During the pretrial bail period lasting over two years, from May 2013 to June 2015, the appellant was regarded such a low risk of flight or threat to any person or to the community that he was required to appear in the Court's Pretrial Services office (in-house reporting) only once per month and

had a complete freedom of movement in New York and New.

Jersey;

6) The appellant has a well established history of gainful

employment and before the current conviction, he had a stellar

record of practice of International Law and U.S. Immigration

Law for well over twenty five (25) years, with no disciplinary

record, or violations reported by any bar association or

grievance authority;

7) From the very beginning of this matter, the appellant fully

cooperated with the Government, and at the time of his arrest

voluntarily provided to the Government well over 3,000 pages

of business, financial, immigration, advertising, Internet and

other exculpatory documents;

8) The appellant has very strong ties to his community in New

York - both his ethnic Eastern European community and broader

immigrant community in Manhattan, Brooklyn, Queens and Bronx,

New York, served as a pro bono attorney for his church in

Manhattan (Appendix at _O_ ), and prior to the conviction was

managing his own law practice with part time and full time

legal employees and associates;

9) The appellant acted as a pro bono attorney for his church in

Manhattan and prior to the conviction was awarded Empire State

Counsel designation by the President of the New York State Bar

Association for his pro bono work, and was either a Chairman

or a Co-Chairman of several Immigration Law and other

committees of the Bar Association in New York, as well as

member of American Bar Association (ABA) Committees by ABA

Presidential appointment;

10) The appellant is a U.S. citizen who surrendered his U.S.

passport immediately  upon the filing of the charges against
him in May 2013. During the pre-trial period appellant was
allowed to leave the jurisdiction of the court and always
promptly returned to the jurisdiction of the court. The
appellant was allowed to travel to Chicago, IL, and Durham,
NC, on business and upon completing his business trips he
always promptly returned to the jurisdiction of the court and
informed the Court's Pretrial Services regarding his return;

11) After the jury conviction in June 2016, the Government
requested the remand of the appellant to the custody (to be
incarcerated pending sentencing), however, due to the absence
of any risk of flight or danger to any person or community,
district court judge denied the Government's request and
placed the appellant on home confinement, once again ruling
regarding the issues of risk of flight and danger in the
appellant's favor;

12) The appellant is over 50 years old, has no history of
mental illness or substance abuse, and is in a very poor
health due to the complications from diabetes, requiring daily
care including Metformin 1000 medications and other
medications, and up to two insulin injections daily (morning
and afternoon/evening), thus clearly not a risk of flight or
danger to another person or community (Appendix at _S_ );

13) The appellant has an intact family support system in place
and no history of any family or any other violence, and if
admitted to bail, will reside with his wife and children in
the family home on Long Island;

        Case law further supports the appellant's position

that he fully meets the first prong of the test necessary for the release pending appeal. In U.S. v. Price, 611 F. Supp 502 (SD Fla.1985), district court found that the defendant is not likely to flee and does not pose danger to either himself or community if previously was released pending appeal based on the fact that the defendant had been released on bond over course of proceedings (of several years), has been permitted to leave jurisdiction, and yet has appeared at every scheduled court date and sentencing. Also, in U.S. v. Farran, 611 F Supp 602 (SD Tex, 1985), affd witht op (5th Cir.1986), cert. den 476 US 1144 (1986), district court stated that a court which allows convicted defendant to voluntarily surrender to specified correctional facility finds by definition that defendant is not likely to flee or pose danger to safety of any other person or community for purposes of determining release pending appeal. Finally, in U.S. v. Galanis, 695 F Supp 1565 (SD NY, 1988), district court granted release pending appeal to a defendant who was convicted of 58 counts of indictment, including numerous RICO Statute convictions, as the court noted that "...violations of terms of bail will have extremely adverse effect on defendant's family so there is no appreciable risk of flight and the defendant no longer possesses large staff or skilled accomplices or offices which were essential to his fraudulent pursuits, so he is not present danger to community" (quotation marks added).

Therefore, appellant believes that the above referenced case law and facts stated regarding his case positively prove, by clear and convincing evidence, that he meets the first prong of the test for release pending appeal,

regardless of the possible interpretations of this subsection of the Statute.

3) Second prong of the test - the existence of substantial questions of law and fact and likelihood of reversal

The second part of the same Section (b) of the 18 U.S.C., which mandates that for the purposes of granting a release pending appeal judicial officer must also find that the appeal "raises a substantial question of law or fact likely to result in reversal, or an order for a new trial..." appears to us as vague, ambiguous, hopelessly indeterminant, internally inconsistent and unsurprisingly caused a circuit split in both the interpretation and the implementation of the provision which we do not believe can withstand a "categorical approach analysis" recently applied by the Supreme Court in Johnson v. U.S., 576 U.S.__, 135 S.Ct. 2551, 192 L.Ed. 2d 569 (2015). However, since our Circuit Court has reasonably interpreted this subsection, and the appellant presented grave and serious (and somewhat unusual) issues in his appeal, he strongly believes he qualifies for the release regardless of the legal interpretation. The biggest problem with the provision, which may explain the fact that the appellant's initial Motion for release is still pending with the district court in New Jersey after almost 3 months, is in the fact that, knowing that pursuant to FRAP Rule 9, Motion for release pending appeal has to be filed first with the same district court judge who previously convicted the appellant, if read literally, this subsection might be taken to condition bail

granting upon a district court's finding that its own judgment is likely to be reversed on appeal and that district court judges will somehow consciously leave "substantial errors" uncorrected, just for convicted defendants to discover them, see U.S. v. Randel, 761 F.2d 122 (2d Cir. 1985).

Our, 3rd Circuit Court of Appeals, has adopted a reasonable construction of this statute and has correctly noted that "...we are unwilling to attribute to Congress the cynicism that would underlie the provision where it to be red as requiring the district court to determine the likelihood of its own error...", U.S. v. Miller, 753 F.2d 19,20 (3d Cir. 1985). Basically, our Circuit interpreted the words "substantial question" as significant, novel, no previous precedent, or fairly doubtful, and as for "likely to result in reversal" our Circuit defined it as an "Issue (which) is sufficiently important to the merits that a contrary appellate ruling is likely to require reversal or a new trial", Miller at 20. As noted, other circuit courts adopted different interpretations such as 11th Circuit in U.S. v. Giancola, 754 F. 2d 898 (11th Cir. 1985), or a modified version of our circuit law such as 9th Circuit in U.S. v. Handy, 753 F.2d 1487 (9th Cir.1985).

Given the fact that this Motion is filed in the 3rd Circuit Court of Appeals, it strives to qualify the appellant under our, 3rd Circuit law, as presented below. The substantive issues of law and fact presented on the direct appeal in this matter are as follows.

I

THE DISTRICT COURT COMMITTED REVERSIBLE ERROR IN DENYING

APPELLANT'S MOTION TO DISMISS THE INDICTMENT ON THE BASIS THAT
THE ALLEGATIONS AGAINST HIM AMOUNT TO A CIVIL DISPUTE, NOT A
CRIMINAL CASE

The appellant's position is that even if the facts
stated in the superseding indictment were true and proven to
the jury beyond the reasonable doubt, they do not constitute
the mail fraud offense charged. The description of the facts
in the superseding indictment "...-without more- does not fit
that definition of..." (offense), McDonnell v. U.S., 195 L Ed.
2d 639 (2016).

It is well established that a breach of contract, or
the failure to fulfill a civil obligation, is not a crime,
U.S. v. D'Amato, 39 F.3d 1249, 1261 n.8 (2d Cir. 1994).
"Rescission of a contract is intended to be a remedy for the
injured party, i.e. the defrauded party or the party injured
by a breach of contract" U.S. v. Mergen, 764 F.3d 199 (2d
Cir.2014) and the mail fraud statute does not reach private
(commercial/corporate) contractual relationships and
particularly not long term contractual or corporate commercial
relations.

As mentioned above when discussing our Circuit Court's
approach to the Bail Reform Act of 1984, since the courts have
often stated that "It has long been our practice, however,
before striking a federal statute as impermissibly vague, to
consider whether the prescription is amenable to a limiting
construction" Skilling v. U.S, 561 US__, 130 S.Ct.__, 177 L Ed
2d 619 (2010), quoting Hooper v. California, 155 U.S. 648, 15
S.Ct. 207, 39 L.Ed 297 (1985), instead of mounting a facial,
or "as applied", constitutional challenge to the mail fraud

statute, the appellant instead opted to object to the
Government's overly expansive reading of the mail fraud
statute (18 U.S.C. Section 1341).

The Government's limitless reading of the mail fraud
statute is leading to an impermissible overcriminalization of
civil law of contracts and brings absurd results that every
breach of civil or commercial contract (oral or written), in
which mail or wire is used, subjects the breaching party to
federal mail or wire fraud statute prosecution (Appendix
at _G_ ). Since nowadays it is inconceivable that any
negotiations or execution of any ordinary, let alone a bit
more complex or serious, private or commercial contract, can
be done without the use of mail (overnight, Fedex,etc), or
Internet/e-mail (wire), the Government's reading of the mail
fraud statute has no outer boundaries, or at least leaves its
"outer boundaries ambiguous", Skilling at 619 and "stretches
the construction of .... to the breaking point" Mellouli v.
Lynch, 575 US __, 135 S.Ct. _, 192 L Ed 2d 60 (2015).

Moreover, while it is true that the Government
provided at least some factual details in the superseding
indictment in this matter (however wrong or deliberately
misleading), "If on its face the challenged provision is
repugnant to the due process clause, specifications of details
of the offense intended to be charged would not serve to
validate it" Lanzetta v. New Jersey, 306 US 451-458, 83 L Ed
888 (1939), and since in this case "It is the statute, not the
accusation under it, that prescribes the rule to govern
conduct and warns against transgression" Stromberg v.
California, 283 US 359-376, 75 L Ed 1117 (1931), it is the

duty of the court to intervene and dismiss such an indictment, as due to the expansive reading of the statute and letting the indictment stand, district court produced the situation in which "the jury charge permitted a conviction for conduct not within the reach of Section 1341" McNally v. U.S., 483 US 350, 107 S Ct 2875 (1987).

Since in this matter it is the reading and the interpretation of the law (statute) that is at stake, and not the accusation (facts), which needed to be determined by the jury as a trier of fact, and since it is "emphatically the province and duty of the judiciary to say what the law is" Marbury v. Madison, 5 US 137, 1 Cranch 137, 177 2 L Ed 6d (1803), the appellant asked district court to dismiss the superseding indictment and throw it out of the court, as there is nothing for the jury to do or decide - even if the facts stated in the indictment were true and proven, they simply do not "fit" into mail fraud statute, unless the statute is read so expansively that everything "under kitchen sink" would be covered by that federal statute, US v. Bond 572 US__, 134 S.Ct.__, 189 L Ed 2 d 1, (2014). While it is ture, to be sufficient, an indictment must allege that the defendant performed such acts which, if proven, constitute a violation of the law that he is charged with violating, U.S. v. Small, 793, F.3d 350 (3d Cir.2015) and since "the conviction of a defendant for conduct that a criminal statute, as properly interpreted, does not prohibit violates due process" U.S. v. Fernandez, 722 F.3d 1 (1st Cir.2013), it is clearly a matter of the interpretation of the statute as to what conduct it proscribes, not any potential factual dispute.

Government's proposed reading of the statute effectively, as stated in the superseding indictment and repeated during the trial, authorizes and encourages arbitrary and discriminatory enforcement by failing to establish minimal guidelines to govern law enforcement regarding the statute's outer boundaries, U.S. v. Fontaine, 697 F.3d 221 (3d Cir. 2012), and also "Mandates such a standardless sweep that it allows policemen, prosecutors, and juries to pursue their personal predilections", U.S. v. Handakas, 286 F.3d 92 (2d Cir. 2002), and even selectively amends the statute - "inserting words in some places, twisting their meaning elsewhere" Harbison v. Warden, 556 US__, 129 S.Ct. __(2009).

The indictment in this matter needs to be dismissed as courts need to construe criminal statute restrictively as "..ambiguous laws which impose penal sanctions are to be strictly construed against the Government", U.S. v. Margiotta, 688 F.2d 108 (2d Cir. 1982). This is particularly true when the Congress is silent about the legal definition of one of the key offense elements - scheme to defraud, leading to the situation that "The Government's construction of congressional "silence" would thus render what Congress has expressly said absurd", Cf.Green v. Bock Laundry Machine Co. 490 US 504, 527, 104 L Ed 2d 557, 109 S Ct 1981, (1989), as "when confronted... with a statute which, if interpreted literally, produces an absurd, and perhaps unconstitutional result, our talks is to give some alternative meaning (to the statute)...that avoids this consequence" Burns v. U.S., 501 US 129, 115 L Ed 2d 123, 111 S Ct 2182 (1991).

Moreover, reading the statute literally, as written and as the Government advocates, does not mean that the interpretation of it is correct as sometimes even when the text of the statute appears "crystal clear" when for example a statute uses the word "all" which literally may mean "all", the courts can still read it contextually and interpret it not to mean "all" or "all injuries", as "Although a literal reading of ...is limited only by the minimal requirements of constitutional standing, the Supreme Court has interpreted this provision more restrictively than that..." Hanover 3201 Realty,LLC v, Village Supermarkets, Inc, 2015 U.S. App. Lexis 19694, No.14-4183 (3d Cir.2015).

Otherwise, the statute has no clear meaning and no outer boundaries and the statute's limitless interpretation reaches and proscribes conduct as broad as importing counterfeit erectile dysfunction pharmaceuticals from China (U.S. v. Hucks, 557 Fed Appx 183, 3d Cir. 2014), school board mailing under the duty imposed by the state law (Parr v. U.S. 363 US 370, 4 L Ed 2d 1277, 1960), plagiarizing doctoral dissertations (U.S. v. Frost, 125 F 3d 346 6th Cir. 1997), selling liquidated merchandise (U.S. v. Dobson, 419 F.3d 231, 3d Cir. 2005), false coins grading (U.S. v. Romano, 794 F 3d 317, 2d Cir.2015), health care fraud (U.S. v. Rutigliano, 790 F.3d 389, 2d Cir. 2015), depriving the United Nations of honest services (U.S. v. Bahel, 662 F 3d 610, 2nd Cir. 2009), conducting fraudulent charity activities (U.S. v. Dhafir, 342 Fed Appx 702 2d Cir. 2009), immigration/visa fraud (U.S. v. Ramirez, 146 Fed Appx 518, 2d Cir. 2005) to mailing of aircraft or space vehicles parts in foreign commerce (U.S. v.

Razmilovic, 419 F 3d 134, 2d Cir. 2005), and unavoidably so, mail fraud statute also covers waste dumping operations (U.S. v. Paccione, 949 F 2d 1183, 2d Cir. 1991).

This Honorable Court should reject the Government's expansive and limitless interpretation of the statute because it would otherwise criminalize "a broad range of apparently innocent conduct and swept in individuals who had no knowledge of the facts that made their conduct blameworthy" Elonis v. U.S., 135 S.Ct. 2001, 192 L. Ed 2d 1 (2015)- at least not as far as federal law or federal statute is concerned, as "section..., as presently drafted and as construed by ...., contains no standard for determining what a suspect has to do in order to satisfy the requirement to provide ..." and ..."as such the statute vests virtually complete discretion in the hands of the police to determine whether the suspect has satisfied the statute...or is only at the whim of any police officer..." (in this case government prosecutor, comment added), Kolender v. Lawson, 461 US 352, 103 S.Ct.1855, 1983.

In this respect, we also note that the Government's reliance on quoting the language of the mail fraud statute in the indictment is misplaced as "a mere adherence to the letter, without reference to the spirit and purpose, may in this case mislead, as it has misled in other cases...as it is the thing and not the name that is to be considered" Keokuk Northern v. City of Keokuk, Iowa, 24 L Ed 377, 95 US 80 (1877). When analyzing a mail fraud statute "an examination of the context of a statutory section can sometimes lead courts to decide that a linguistically implausible interpretation best reflects the legislature's intent" New Jersey Payphone

Association v. Town of West New York, 299 F.3d 235 (3d
Cir.2002), and "because we are condemned to the use of words,
we can never expect mathematical certainty from our language"
Hill v. Colorado, 530 US 730, 733 (2000). Our Circuit has
already expressed similar concerns about overly expansive
reading of the mail fraud statute in U.S. v. Murphy, 323 F.3d
102 (3d Cir.), when among other things in reversing Murphy's
conviction, our Circuit found that Margiotta decision "extends
the mail fraud statute beyond any reasonable bounds", Id.
Therefore, our Circuit court has already established that at
least some bounds exist in mail fraud statute prosecutions.

     Last but not the least, such an expansive reading of
the mail fraud statute raises serious overcriminalization and
federalism concerns. For overcriminalization see Justice Kagan
statement in dissent "That brings to the surface the real
issue: overcriminalization and excessive punishment in the
U.S. Code", Yates v. U.S., 135 S.Ct. 1074, 191 L Ed. 2d 64
(2015), also a claim that this is not a political issue as
this is about the dismissal of indictment and "this is plainly
not a case about political debate over the criminalization",
Martinez v. Easton, 725 F 3d 293 (3d Cir. En Banc,2013), see
also Stuart P. Green, Why it's a Crime to Tear the Tag off a
Mattress: Overcriminalization and the Moral Content of
Regulatory Offenses, 46 Emory L.J. 1533 (1997), quoted in
Mayorga v. Attorney General, 757 F3d 126 (3d cir.2014).

     As for the federalism concerns, courts have already
noted that "we are cognizant of the problem of ever expanding
use of the mail fraud statute to reach activities that
heretofore were considered within the exclusive domain of

state regulation, U.S. v. Caldwell, 544 F.2d 691, 697 (4th Cir.1976) and "statutes like the federal mail fraud statute involved here must be strictly construed in order to avoid extension beyond the limits intended by Congress", U.S. v. Edwards, 458 F2d 875 (5th Cir. 1972), quoting Kline v. Burke Construction company, 260 U.S. 226, 43 S.Ct.79, 67 L. Ed. 226 (1922). Courts also noted that "The Government's expansive interpretation of ... would raise significant constitutional concerns..." as "the Government's interpretation also raises due process and federalism concerns" Mc.Donnell v. U.S, 195 L Ed. 2d 639(2016).

All of this is even more so given the fact that several courts found that the mail fraud statute did not reach private (commercial/corporate) contracts, which is a clear "limiting construction" providing necessary strict and clear boundaries to the mail fraud statute and ordinary citizens to follow. On that basis the appellant asked the court to dismiss the superseding indictment against him.

II

THE APPELLANT'S SECOND CLAIM IS THAT DUE TO THE EGREGIOUS AND OUTRAGEOUS GOVERNMENT MISCONDUCT WHERE THE GOVERNMENT SECRETLY REMOVED EXCULPATORY PHYSICAL EVIDENCE FROM COURTROOM, MAKING IT UNAVAILABLE FOR JURY DELIBERATIONS, AND THUS VIOLATING APPELLANT'S DUE PROCESS RIGHTS TO A FAIR TRIAL, WHICH PRODUCED STRUCTURAL ERROR IN THIS MATTER, THE DISTRICT COURT COMMITTED REVERSIBLE ERROR IN BLATANTLY DISREGARDING GOVERNMENT'S MISCONDUCT AND DENYING THE APPELLANT'S MOTION FOR A NEW TRIAL UNDER RULE 33 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE

In this case the Government played one of its dirtiest tricks in the judicial history of New Jersey.

The Government's theory of the case was that the appellant committed mail fraud as he did not run any immigration advertisements for which he billed his employer's corporate clients and "got paid for nothing" (Appendix at G). The appellant's position is that all, or at least most, of the advertisements billed, were properly run and consequently no scheme to defraud/mail fraud exists in this matter (defense theory 1), and/or even if only a handful of ads were run, due to some other Immigration and Labor Law considerations, no scheme to defraud/mail fraud would have been present in this matter anyhow (defense theory 2). Proof of advertisements were admitted into the trial evidence with Government's approval, by stipulation. The existence of the newspaper advertisements and their presentment to the jury for the purposes of jury deliberations was the most critical piece of evidence for the defense.

-28-

On the last day of trial, Thursday, June 25, 2015, prosecuting Assistant U.S. Attorney Dennis Carletta, on record, assured the judge, the jury and the defense, that all the newspaper advertisements properly admitted into evidence, were physically present in the courtroom in some large white cardboard boxes, with all other newspapers and magazines in the courtroom. No trial was held on Friday, June 26, 2015. Closing statements were conducted on the last day of the trial, Monday, June 29, 2015, when the defense counsel disclosed the existence of the newspaper advertisements to the jury and invited the jury to review advertisements during the jury deliberations in order to realize that there is no scheme to defraud in this matter.

After the conclusion of the closing statements on the same day, Monday, June 29, 2015, jury started its deliberations. Logically, soon thereafter, jury made a request to see the defense's physical evidence which was admitted during the trial - originals or copies of newspaper advertisements. Acting upon the jury's demand, the District Court clerk tried to provide the requested evidence to the jury, but to no avail.  Defense advertisement exhibits were removed from the courtroom by the Government and made unavailable for jury deliberations. Second prosecuting Assistant U.S. Attorney Francisco Navarro admitted then, on record, on Monday afternoon, June 29, 2015, that the defense's physical evidence (advertisements) were indeed removed from the courtroom by the Government, before the start of the jury deliberations. When the Government realized that they would lose the case, they simply removed defense exhibits,

preventing the jury from reviewing them. Jury repeated its request to see the evidence several times, but to no avail. Finally the jury concluded that the advertisements did not exist and convicted the defendant on all nine counts of indictment.

The Government's "James Bond style action" in removing defense evidence from courtroom is an extraordinary and outrageous act of gross prosecutorial misconduct and represents a structural error clearly requiring a reversal and a new trial. This is regardless of the relative strength of any other evidence against the appellant as it is "regardless of how overwhelmingly the evidence may point in that direction" Arizona v. Fulminante, 499 US 279, III S.Ct. 1246 (1991), quoting U.S. v. Martin Linen Supply Co, 430 US 564, 97 S.Ct. 1349 (1977). In considering the importance of fair trial and jury impartiality, our nation's highest courts have clearly stated that "the guarantees of jury trial in the federal and state constitutions reflect a profound judgment about the way in which law should be enforced and justice administered. A right to jury trial is granted to criminal defendants in order to prevent oppression by the Government." Duncan v. Louisiana, 391 US 145, 88 S.Ct. 1444 (1968), and these are "those fundamental principles of liberty and justice which lie at the base of all our civil and political institutions" Powell v. Alabama, 287 US 45, 53 Sc. Ct. 55 (1932). In addition, "the limitations of due process clause of the 5th Amendment come into play only when the Government activity in question violates some protected right of the defendant" Hampton v. U.S., 425 US 484, 96 S.Ct. 1646 (1976),

and unfortunately correctly predicting that "While we may some day be presented with a situation in which a conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the Government from invoking judicial process to obtain a conviction.." U.S. v. Russell, 411 US 423, 935 S.Ct. 1637 (1973). It is our firm conviction that this day has arrived with the instant case.

The above issues of law and fact are not only truly substantive, but also clearly present legal grounds for reversal and a new trial, as required by the provisions of 18 U.S.C. Section 3143(b)(1).

### III

THE DISTRICT COURT COMMITTED REVERSIBLE ERROR IN CALCULATING THE LOSS FIGURE UNDER U.S.S.G. SECTION 2B.1.1. TO BE $676,000, REJECTING THE DEFENSE'S PROPOSED LOSS CALCULATION OF $28,000

In determining a loss amount for the purposes of guidelines calculation, a district court findings must be grounded in the evidence and not derived from mere speculation, U.S. v. Deutsch, 987 F.2d 878, 886 (2d Cir.1993), and "while estimates are permissible, courts must not speculate concerning the existence of a fact which would permit a more severe sentence under the Guidelines", U.S. v. Sepulveda, 115, F3d 882, 890 (11th Cir. 1997).

In this matter, not only that the court heavily inflated actual loss number and neither used the correct legal methodology, nor explained the methodology used in calculating the actual loss, district court used heavily redacted, blocked

and unreliable financial and legal data and info provided by
the appellant's prior employer and immediate supervisor, who
testified against him at trial and tried to portray themselves
as corporate victims in this case.

Given the fact that the defense was precluded from
fully reviewing actual loss numbers and info, the procedure
violated both the defendant's due process rights and rights
under the advisory sentencing guidelines as defendant was
unable to mount a proper and complete defense and sentencing
guidelines were wrongly calculated, making the sentence both
procedurally and substantively unreasonable.

IV

THE DISTRICT COURT COMMITTED REVERSIBLE ERROR IN FIXING THE
AMOUNT OF RESTITUTION THAT THE APPELLANT OWES

The District Court made two fundamental errors in
fixing the restitution award. First, the Court failed to make
requisite factual findings under the applicable statute before
imposing restitution. Second, the court mistakenly considered
the appellant's previous employer, Wildes & Weinberg, a
"victim" of the offenses committed in calculating the
restitution now owed. Both of these errors amount to an
inflated award and require a reversal and remand for a new
calculation of the restitution amount. Specifically, defense
objected to the amount of restitution as improper, as (1) some
of the invoices included related to some other legal services
rather than advertising and have no connection to the offenses
charged, (2) some invoices included in the restitution are

undated so it is unclear that they pertain to services that were provided, (3) for some of the invoices Flowerson (appellant) was prevented from advertising because of the November 2012 cease and desist order to do so, (4) at trial government witness Steven Weinberg and the Government recognized that some of the advertisements had been placed, and (5) the appellant introduced into evidence at hearing that the he placed at least $83,000 worth of advertisements, which was not taken into the consideration by the district court at all. Therefore, district court's restitution order is reversible and it was issued in clear error.

All four issues presented above are deep, substantive issues of law and fact and each of them, independently, can bring about a reversal or a new trial or sentencing in this matter.

4) District Court Orders of Restitution and Forfeiture should be stayed pending appeal

Due to the seriousness of substantial issues elaborated above in points from 1-4, the Honorable Circuit Court should issue stay of District Court Orders of Restitution and Forfeiture.

Criteria to be considered governing propriety of stay orders pending appeal under Rule 8 include (1) whether appellant has made strong showing that he is likely to prevail on merits of appeal, (2) whether appellant has shown irreparable injury if stay is not granted, (3) whether stay will substantially harm other parties to litigation, and (4)

where interests of public lie, Battle v. Anderson, 564 F.2d 388 (10th Cir.1977).

As for condition under (1), appellant believes that the above referenced arguments are extremely strong, well documented and sufficient for reversal of his conviction and a new trial/new sentencing. As for condition (2) appellant's position is that monthly payments which he is currently making for restitution purposes represent an undue and unnecessary financial hardship for him and his family and also an unjust enrichment of the so called corporate victims such as ADP with over ten billions dollars in annual revenues, if the conviction and/or sentence is vacated. As for conditions (3) and (4), the appellant kindly notes that stay will not substantially harm any parties to the litigation as there are no individual victims in this matter (appellant claims that there are no victims at all), as all of the victims in this matter are large Fortune 500 corporations or large corporate giants and Madison Avenue Manhattan law firms, and the amounts of restitution and forfeiture are so miniscule in comparison to their annual corporate revenues that their large corporate bureaucracies will not even notice whether receiving restitution checks while the appeal is pending. Once again emphasizing his innocence, the appellant also strongly believes that the public interest does not lie in innocent party paying restitution to large corporate giants and forfeiture to the U.S. Government until, at least, his direct appeal is heard and resolved and the district court sentence becomes final.

While the Federal Rules of Appellate Procedure Rule

8(a)(1)(C) requires that a motion for injunction while on appeal is pending be ordinarily made in the district court (and appellant filed his initial Motion for Release over 3 months ago and it is still pending), this requirement has been excused where another application to the district court would serve little purpose. In his letter to the Chief Judge of the U.S. District Court for New Jersey the appellant noted that the district court's refusal to process his release motion amounts to the defiance of the Act of Congress, as the timing is critical in bail motions. Direct application to the Circuit Court is also excused where the problem is immediate and the district court committed legal error. Homas v. City of Albuquerque, 264 F.3d 1240 (10th Cir.2001).

Also, "Movant need not, in every instance, show that he will probably succeed on merits in order for court to grant stay or injunction pending appeal." Laurenzo v. Mississippi High School Activities Association, 708 F.2d 1038 (5th Cir. 1983),

Last but not the least, district court is not free under any circumstances to disregard application for release pending appeal, as "..there are myriad situations in which such applications should be denied, but district court must act on application and state in writing reasons for action taken" U.S. v. Hart, 779 F.2d 575 (10th Cir.1985), and also "We note that the requirement that a defendant move first in the district court is not a jurisdictional requirement. See Fed. R. App. P. 2 (other than expanding the time for appeal, "a court of appeals may..for .. good cause, suspend any provision of these rules in a particular case"). And if a

defendant moved for bail after his appeal had been fully briefed and argued, placing this Court in a better position than the district court to assess the merits and likely outcome of the appeal, we could exercise our discretion under Rule 2 to suspend the Rule 9(b) requirement that the defendant's motion for release be first made in the district court." U.S. v. Hochevar, 214 F.3d 342 (2d Cir.2000).

CONCLUSION

By virtue of the foregoing, the appellant qualifies for the release under the provisions of the Bail Reform Act of 1984, as he is not a risk of flight, danger to anyone of community, his appeal was clearly not filed for the purposes of delay and contains deep and complex constitutional issues which are not only substantive, but are highly likely to result in reversal, new trial or a new sentence.

Equally, appellant's case qualifies for the issuance of stays of district court orders of restitution and forfeitures, as due to the gravity of issues presented it is at least more likely than not that the judgment of conviction and/or sentence will be vacated.

Dated: October 14, 2016

MARIJÁN CVJETICANIN

PRO SE

C.A. No.16-1422

APPENDIX FOR THE APPELLANT

NOV - 4
8CC

---

IN THE UNITED STATES COURT OF APPEALS

FOR THE THIRD CIRCUIT

---

UNITED STATES OF AMERICA

Appellee

v.

MARIJAN CVJETICANIN

Appellant

---

MOTION FOR RELEASE PENDING APPEAL  AND

MOTION FOR STAY OF ORDERS OF RESTITUTION AND FORFEITURE OF THE

U.S. DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY

(D.N.J. CRIM. No. 14-274),

SET BELOW: HON. MICHAEL A. SHIPP, U.S.D.J.

-----------------------------------------------------

APPENDIX FOR THE APPELLANT Mr. MARIJAN CVJETICANIN (A-S)

PRO SE FILING

MARIJAN CVJETICANIN, #65437-050

FCI DANBURY

FEDERAL CORRECTIONAL INSTITUTION

ROUTE 37, DANBURY, CT 06811

INDEX OF APPENDIX

District Court Docket Sheet........................... A

Appellate Docket Sheet............................... B

Proposed Conditions of Release ..................... C

Judgement of Conviction, Orders of Restitution

and Forfeiture....................................... D

Notice of Appeal..................................... E

Appellant's Reply to the Government ................ F

Government's Response to Initial Motion for

Release ............................................. G

Appellant's Motion to Expedite....................... H

Appellant's Letter to N.J.D.C. Chief Judge............I

Appellant's Affidavit in Support of Relase Motion ... J

Appellant's Insurance Fraud Complaint................. K

Copy of Appellant's U.S. Passport.................... L

Copies of U.S. Passports of Appellant's Family....... M

Letter from the Bar Assocation (clear license).......N

Church letter........................................O

Appellant's Awards and Memberships ................. P

Proof of Appellant's Assets (St. James House)....... Q

Proof of Appellant's Assets (Broadway condo)........R

Appellant's Medical Records..........................S

C

PROPOSED CONDITIONS OF RELEASE ON BAIL PENDING APPEAL:

1) The Appellant will be on 24/7 home confinement.

2) The Appellant will not practice U.S. Immigration and Nationality Law through his own law office, or in any way prepare immigration legal forms and documents on his own as a sole proprietor/practitioner while on bail.

3) The Appellant will not engage in any advertising business with any firm, and will not engage in any advertising related matters or activities of Flowerson Holdings, Inc and Global Media NY, Inc.

4) The Appellant is allowed to attend religious events in New York without prior approval from Probation Office, but is required to inform Probation Service at least 48 hours in advance before attending any such event.

5) The Appellant is allowed to attend legal and non-legal educational events in New York without prior approval from Probation Office, but is required to inform Probation Office at least 48 hours in advance before attending any such event.

6) The Appellant is allowed to travel to his attorney office, or any other attorney office for legal consultation purposes, without prior approval from Probation Office, but is required to inform Probation Office at least 48 hours in advance before any such meeting.

7) The Appellant is allowed to attend medical and hospital appointments without prior approval from Probation Office, but is required to inform Probation Office at least 48 hours in advance before any such appointment.

8) The Appellant is allowed to attend his own court and bar

association Grievance/Disciplinary Committee appointments in New York and New Jersey, where he serves individually in any role - as a plaintiff or defendant without prior approval from Probation Office. The Appellant is also allowed to travel to Philadelphia, Pennsylvania, to effectuate the filing of, or participate in, any oral hearings, panel rehearings and rehearings en banc at the U.S. Court of Appeals for the Third Circuit, and to travel to Washington,D.C. in order to effectuate or conduct same filings, hearings and actions at the Supreme Court of the United States. For any of these purposes the Appellant will inform Probation Office at least 48 hours in advance.

9) The Probation Office has no power to add any bail conditions or requirements unless stated above and the Appellant is allowed a reasonable New York and New Jersey traffic time to complete all appointments and return to his residence.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Michael A. Shipp |
| v. | : | Crim. No. 14-274 |
| MARIJAN CVJETICANIN, | : | JUDGMENT AND ORDER OF FORFEITURE |
| Defendant. | : | (MONEY JUDGMENT) |

WHEREAS, the Government has applied for the entry of an Order of

Forfeiture in the form of a personal money judgment against Marijan

Cvjeticanin (the "Defendant");

WHEREAS, the Government gave notice in the Superseding Indictment,

filed on or about September 19, 2015, that it would seek the forfeiture of

property as part of any sentence; and

WHEREAS, on June 29, 2015, the jury returned a verdict of guilty

against the Defendant on Counts One through Nine of the Superseding

Indictment, each of which charged the Defendant with mail fraud, in violation

of 18 U.S.C. § 1341;

IT IS ORDERED, ADJUDGED AND DECREED THAT:

1.    The Government's application is granted.   Pursuant to 18 U.S.C.

§ 981(a)(1)(C) and 28 U.S.C. § 2461 and Rule 32.2(b)(1) of the Federal Rules of

Criminal Procedure, based upon the evidence presented at trial and the

submissions of the parties, and for the reasons stated on the record, the Court

finds that the Government has proven by a preponderance of the evidence that

-2-

the Defendant is liable for a personal money judgment in the amount of

**$ 668,977.00**, representing the amount of proceeds obtained as a result of the

mail fraud offenses charged in Counts One through Nine of the Superseding

Indictment, of which the Defendant was convicted.    The Court notes that

because the advertising fees paid by ADP and Broadridge, which total

$640,202, would not alter the Defendant's offense level, the Court did not

include these fees in its determination of the applicable offense level during

sentencing.    Based on the Court's review of the evidence and testimony

presented at trial, however, the Court finds that the Government has shown by

a preponderance of evidence that these fees are not materially false and are

thus properly included in the Court's calculation of a forfeiture money

judgment.    The Court reserves the right to modify this money judgment

following the March 23, 2016 hearing on restitution.

    2.    A criminal forfeiture money judgment in the amount of

**$ 668,977.00**, is hereby entered against the Defendant, pursuant to pursuant

to 18 U.S.C. §§ 981(a)(1)(C) and 8 U.S.C. § 2461(c), and Fed. R. Crim. P.

32.2(b)(1) (the "Money Judgment").

    3.    All payments on the Money Judgment shall be made by postal

money order, bank or certified check, made payable, in this instance to the

United States Department of Treasury, and delivered by mail to the United

States Attorney's Office, District of New Jersey, Attn: Asset Forfeiture and

Money Laundering Unit, 970 Broad Street, 7th Floor, Newark, New Jersey

-3-

07102, and shall indicate the Defendant's name and case number on the face

of the check.

4.      Pursuant to 21 U.S.C. § 853, the Government is authorized to

deposit all payments on the Money Judgment in the Department of Treasury

Asset Forfeiture Fund, and the United States shall have clear title to such

forfeited property.

5.      Pursuant to Federal Rule of Criminal Procedure 32.2(b)(3), upon

entry of this Order, the United States Attorney's Office is authorized to conduct

any discovery needed to identify, locate, or dispose of property to satisfy the

Money Judgment, including depositions, interrogatories, requests for

production of documents and the issuance of subpoenas.

6.      The Clerk of the Court is directed to enter a money judgment

against the Defendant in favor of the United States in the amount of

**$ 668,977.00**.

IT IS FURTHER ORDERED that this Court shall retain jurisdiction to

enforce this Order and to amend it as necessary.   *See, e.g.*, Fed. R. Crim.

P. 32.2(e).

ORDERED this _18th_ day of February, 2016.

HONORABLE MICHAEL A. SHIPP
United States District Judge

UNITED STATED DISTRICT COURT
DISTRICT OF NEW JERSEY
MINUTES OF PROCEEDINGS

OFFICE: **TRENTON**                                    DATE: February 18, 2016

JUDGE: **MICHAEL A. SHIPP**

COURT REPORTER: CATHY FORD

Docket # **14-CR-564**

TITLE OF CASE:
UNITED STATES OF AMERICA
        vs.
MARIJAN CVJETICANIN

        DEFT. PRESENT

**APPEARANCES:**
Dennis Carletta, AUSA for Government
Francisco Navarro, AUSA for Government
Rick Patel, Special Agent, Department of Homeland Security
Lorraine Gauli-Rufo, CJA for Defendant
Daniel Carney, U.S. Probation
Daniel Milne, U.S. Pretrial

NATURE OF PROCEEDINGS: **SENTENCING (on Counts 1-9 of Second Superseding Indictment)**
Imprisonment for a term of 57 months on each of Counts 1ss-9ss to run concurrently.
Supervised Release for a term of 3 years on each of Counts 1ss-9ss to run
concurrently, with special conditions.
Special Assessment: $900 ($100 on each count), due immediately.
Restitution Hearing set for 3/23/16 at 12PM.
Ordered Defendant to voluntarily surrender to institution designated by the Bureau of
Prisons on date and time to be determined by the Bureau of Prisons.
All previous counts of the original indictment (counts 1-6) and superseding indictment
(counts 1s-12s) are dismissed.

Time commenced: 11:45 AM
Time Adjourned: 1:35 PM
Total Time: 1hr 50 min

                                        s/Nativelis Rodriguez
                                        **DEPUTY CLERK**

AO 245B (Mod. D/NJ 12/06) Sheet 2 - Imprisonment

Judgment – Page 2 of 7

Defendant:    MARIJAN CVJETICANIN
Case Number:  3:14-CR-274-01

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 57 Months, on each of counts 1ss through 9ss, to be served concurrently.

The Court makes the following recommendation to the Bureau of Prisons: Designate a facility for service of this sentence as near as possible to the defendant's home address.

The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons on Date and Time to be determined by the Bureau of Prisons.

## RETURN

I have executed this Judgment as follows:

_____
_____
_____
_____

Defendant delivered on _____ To _____

At _____, with a certified copy of this Judgment.

_____
United States Marshal

By _____
Deputy Marshal

AO 245B (Mod. D/NJ 12/06) Sheet 3 - Supervised Release

Judgment – Page 3 of 7

Defendant:      MARIJAN CVJETICANIN
Case Number:    3:14-CR-274-01

### SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of 3 years on each of counts 1ss through 9ss, all such terms to run concurrently.

Within 72 hours of release from custody of the Bureau of Prisons, the defendant shall report in person to the Probation Office in the district to which the defendant is released.

While on supervised release, the defendant shall comply with the standard conditions that have been adopted by this court as set forth below.

Based on information presented, the defendant is excused from the mandatory drug testing provision, however, may be requested to submit to drug testing during the period of supervision if the probation officer determines a risk of substance abuse.

If this judgment imposes a fine, special assessment, costs, or restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine, assessments, costs, and restitution that remains unpaid at the commencement of the term of supervised release and shall comply with the following special conditions:

NEW DEBT RESTRICTIONS

You are prohibited from incurring any new credit charges, opening additional lines of credit, or incurring any new monetary loan, obligation, or debt, by whatever name known, without the approval of the U.S. Probation Office. You shall not encumber or liquidate interest in any assets unless it is in direct service of the fine and/or restitution obligation or otherwise has the expressed approval of the Court.

SELF-EMPLOYMENT/BUSINESS DISCLOSURE

You shall cooperate with the U.S. Probation Office in the investigation and approval of any position of self-employment, including any independent, entrepreneurial, or freelance employment or business activity. If approved for self-employment, you shall provide the U.S. Probation Office with full disclosure of your self-employment and other business records, including, but not limited to, all of the records identified in the Probation Form 48F (Request for Self Employment Records), or as otherwise requested by the U.S. Probation Office.

AO 245B (Mod. D/NJ 12/06) Sheet 3a - Supervised Release

Judgment – Page 4 of 7

Defendant:      MARIJAN CVJETICANIN
Case Number:   3:14-CR-274-01

### STANDARD CONDITIONS OF SUPERVISED RELEASE

While the defendant is on supervised release pursuant to this Judgment:

1)   The defendant shall not commit another federal, state, or local crime during the term of supervision.

2)   The defendant shall not illegally possess a controlled substance.

3)   If convicted of a felony offense, the defendant shall not possess a firearm or destructive device.

4)   The defendant shall not leave the judicial district without the permission of the court or probation officer.

5)   The defendant shall report to the probation officer in a manner and frequency directed by the Court or probation officer.

6)   The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.

7)   The defendant shall support his or her dependents and meet other family responsibilities.

8)   The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons.

9)   The defendant shall notify the probation officer within seventy-two hours of any change in residence or employment.

10)  The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute or administer any narcotic or other controlled substance, or any paraphernalia related to such substances.

11)  The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered.

12)  The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer.

13)  The defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer.

14)  The defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer.

15)  The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court.

16)  As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

(17) You shall cooperate in the collection of DNA as directed by the Probation Officer.

*(This standard condition would apply when the current offense or a prior federal offense is either a felony, any offense under Chapter 109A of Title 18 (i.e., §§ 2241-2248, any crime of violence [as defined in 18 U.S.C. § 16], any attempt or conspiracy to commit the above, an offense under the Uniform Code of Military Justice for which a sentence of confinement of more than one year may be imposed, or any other offense under the Uniform Code that is comparable to a qualifying federal offense);*

(18) Upon request, you shall provide the U.S. Probation Office with full disclosure of your financial records, including co-mingled income, expenses, assets and liabilities, to include yearly income tax returns. With the exception of the financial accounts reported and noted within the presentence report, you are prohibited from maintaining and/or opening any additional individual and/or joint checking, savings, or other financial accounts, for either personal or business purposes, without the knowledge

AO 245B (Mod. D/NJ 12/06) Sheet 3a - Supervised Release

Judgment – Page 5 of 7

Defendant:    MARIJAN CVJETICANIN
Case Number:    3:14-CR-274-01

and approval of the U.S. Probation Office. You shall cooperate with the Probation Officer in the investigation of your financial dealings and shall provide truthful monthly statements of your income. You shall cooperate in the signing of any necessary authorization to release information forms permitting the U.S. Probation Office access to your financial information and records;

(19)  As directed by the U.S. Probation Office, you shall participate in and complete any educational, vocational, cognitive or any other enrichment program offered by the U.S. Probation Office or any outside agency or establishment while under supervision;

(20)  You shall not operate any motor vehicle without a valid driver's license issued by the State of New Jersey, or in the state in which you are supervised.  You shall comply with all motor vehicle laws and ordinances and must report all motor vehicle infractions (including any court appearances) within 72 hours to the U.S. Probation Office;

_For Official Use Only - - - U.S. Probation Office_

Upon a finding of a violation of probation or supervised release, I understand that the Court may (1) revoke supervision or (2) extend the term of supervision and/or modify the conditions of supervision.

These conditions have been read to me. I fully understand the conditions, and have been provided a copy of them.

You shall carry out all rules, in addition to the above, as prescribed by the Chief U.S. Probation Officer, or any of his associate Probation Officers.

(Signed) _____

Defendant                                Date

_____

U.S. Probation Officer/Designated Witness              Date

AO 245B (Mod. D/NJ 12/06) Sheet 6 - Restitution and Forfeiture

Judgment – Page 6 of 7

Defendant:      MARIJAN CVJETICANIN
Case Number:    3:14-CR-274-01

## RESTITUTION AND FORFEITURE

### RESTITUTION

Pursuant to 18 U.S.C. § 3664(d)(5), the Court shall set a date for the final determination of restitution, not to exceed 90 days after sentencing. During that time, the government shall provide sufficient information including a listing of all identified victims, mailing addresses, and amounts subject to restitution to fashion a restitution order. The restitution hearing date is set for 3/23/16 at 12:00PM.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) community restitution, (6) fine interest, (7) penalties, and (8) costs, including cost of prosecution and court costs.

AO 245B (Mod. D/NJ 12/06) Sheet 6 - Restitution and Forfeiture

Judgment – Page 7 of 7

Defendant:      MARIJAN CVJETICANIN
Case Number:   3:14-CR-274-01

## RESTITUTION AND FORFEITURE

### FORFEITURE

The defendant is ordered to forfeit the following property to the United States:

Please see judgment and order of forfeiture entered on 2/19/16.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of.the court.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) community restitution, (6) fine interest, (7) penalties, and (8) costs, including cost of prosecution and court costs.

AO 245C (Mod. D/NJ 12/06) Sheet 1 - Amended Judgment in a Criminal Case

# UNITED STATES DISTRICT COURT  R E C E I V E D
## District of New Jersey

MAR 29 2016

AT 8:30_____M
WILLIAM T. WALSH
CLERK

UNITED STATES OF AMERICA

v.                                          Case Number   3:14-CR-274-01 (MAS)

MARIJAN CVJETICANIN

Defendant.

## AMENDED JUDGMENT IN A CRIMINAL CASE
### (For Offenses Committed On or After November 1, 1987)

**Date of Original Judgment:** 2/23/16
**Reason for Amendment:** Modification of Restitution Order (18 U.S.C. § 3664)

The defendant, MARIJAN CVJETICANIN, was represented by Lorraine Gauli-Rufo, CJA and Thomas Ambrosio, CJA.

The defendant was found guilty on counts 1ss-9ss by a jury verdict on 6/29/15 after a plea of not guilty. All previous counts of the original indictment (counts 1-6) and superseding indictment (counts 1s-12s) are dismissed. Accordingly, the court has adjudicated that the defendant is guilty of the following offense:

| Title & Section | Nature of Offense | Date of Offense | Count Numbers |
|---|---|---|---|
| 18:1341 & 2 | MAIL FRAUD | 9/2010-7/2012 | 1ss-9ss |

As pronounced on 2/18/16, the defendant is sentenced as provided in pages 2 through 7 of this Judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

It is ordered that the defendant shall pay to the United States a special assessment of $900, for counts 1ss-9ss ($100 on each count), which shall be due immediately. Said special assessment shall be made payable to the Clerk, U.S. District Court.

It is further ordered that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this Judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States Attorney of any material change in the defendant's economic circumstances.

Signed this the _28th_ day of March, 2016.

_MICHAEL A. SHIPP_
United States District Judge

11780

AO 245C (Mod. D/NJ 12/06) Sheet 2 - Imprisonment

Judgment – Page 2 of 7

Defendant:     MARIJAN CVJETICANIN
Case Number:   3:14-CR-274-01

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 57 Months on each of counts 1ss through 9ss, to be served concurrently.

The Court makes the following recommendations to the Bureau of Prisons:  Designate a facility for service of this sentence as near as possible to the defendant's home address.

The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons on Date and Time to be determined by the Bureau of Prisons.

## RETURN

I have executed this Judgment as follows:

_____

_____

_____

Defendant delivered on _____ To _____

At _____, with a certified copy of this Judgment.

_____
United States Marshal

By _____
Deputy Marshal

AO 245C (Mod. D/NJ 12/06) Sheet 3 - Supervised Release

Judgment – Page 3 of 7

Defendant:     MARIJAN CVJETICANIN
Case Number:   3:14-CR-274-01

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of 3 years on each of counts 1ss through 9ss, all such terms to run concurrently.

Within 72 hours of release from custody of the Bureau of Prisons, the defendant shall report in person to the Probation Office in the district to which the defendant is released.

While on supervised release, the defendant shall comply with the standard conditions that have been adopted by this court as set forth below.

Based on information presented, the defendant is excused from the mandatory drug testing provision, however, may be requested to submit to drug testing during the period of supervision if the probation officer determines a risk of substance abuse.

If this judgment imposes a fine, special assessment, costs, or restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine, assessments, costs, and restitution that remains unpaid at the commencement of the term of supervised release and shall comply with the following special conditions:

### NEW DEBT RESTRICTIONS

You are prohibited from incurring any new credit charges, opening additional lines of credit, or incurring any new monetary loan, obligation, or debt, by whatever name known, without the approval of the U.S. Probation Office. You shall not encumber or liquidate interest in any assets unless it is in direct service of the fine and/or restitution obligation or otherwise has the expressed approval of the Court.

### SELF-EMPLOYMENT/BUSINESS DISCLOSURE

You shall cooperate with the U.S. Probation Office in the investigation and approval of any position of self-employment, including any independent, entrepreneurial, or freelance employment or business activity. If approved for self-employment, you shall provide the U.S. Probation Office with full disclosure of your self-employment and other business records, including, but not limited to, all of the records identified in the Probation Form 48F (Request for Self Employment Records), or as otherwise requested by the U.S. Probation Office.

AO 245C (Mod. D/NJ 12/06) Sheet 3a - Supervised Release

Judgment – Page 4 of 7

Defendant:    MARIJAN CVJETICANIN
Case Number:  3:14-CR-274-01

## STANDARD CONDITIONS OF SUPERVISED RELEASE

While the defendant is on supervised release pursuant to this Judgment:

1) The defendant shall not commit another federal, state, or local crime during the term of supervision.

2) The defendant shall not illegally possess a controlled substance.

3) If convicted of a felony offense, the defendant shall not possess a firearm or destructive device.

4) The defendant shall not leave the judicial district without the permission of the court or probation officer.

5) The defendant shall report to the probation officer in a manner and frequency directed by the Court or probation officer.

6) The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.

7) The defendant shall support his or her dependents and meet other family responsibilities.

8) The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons.

9) The defendant shall notify the probation officer within seventy-two hours of any change in residence or employment.

10) The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute or administer any narcotic or other controlled substance, or any paraphernalia related to such substances.

11) The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered.

12) The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer.

13) The defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer.

14) The defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer.

15) The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court.

16) As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

(17) You shall cooperate in the collection of DNA as directed by the Probation Officer.

*(This standard condition would apply when the current offense or a prior federal offense is either a felony, any offense under Chapter 109A of Title 18 (i.e., §§ 2241-2248, any crime of violence [as defined in 18 U.S.C. § 16], any attempt or conspiracy to commit the above, an offense under the Uniform Code of Military Justice for which a sentence of confinement of more than one year may be imposed, or any other offense under the Uniform Code that is comparable to a qualifying federal offense);*

(18) Upon request, you shall provide the U.S. Probation Office with full disclosure of your financial records, including co-mingled income, expenses, assets and liabilities, to include yearly income tax returns. With the exception of the financial accounts reported and noted within the presentence report, you are prohibited from maintaining and/or opening any additional individual and/or joint checking, savings, or other financial accounts, for either personal or business purposes, without the knowledge

AO 245C (Mod. D/NJ 12/06) Sheet 3a - Supervised Release

Judgment – Page 5 of 7

Defendant:     MARIJAN CVJETICANIN
Case Number:   3:14-CR-274-01

and approval of the U.S. Probation Office. You shall cooperate with the Probation Officer in the investigation of your financial dealings and shall provide truthful monthly statements of your income. You shall cooperate in the signing of any necessary authorization to release information forms permitting the U.S. Probation Office access to your financial information and records;

(19) As directed by the U.S. Probation Office, you shall participate in and complete any educational, vocational, cognitive or any other enrichment program offered by the U.S. Probation Office or any outside agency or establishment while under supervision;

(20) You shall not operate any motor vehicle without a valid driver's license issued by the State of New Jersey, or in the state in which you are supervised. You shall comply with all motor vehicle laws and ordinances and must report all motor vehicle infractions (including any court appearances) within 72 hours to the U.S. Probation Office;

---

*For Official Use Only - - - U.S. Probation Office*

Upon a finding of a violation of probation or supervised release, I understand that the Court may (1) revoke supervision or (2) extend the term of supervision and/or modify the conditions of supervision.

These conditions have been read to me. I fully understand the conditions, and have been provided a copy of them.

You shall carry out all rules, in addition to the above, as prescribed by the Chief U.S. Probation Officer, or any of his associate Probation Officers.

(Signed) _____

                                Defendant                   Date

_____

          U.S. Probation Officer/Designated Witness        Date

AO 245C (Mod. D/NJ 12/06) Sheet 3a - Supervised Release

Judgment – Page 6 of 7

Defendant:    MARIJAN CVJETICANIN
Case Number:   3:14-CR-274-01

## RESTITUTION

The defendant shall make restitution in the total amount of $1,254,163.36. The Court will waive the interest requirement in this case. Payments should be made payable to the **U.S. Treasury** and mailed to Clerk, U.S.D.C., 402 East State Street, Rm 2020, Trenton, New Jersey 08608, for proportionate distribution to the following victims in the following amounts:

| Name of Payee (Victim) | Amount of Restitution |
|---|---|
| Automatic Data Processing<br>c/o David Turetsky<br>1 ADP Boulevard, MS 325<br>Roseland, NJ 07068 | $482,660 |
| Broadridge Financial Solutions, Inc.<br>c/o Mark DiGidio<br>2 Journal Square Plaza<br>Jersey City, NJ 07306 | $186,317 |
| Liberty International Underwriters<br>c/o Charles S. Levine<br>55 Water Street<br>New York, NY 10041 | $120,186.36 |
| Wildes & Weinberg, P.C.<br>c/o Steven L. Weinberg<br>515 Madison Avenue, 6th Fl.<br>New York, NY 10022 | $465,000 |

The restitution is due immediately.  It is recommended that the Defendant participate in the Bureau of Prisons Inmate Financial Responsibility Program (IFRP).  If Defendant participates in the IFRP, the restitution shall be paid from those funds at a rate equivalent to $25 every 3 months.  In the event the entire restitution is not paid prior to the commencement of supervision, the Defendant shall satisfy the amount due in monthly installments of no less than $1,000, to commence 30 days after release from confinement.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) community restitution, (6) fine interest, (7) penalties, and (8) costs, including cost of prosecution and court costs.

AO 245C (Mod. D/NJ 12/08) Sheet 3a - Supervised Release

Judgment – Page 7 of 7

Defendant:        MARIJAN CVJETICANIN
Case Number:    3:14-CR-274-01

## RESTITUTION AND FORFEITURE

### FORFEITURE

The defendant is ordered to forfeit the following property to the United States:

Please see judgment and order of forfeiture entered on 2/19/16.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) community restitution, (6) fine interest, (7) penalties, and (8) costs, including cost of prosecution and court costs.

AO 245B (Mod. D/NJ 12/06) Sheet 1 – Judgment in a Criminal Case

# UNITED STATES DISTRICT COURT
## District of New Jersey

UNITED STATES OF AMERICA

    v.

                                       Case Number    3:14-CR-274-01 (MAS)

MARIJAN CVJETICANIN

    Defendant.

## JUDGMENT IN A CRIMINAL CASE
### (For Offenses Committed On or After November 1, 1987)

The defendant, MARIJAN CVJETICANIN, was represented by Lorraine Gauli-Rufo, CJA and Thomas Ambrosio, CJA.

The defendant was found guilty on counts 1ss-9ss by a jury verdict on 6/29/15 after a plea of not guilty. All previous counts of the original indictment (counts 1-6) and superseding indictment (counts 1s-12s) are dismissed. Accordingly, the court has adjudicated that the defendant is guilty of the following offense:

| Title & Section | Nature of Offense | Date of Offense | Count Numbers |
|---|---|---|---|
| 18:1341& 2 | MAIL FRAUD | 9/2010-7/2012 | 1ss-9ss |

As pronounced on 2/18/16, the defendant is sentenced as provided in pages 2 through 7 of this Judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

It is ordered that the defendant shall pay to the United States a special assessment of $900, for counts 1-9 ($100 on each count), which shall be due immediately. Said special assessment shall be made payable to the Clerk, U.S. District Court.

It is further ordered that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this Judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States Attorney of any material change in the defendant's economic circumstances.

Signed this the __23rd__ day of February, 2016.

MICHAEL A. SHIPP
United States District Judge

RECEIVED

FEB 2 3 2016

AT 8:30_____M
WILLIAM T. WALSH
CLERK

11780

United States District Court
District of New Jersey

UNITED STATED OF AMERICA     :
                           :
        v.            .      :     CRIM. NO. 14-274
                           :
Marijan Cvjeticanin

## **NOTICE OF APPEAL**

Notice is hereby given that Marijan Cvjeticanin, defendant in the above –named case, appeals to the United States Court of Appeals for the Third Circuit from a Judgment in a Criminal Case filed in this matter on February 24, 2016.

Respectfully submitted,

/s/
Lorraine Gauli-Rufo
Attorney for Marijan Cvjeticanin

Date: February 27, 2016

UNITED STATES DISTRICT COURT

FOR DISTRICT OF NEW JERSEY

UNITED STATES

RECEIVED

AUG - 1 2016

V.

AT 8:30_____M
WILLIAM T. WALSH
CLERK

Index No. 14-274 (MAS)

MARIJAN CVJETICANIN

MOTION TO STRIKE GOVERNMENT'S RESPONSE

AS UNTIMELY

The movant herein, Mr. Marijan Cvjeticanin, filed his Motion for Bail Pending Appeal pursuant

to the provisions of 18 U.S.C. 3143(b) on July 8, 2016. Both the Honorable Court and the

opposing party (Office of the United States Attorney in Newark, New Jersey) were properly

served.

No lack of proper service has been alleged. No courtesy motion for the enlargement of time to

file response has been filed or received from the Government. Government's submission is

untimely pursuant to the Rules 45 (a) and (b) and Rule 47 of the Federal Rules of Civil

Procedure, Local Civ. R. 6.1(b), L.Civ.R. 101.1(c), 7.1, 37.1, and 78.1 of this Court in addition to

Rule 27 (a) (3) - Response time, of the Federal Rules of Appellate Procedure governing both

civil and criminal procedure submissions.

The Government submitted its reply untimely on July 26, 2016.

In this respect, we hereby move the Honorable Court to strike the Government's opposition as untimely and consider the defendant's motion as unopposed. In the alternative, if considered timely, please accept our enclosed reply to the Government's opposition brief.

Dated: July 29, 2016

MARIJAN CVJETICANIN

UNITED STATES DISTRICT COURT

FOR NEW JERSEY


UNITED STATES


V.                                                    Case No.  14 - 274 ( MAS )


MARIJAN CVJETICANIN


CERTIFICATE OF SERVICE


This is to certify that I, Iva Cvjeticanin, served the foregoing document on the United States by

causing a true copy of the document to be mailed by Federal Express overnight mail to the Office

of the United States Attorney located at 970 Broad Street, Newark, New Jersey 07102.


I declare under the penalty of perjury, that the foregoing is true and correct.


Respectfully submitted,

Date: July 30, 2016

_____
Iva Cvjeticanin

UNITED STATES DISTRICT COURT

FOR NEW JERSEY

RECEIVED

AUG - 1 2016

AT 8:30_____M
WILLIAM T. WALSH
CLERK

UNITED STATES

V.                                                    Case No. 14 - 274 ( MAS )

MARIJAN CVJETICANIN

DEFENDANT'S REPLY TO THE GOVERNMENT'S OPPOSITION

TO THE MOTION FOR RELEASE ON BAIL PENDING APPEAL

The timeliness of the Government's response was addressed in a separate Motion to

Strike. In addition to being untimely, the Government's response is both factually incorrect and

legally erroneous. This is addressed in the brief below.

The Government first contends that the defendant should be denied bail pending appeal is

he is allegedly a "flight risk". Government derives such a conclusion based on the defendant's

repeated filings with the Court, which the Government characterizes as "misleading". The

Government is forgetting that it is explicitly a constitutional right of the citizens, under the First

Amendment to the Constitution of the United States, to petition their government for a redress of

grievances. As the Government is fully aware, the defendant is a U.S. citizen, too. The

perception and motivation for the grievance filing belongs to the citizens, not the Government.

However, if either the Government, or the Honorable Court, consider that any of the defendant's

1

filings with the court, or other federal government agencies, were in any way "misleading", we call upon them to schedule an evidentiary hearing to properly determine both factual and legal issues regarding the defendant's "repeated" grievance filings. This is even more so in the light of the fact that the Office of the U.S. Court Administrator has opened a formal investigation over at least two employees of the Court's Pretrial Services (Daniel Milne and Christina Bourque) for their lies and misrepresentations to the Court regarding the defendant's previous bail actions and revocation. (Enclosed please find letter from the Office of Court Administration in that respect). Defendant is also awaiting further replies from the Federal Bureau of Investigations (FBI), Office of the Inspector General of the United States Department of Justice and the Executive Office of U.S. Attorneys. Moreover, if nothing else, all the "repeated filings" clearly evidence that the defendant is not a flight risk as he is fighting and litigating his case through numerous court and agency submissions and intends to do so until fully exonerated and proven innocent. It is inconceivable that a person intending to flee the jurisdiction of the court would have filed all of the "repeated" submissions as admitted by the Government just to flee or disappear. Therefore the Government's claim in that respect is baseless. In addition, as the Honorable Court is aware of, all of the defendant's filings with this court have been so far through his attorney, Ms. Lorraine Gauli-Rufo, with the current filing being the first and only pro se filing with the Court, making the Government's contention that defendant lacks the credibility due to the repeated filings with the Court clearly erroneous.

Next, the Government claims that defendant is a flight risk due to his "substantial" sentence (57 months total, minus 4 months already served). While defendant is truly delighted by

2

the Government's sudden and unexpected concern for the substantiality of his unwarranted prison sentence, particularly given the non-violent, white collar, type of crime committed, if any crime was indeed committed, defendant disagrees with the Government's characterization of the sentence and the prediction of his future action and anticipation of his future behavior on that ground. The sentence imposed on the defendant is clearly contrary to the U.S. Sentencing Guidelines as it is "greater than necessary", as well as both procedurally and substantively unreasonable, and even if it somehow withstands defendant's direct appeal to the circuit court and numerous post conviction collateral attacks, which is highly unlikely, even after all of these, after the award of the U.S. Bureau of Prison "good time conduct" and other sentence relief programs established by President Obama ("Second Chance" etc) and other Bureau of Prisons programs, the maximum remaining sentence which defendant faces is about 2-3 years in the federal low or minimum security (camp) facility. This is hardly an incentive for becoming a fugitive, particularly given all other circumstances of the case, as described below.

As for the defendant's foreign (Croatian) passport, it expired on May 28, 2012, much before any arrest or investigation in this matter. Defendant never filed for the new Croatian passport or the extension of the same. Defendant has not visited Croatia for well over six (6) years, and has not stayed in Croatia for more than a brief two (2) weeks vacation stops for well over fifteen (15) years, and actually visited Bahamas and Florida more often than Croatia for both vacation and business purposes. Once again no indication of ties to Croatia or a propensity to flee there. Moreover, as stated in the Sentencing Memorandum, defendant is married and his wife Kathy is a U.S. citizen and so are both of his daughters. Defendant has been a long term

resident of New York for well over twenty five (25) years with no interruption in residence, and in his career practically only worked in New York. His U.S. citizen wife is employed and currently works for Macy's on Long Island, his eldest daughter Iva is pursuing her studies at New York University ( with hopes of being able to continue given current circumstances and burdens placed on her ), and his younger daughter Kristina is a high school freshmen at Dominican Academy in Manhattan, New York. Therefore, the defendant has strong family ties and and the possibility of defendant fleeing using expired Croatian passport and leaving his family behind in New York over a relatively weak and highly problematic short prison sentence is not a very credible one. Even if the sentence somehow survives Direct Appeal process at the Circuit Court, defendant will be soon busy filing new Rule 33 Motion (new evidence discovery), Motion for Grand Jury Transcripts, Proceedings and Composition, Petition for Rehearing En Banc, then Certiorari in the Supreme Court, then 28 USC Section 2255 Motion to Vacate, and 2241 Habeas Corpus Motions, then Rule 59e and Rule 60 motions, etc. His prison sentence may not be long enough to exhaust all the post conviction remedies and this is in addition to filing a new wave of complaints against all persons involved in this matter before various state and federal government agencies and bar associations in both New York and New Jersey. Therefore, defendant hardly qualifies for a "flight risk" although some people would surely like that to happen.

The Government's further statement that defendant has a reason to flee as he has no assets is equally untrue and unsupported by the facts. While it is true that defendant's income and assets have certainly been greatly diminished in the last few years due to the unwarranted and selective

4

prosecution in this matter, defendant and his spouse still own a primary residence (two story 3,500 sq. feet Brookfield colonial house with gazebo, inground swimming pool, finished basement used as a law library and playground, major deck renovations, over half acre of land, etc), located on the north shore of Long Island with a market value in excess of $700,000 and also own a brand new one bedroom investment condominium located at prime Queens real estate area at Broadway, Astoria, New York, with substantial equity and a market value of over $400,000, all of which can hardly be mistaken for "no asset" circumstances stated in the Government's submission. Moreover, if the Government even precursory reviewed the defendant's bail motion submission, it would have discovered that the defendant, under the proposed terms of the bail pending appeal, proposed and offered the entire Broadway, Astoria, investment condominium for his bail security purposes (please see attached proposed Order of Conditions of Release), which once again makes any notion of defendant's motivation to flee the Court's jurisdiction without any merit.

Further, the defendant is at a loss as to how to explain the Government's claim of a connection between him (temporarily) losing his license to practice law in New York with any potential flight, presumably, abroad. First, whether defendant intends to practice law at all after this onerous process is somehow over has yet to be determined. Second and more importantly, it is actually in the great State of New Jersey where it takes only five (5) years waiting for the attorney license reinstatement following a conviction, closely followed by New York and other states where it takes only a bit longer seven (7) years of waiting for reinstatement. Hardly a reason to flee abroad or even to another state. In addition, since defendant almost exclusively

5

practices federal (immigration) law, he can be licensed in any of the fifty states of the United States in order to be able to practice federal (immigration) law, and some of the states, even after attorney convictions, have very relaxed requirements for admissions to the bar, so once again hardly any reason to flee anywhere, and particularly to flee abroad.

As for the defendant allegedly being the danger to the community, the Government's position that the defendant lies and cheats whenever he opposes or disagrees with the Government shows little respect for our Anglo-Saxon adversarial system of justice. Moreover, if the Government's statements were nearly true, it is unclear as to how was it possible that the defendant's license to practice law was clean and clear all of these years and even for another 8 months after his mail fraud conviction. Immigration practice is by definition a high volume practice. No private immigration law firm can survive without having a high, huge, volume and high turnover of clients. If the Government's allegations had any credibility, at least some of the defendant's hundreds, if not thousands, of clients would have filed meritorious complaints online and with the New York State Bar authorities and defendant would have had at least some disciplinary record (at least some reprimand or public caution/violation or some fines imposed). However, until the Government agents decided to take a "James Bond style action" and secretly remove the key evidence from this Court's courtroom and on that basis procure a wrongful mail fraud conviction against the defendant, his license to practice was "squeaky clean" which clearly evidences that the Government's statements are once again without merit. In addition, prior to his disbarment the defendant served as a pro bono attorney for his large church and community in Manhattan, worked for the United Nations at the UN Headquarters in New York, was Co-Chair

6

of the Immigration Committee of the Suffolk County Bar Association, Co-Chair of the

Committee on Unauthorized Practice of Law of the New York Chapter of the American

Immigration Lawyers Association (AILA), member of the American Bar Association Counsel

for Central and Eastern Europe (Presidential appointment) and was a member of the Empire

State Counsel (appointment by the President of the New York State Bar Association), that would

be too many people fooled even for this defendant. It is obvious that only the Government,

motivated by its wrongful "victory" in this matter, can see the defendant in such a wrong light.


This Court should approve defendant's bail motion with the conditions as attached, and

soundly reject the Government's argument particularly in view of the Government's position that

"no combination of bail conditions" fashioned by this court can ensure the safety of the public

will be respected by the defendant, inter alia, due to his March 2016 bail revocation. Prior to the

bail revocation, the Defendant had no prior criminal record, was released on bail with no incident

or violation for well over two years. This court revoked defendant's bail just barely two weeks

prior to his self-surrender date to a low security federal institution in Danbury, CT, only due to

the false and fraudulent affidavit and testimonies of the Court's pretrial services officers,

supported by and with the full knowledge of the Government. Like any other point raised in his

affidavit, defendant is fully ready to argue and litigate the unfortunate events leading to the

revocation of his bail in March 2016. However, since the event is a subject of an open

investigation, defendant urges the Honorable Court to disregard bail revocation events and set a

new bail order with conditions legally clear for both the defendant and pretrial services, as

attached herewith.

7

Government also contends that "nothing changed" since the March 2016 bail revocation. However, defendant respectfully submits to the Court that since his bail revocation he has been incarcerated in a low security Bureau of Prisons institution for over four (4) months, with no single complaint or violation proceedings instituted against him by the U.S. Bureau of Prisons, once again clearly undermining Government's theory of defendant being and "unrepentant fraudster" or a danger to the community.

Finally, after Government recited all the facts of this case completely unsupported by the record, the Government then turned to erroneous legal analysis and conclusions.

As per Federal Appellate Procedure, the appellate (circuit) court can only review the conviction and the sentence based on the records of the case (records of the trial proceedings). The appellate court cannot review new evidence or documents. New evidence or new discoveries can be submitted for example in new *Rule 33 motions or Section 2255 motions*, but not on a direct appeal and the Government should know that. Therefore, defendant's direct appeal is based on the records of the case and his instant Motion for Bail Pending Appeal presented appellate issues, as required by the law. Any different submission would have represented a violation of the appellate procedure and the violation of the Bail Reform Act quoted by the Government. However, the Government, obviously unaware of these basic appellate rules, now complains to this Court that the defendant has presented previously submitted trial and post trial motions and documents, already decided by the district court and that *"nothing has changed since the Court*

8

*ruled on these documents.*" Given the rules of the appellate procedure the defendant legally should not have, and could not have, presented anything "new" on a direct appeal. The Government should know better.

However, defendant presented at least ten (10) very serious and substantially close appellate legal issues and arguments, including at least three structural errors requiring automatic reversal of the conviction and the sentence in this matter and numerous reversible constitutional non harmless trial errors. The Government did not address any of them. Not a single appellate issue raised by the defendant was addressed in the Government's response - even if we assume that the Government already discussed the issue of the new trial motion due to their egregious misconduct in removing key evidence from the courtroom (which is and has been defendant's number one appellate issue), the Government did not comment on any of the additional issues raised in the bail pending appeal motion - <u>Brady violations I and II</u>, weight of evidence and evidence of mailing issues, venue issues, selective prosecution claim, Speedy Trial Act violations, Batson challenge, court's evidentiary rulings including Skilling error, etc. Not a single word from the Government, not even a superficial denial. In a typical federal civil and criminal litigation, this would be regarded as an admission by the opposing party. Much to the defendant's surprise, the only case mentioned by the Government, presumably in opposition to the defendant's motion for release pending appeal, was the case where bail pending appeal was granted in the murder case (!), which if nothing else supports and underscores both defendant's positions - (1) that he definitely qualifies for the bail pending appeal with his mail fraud conviction and appellate issues raised, and (2) that the law may be unconstitutional anyway. See

U.S. v. Messerlian, *793 F.2d 94, 95-96 (3d Cir 1986)* quoted by the Government in which bail pending appeal was approved despite the bloody murder committed in that matter. Defendant's nonviolent, white collar mail fraud pales in comparison to the facts of that case quoted by the Government.

Similarly, the Government also did not address, or did not even read, defendant's Motion items 2) and 3) - alternative relief rulings requested if the honorable court does not consider the grant of bail pending appeal as a possibility. Defendant kindly asked the Honorable Court, if no bail pending appeal is possible under the current laws and regulations, to, under (2) declare Section 3143 of the 18 U.S.C. facially invalid and unconstitutional, and/or, in the alternative, under (3) to sever the provision of Section 3143( b)( 2) of the 18 U.S.C., if possible, and declare only that paragraph of the 3143 Section as severable and unconstitutional and grant bail pending appeal to the defendant under the previous case law.

None of these arguments have been addressed by the Government and we deem them admitted for this motion purposes.

By virtue of the foregoing, the defendant once again respectfully requests that the court grants him bail pending appeal as per conditions stated in the motion without a hearing. If the court considers hearing necessary, defendant would appreciate scheduling the hearing as soon as permitted by the Court's calendar and ordering U.S. Bureau of Prisons to release the defendant for court hearing purposes.

We once again thank the Honorable Court for its time and kind consideration of this matter.

Date : July 27, 2016

Marijan Cvjeticanin





JAMES C. DUFF
Director

JILL C. SAYENGA
Deputy Director

LAURA C. MINOR
Associate Director
Department of Program Services

MATTHEW G. ROWLAND
Chief
Probation and Pretrial Services Office

### ADMINISTRATIVE OFFICE OF THE
### UNITED STATES COURTS

WASHINGTON, D.C. 20544

July 18, 2016

Ms. Iva Cvjeticanin
299 East 11th Street, Apt. 3A
New York, NY 10003

Dear Ms. Cvjeticanin:

I am writing in response to your complaint dated May 2, 2016, to the United States Department of Justice (DOJ) concerning an alleged violation of the civil rights of your father, Marijan Cvjeticanin, by U.S. Pretrial Services Officer Daniel Milne (District of New Jersey) and U.S. Pretrial Services Officer Christina Bourque (Eastern District of New York). Lacking jurisdiction over this matter, the DOJ's Office of the Inspector General forwarded the complaint to our office on July 5, 2016.

We appreciate your coming forward with concerns as our office strives to provide independent and evaluative oversight of all federal probation office operations. The information you provided will be investigated thoroughly, and the appropriate actions will be taken if your claims are substantiated. Thanks again for playing such a critical role in our effort to ensure the federal probation system complies with federal judiciary policies and procedures.

Sincerely,

Robert Fino
Program Administrator (Acting)
Program Oversight Branch

A TRADITION OF SERVICE TO THE FEDERAL JUDICIARY



**U.S. Department of Justice**
*United States Attorney*
*District of New Jersey*

---

*Francisco J. Navarro*
*Assistant United States Attorney*

*970 Broad Street, Suite 700*
*Newark, New Jersey 07102*

*(973) 645-2515*

July 26, 2016

The Honorable Michael A. Shipp
United States District Judge
Clarkson S. Fisher Federal Building & U.S. Courthouse
402 East State Street
Newark, New Jersey  08608

Re:  <u>United States v. Marijan Cvjeticanin</u>
No. 14-cr-274 (MAS)

Dear Judge Shipp:

The Government submits this letter brief in response to the Defendant's motion for bail pending appeal.  The Defendant poses a flight risk and a danger to the community and his motion does not raise any substantial questions of law or fact likely to result in relief for the Defendant.  As such, the motion should be denied.

The Bail Reform Act created a presumption in favor of post-conviction detention.  A defendant convicted of a federal offense (in this case nine federal offenses) and sentenced to a term of imprisonment (in this case 57 months) "shall" be detained pending appeal absent certain circumstances.  18 U.S.C. § 3143(b)(1).  To be released on bail, a defendant must establish, "by clear and convincing evidence that [he] is not a flight risk or pose a danger to the safety of any other person or the community."  Additionally, the defendant must show "that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in" reversal, a new trial, a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.  <u>Id</u>.  The defendant bears the burden of establishing these factors.  <u>United States v. Messerlian</u>, 793 F.2d 94, 95-96 (3d Cir. 1986).

In this case, the Defendant cannot meet his burden under any of the relevant provisions of the Bail Reform Act.  First, the Defendant cannot establish by clear and convincing evidence that he is not a flight risk.  The Defendant has shown through his repeated, misleading filings with this Court that he carries no credibility.  The Defendant's lack of credibility, his

substantial sentence, and the fact that he and his wife are dual citizens of Croatia with almost no assets in the United States, creates a substantial risk of flight. Moreover, the Defendant has an extra incentive to flee to Croatia because he has been disbarred in New York and will likely never again be able to practice law in the United States. This risk of flight is sufficient grounds alone to deny the Defendant's motion.

Second, the Defendant also poses a substantial danger to the community because he has proven himself to be an unrepentant fraudster who will continue to lie, cheat, and steal if he is released. The Defendant has proven by his actions that no combination of bail conditions fashioned by this Court to ensure the safety of the public will be respected. Indeed, the Defendant's repeated disregard for the Court's orders resulted in the revocation of his bail in March 2016. Nothing has changed since the Defendant's bail was revoked and his bail request should also be denied on these grounds alone.

Finally, the Defendant's motion should be denied because his appeal does not raise a substantial issue of law or facts likely to result in reversal, an order for a new trial, or a sentence that does not include a term of imprisonment. The Defendant raised all of his likely arguments on appeal in his post-trial motions to set aside the verdict and for a new trial. The Court denied those motions in total and further noted that the Defendant's motions were "based on Defendant's mischaracterization of the facts." (ECF. No. 93 at 1). Nothing has changed since the Court issued its ruling, and the Defendant's request to be released while his appeal is heard should be denied on these grounds as well.

Respectfully Submitted,

PAUL J. FISHMAN
United States Attorney

BY:  _____
Francisco J. Navarro
Dennis C. Carletta
Assistant United States Attorneys

cc:    Lorraine Gauli Rufo, Esq.
       Thomas Ambrosio, Esq.

- 2 -

UNITED STATES DISTRICT COURT FOR NEW JERSEY

RECEIVED

AUG 25 2016

AT 8:30_____M
WILLIAM T. WALSH
CLERK

UNITED STATES

V.                Case No. 3:14-cr-00274-MAS

MARIJAN CVJETICANIN

### MOTION TO EXPEDITE

PREVIOUSLY FILED MOTION FOR BAIL PENDING APPEAL IN THE ABOVE
CAPTIONED MATTER

The movant herein, Mr. Marijan Cvjeticanin, filed pro se
Motion for Bail Pending Appeal with this court on July 8,
2016. The Government responded and the movant replied.
Movant's reply was accepted and docketed by the Clerk of the
Court over three weeks ago.

Pursuant to the provisions set forth at Rule 50(a) of the
Federal Rules of Criminal Procedure, preference should be
given to criminal proceedings as far as practicable. Same is
prescribed by the Local Rules of this Court.

Since the movant is currently incarcerated at the Federal
Correctional Institution and his personal liberty interests
are at stake, the movant is kindly requesting the Honorable
Court to expedite the decision in this matter.

Very truly yours,

Marijan Cvjeticanin

#65437050

FCI Danbury

Federal Correctional Institution

Route 37

Danbury, CT 06811

MARIJAN CVJETICANIN, #65437-050

FCI Danbury, Federal Correctional Institution,

Route 37, Danbury, CT 06811

CERTIFICATE OF SERVICE

In accordance with the Local Rules of the Court, I hereby

certify that on JULY 23, 2016 I served the foregoing

document on the United States by causing a true copy of the

document to be mailed by first class mail to the United States

Attorney, 970 Broad Street, 7th Fl, Newark, New Jersey 07102.

I declare under the penalty of perjury, that the foregoing is

true and correct

Respectfully submitted,

Marijan Cvjeticanin

JULY 23, 2016

Date



MARIJAN CVJETICANIN
# 65437-050
FEDERAL CORRECTIONAL INSTITUTION
ROUTE 37
DANBURY, CT 06811

<>65437-050<>
Federal District Court Nj
402 E State ST
Trenton, NJ 08608
United States

08606-150705

Mr. MARIJAN CVJETICANIN

_____

#65437-050, FCI DANBURY, FEDERAL CORRECTIONAL INSTITUTION,

ROUTE 37, DANBURY, CT 06811


September 20, 2016


The Honorable

Jerome B. Simandle

Chief Judge, U.S. District

Court New Jersey

4th and Cooper Street

Camden, NJ 08101


RE: U.S. v. MARIJAN CVJETICANIN

    Crim No. 14-CR-274 (MAS)


Dear Judge Simandle:


I hope that this letter finds you well.


I am New York immigration attorney convicted last year in
District Court in Trenton, New Jersey, of mail fraud in
connection with some immigration advertising matters. Trial
court judge was The Honorable Michael A. Shipp. While the
whole process was heavily infected by numerous errors and
mistakes, even such basic issues like jury selection and
venue, the main reason for my conviction was the prosecutorial
"dirty game" and gross misconduct in which the Government

secretly removed the key evidence (my published newspaper
advertisements) from the Judge Shipp's courtroom making them
unavailable for jury deliberations (of course, all in
violation of the Local Court Rule 79.1 Custody of Original
Papers, Records and Exhibits),etc. Timely appeal has been
filed, and it appears that the Circuit Court will schedule
oral argument in this matter in December 2016.

Given the fact that I am a non-violent offender with a very
strong appellate case (full of "substantive issues of law and
facts"), on July 8, 2016, I properly filed a pro se motion for
bail pending appeal with the District Court in Trenton, New
Jersey. Government responded and I timely filed my final reply
on August 1, 2016. Ever since then the motion has been pending
with the District Court in Trenton, and neither a hearing has
been scheduled, nor any Court motion grant/denial notices have
been received. None. Total silence.

On August 18, 2016, I filed a Motion to Expedite my bail
motion, quoting all necessary pertinent Federal and Local
Court Regulations, particularly the ones mandating priority
scheduling for criminal law cases, but all to no avail.

Despite the fact that the matter involves a critical issue of
individual freedom and liberty, the matter has been
languishing with the District Court in Trenton, New Jersey
without been scheduled or acted upon in any way.
Moreover, given the fact that the entire appellate process
lasts about ten (10) months, I also note that the appellate

bail motions pending for over three months, or even longer, simply defy the logic of the law and the Congressional intent in adopting the provisions of bail pending appeal, 18 USC 3143 (b)(2). District Court's silence and inaction, de facto invalidates the act of Congress without declaring it invalid.

In this respect, I kindly request and indeed desperately beg your office to intervene with the Clerk of the District Court in Trenton in order for this mater to be processed and/or scheduled for the hearing, should the hearing actually be necessary at all. If, for whatever reason The Honorable Judge Shipp, who presided over my trial, is not available, given the characteristics of the case, I believe that any district court magistrate judge can easily resolve and process this matter.

I thank you very much for your time and consideration.

Sincerely,

Marijan Cvjeticanin

#65437-050

Federal Correctional Institution

Route 37

Danbury, CT 06811

UNITED STATES DISTRICT COURT FOR NEW JERSEY

-------------------------------------------------------------------

UNITED STATES

V.

MARIJAN CVJETICANIN

(Crim No. 14-cr-274 (MAS))                     MOTION FOR BAIL PENDING APPEAL
                                               PURSUANT TO 18 U.S.C. 3143(b)

-----------------------------------------------------------------------------------------

AFFIDAVIT OF THE MOVANT IN SUPPORT OF THE BAIL MOTION

I, Marijan Cvjeticanin, currently detained at Federal Correctional Institution in Danbury,
Connecticut, in support of my Motion for Bail Pending Appeal, filed herewith with the United
States District Court for New Jersey pursuant to the provisions set forth at *18 U.S.C. 3143(b)*,
hereby depose and state:

THAT, I am 52 years of age, U.S. citizen, former resident of Saint James, Long Island, New
York, married, father of two daughters;

THAT, I am a former immigration and international law attorney in New York with over twenty
five (25) years of both domestic and international legal experience. I hold a European Law
Degree, a U.S. Master's Degree in International Relations and International Economics from
Johns Hopkins University, completed all necessary American legal coursework at the New York
Law School and successfully passed the New York State Bar Exam. I was licensed in the State of
New York, with a completely unblemished record of practice, and no disciplinary, or let alone a
criminal record, prior to the current mail fraud conviction in the Federal District Court for New
Jersey *(case number as above Crim No. 14-cr-274 (MAS))*;

1

THAT, I continue to maintain my innocence and empathically claim that the Judgment of Conviction for mail fraud in this matter was procured, only and only, due to the combination of gross prosecutorial misconduct, false trial testimonies by the government's crown witness, namely blatant lies by my previous employer Steven Weinberg, Esq, a partner of Wildes & Weinberg in New York (please see **Exhibit A**). More detailed list of substantial issues of law and fact is provided in the Memorandum of Law enclosed with this Motion. The Judgment of Conviction issued in this matter is currently subject of an appeal to the U.S. Court of Appeals for the Third Circuit. Based on the newly discovered substantial exculpatory evidence and other legal reasons, I am also in the process of preparing new FRCP Rule 33 Motion and other post-conviction collateral attacks on the Judgment of Conviction;

THAT, pursuant to my arrest on the mail fraud charges on May 29, 2013, I was released on a pretrial bail, the terms of which certainly limited my freedom of movement & liberty interests, but were also quite easy, logical and self-explanatory. Whenever limits of my freedom of movement were involved regarding any necessary business trips, the Court's Pretrial Services always approved my travel outside New York/New Jersey areas, such as my business trips to Chicago, Illinois, and others. I always promptly returned to the jurisdiction of the Court and was present at, and eagerly attended, all Court hearings in my matter and I intend to continue to do so until fully exonerated;

THAT, during, and after, the arrest I fully cooperated with the Government and voluntarily provided both numerous business and legal documents and extensive personal statements to the Government. Strongly believing in, and fully maintaining my innocence, before even being informed of the true nature of the charges pending against me, I voluntarily provided over 3,000 pages of various legal, advertising, tax, banking, corporate and other documents to the Government and fully cooperated with the Government in any other respect in this matter. This was also confirmed by the Government witnesses (agents) during their trial testimonies;

THAT, the Government's affidavit executed and submitted for the purposes of the issuance of the arrest warrant in my case by the Magistrate Judge in Newark, New Jersey, was false, one-sided, devoid of any (then existing) exculpatory evidence, highly selective and inconsistent with the

2

statutory definition of a mail fraud, as well as full of substantial material omissions, which if were included, would have precluded any reasonably jurist from finding even a wrongdoing and let alone a probable cause for warrant issuance on that legal basis;

THAT, given the relatively easy terms of the initial pretrial bail, acting upon the advice of the Assistant Federal Public Defender in Newark, New Jersey, Ms. Karen Gillen, Esq, who simply, unannounced and uncalled for, showed up in the courtroom at the time when I was virtually in my pajamas brought for my initial arraignment to the District Court building in Newark, New Jersey, I agreed to waive my constitutional and statutory right to have a probable cause hearing regarding the arrest warrant and the underlying materially false affidavit which was used as a legal basis for my arrest. Ms. Gillen incorrectly advised me and provided ineffective assistance of counsel, in telling me that as a first time offender my penalty exposure to a mail fraud crime was between 0-6 months of imprisonment, or most probably just a sentence of probation, and even alluded that somehow there was a trade off between easier Pretrial bail conditions and the waiver of probable cause hearing in my matter. Since, I was not a specialist in Federal Criminal Procedure, and since the terms of the initial bail order appeared fairly liberal to me, I naively trusted Ms. Gillen's advice and waived my right to a probable cause hearing. Given the amount of exculpatory documentation I voluntarily provided to the Government on the day of my arrest (over 3,000 pages of legal, business, advertising, banking and other documents stored in at least 3 large plastic black and yellow containers, for which the Government never issued a receipt to me), I could have ended the process right there and had all the charges and the arrest warrant dismissed. Enclosed please find **Exhibit B** with Ms. Gillen's false and ineffective written advice to me on the day of my initial arraignment on mail fraud charges in Newark, New Jersey on May 29, 2013. During the initial arraignment the Government did not make any claim that I in any way represented a danger to the safety of others or to the community. As mentioned above, based on the federal charges filed against me, New York State Bar licensing authorities declined to proceed against me in any respect;

THAT, one year after the filing of the initial charges in May 2014, federal Grand Jury returned the indictment against me consisting solely of previous mail fraud charges, and I had a second arraignment in this matter, this time at Federal District Court in Trenton, New Jersey. At that

time the Government once again did not claim that I was a danger to the safety of others, or to the community, except that they tried to limit my New York license to practice law, which was soundly rejected by the Magistrate Judge during the hearing. Once again, based now on indictment in this matter against me, New York State Bar licensing authorities declined to proceed against me in any respect;

THAT, my trial was held in June 2015, fully two (2) years after the arrest and the filing of the initial charges, and for the entire period of two (2) years between the arrest in May 2013 and the trial date in June 2015, I was out free on bail without a single incident or bail violation reported. While continuing to maintain my innocence, I was always treated the employees of the Court's Pretrial Services with courtesy and gladly and promptly responded to all of their questions and inquiries, provided required documentation regarding my trips, successfully cleared and past all unannounced (surprise) drug tests, and fully cooperated with Pretrial Services in any respect. Thanks to my full cooperation and in recognition of the fact that I obviously did not pose any danger to the safety of the others and to the community, in 2014, the Court's Pretrial Services reduced my mandatory in-office reporting from two times per month to only once per month.

THAT, despite the fact that the Government, and some private individuals connected to my previous employer, posted online and advertised some heavily defamatory, libelous, statements and documents against me, including postings on the first page of GOOGLE, which was seen, and could have been seen, by all of my previous, then current and potential clients, during the entire period from the time of the arrest in May 2013 to the trial in June 2015, my license to practice law in the State of New York remained clean and without even a disciplinary record. Moreover, based on the case documentation which the Government provided to the New York State Bar licensing authorities, as well as my answer and reply, my disciplinary record remained clean even after the June 2015 conviction, as the Bar Association licensing authority in New York declined to proceed even with a minimal measure of temporary suspension against me (the so called immediate suspension which could have been imposed at the time when the initial charges were filed against me in May 2013). In this respect, enclosed please find **Exhibit C**, evidencing lack of any disciplinary record against me in February 2016, over 6 months after the conviction in this matter.

THAT, following the jury conviction in June 2015, U.S. District Court Judge Michael A. Shipp denied the request from the Government for my immediate remand to custody and amended the terms of my previous bail order by adding some additional restrictions on my movement and employment. Since the entire amount of loss that the government submitted and proved to the jury was less than $29,000, I was under the impression that I was reasonable in my belief that I will have a quick and easy sentencing hearing, so I grudgingly accepted the terms of my new post-trial bail order ordered as amended by the Honorable Judge Shipp and did not file any interlocutory appeals or emergency motions from that decision to the Circuit Court;

THAT, unfortunately, due to the submission of the patently false affidavit and some additional documents by my previous employer Wildes & Weinberg for the purposes of the sentencing hearing (please see **Exhibit D** - a copy of the insurance fraud criminal complaint I filed against my previous employer in both New Jersey and New York), instead of a quick and easy hearing, federal District Court held no less than 3 separate sentencing hearings in this matter spanning from January 2016 to the end of March 2016, and it wasn't until April 5, 2016 that I was designated and supposed to self- surrender to my current federal correctional institution;

THAT, despite the fact that I, as a defendant, lived and worked exclusively in New York, had offices in New York, and if there was any crime committed it was committed only in New York (lex locus delicti), due to a combination of unconstitutional federal jurisdictional statutes regarding special mail fraud jurisdiction, and unproven mailings as a part of the mail fraud in this matter, which will all be addressed as substantial issues of law and fact below, both the prosecution and the place of trial took place in New Jersey. To make it even worse, while the initial charges were filed at the U.S. District Court in Newark, which is at least relatively close to and well connected to the New York's Penn Station, for the trial venue purposes I was dragged into the District Court's location in Trenton, NJ, which is closer to Pennsylvania than to New York, and is over 4 hours away from my residence on the north shore of Long Island, often driving through busy tunnel/bridge traffic in both New York and New Jersey. During the pretrial motions the defense objected to the venue, but the Court ruled in favor of the existing location in Trenton, NJ. Since the venue was unfortunately determined to be in New Jersey, it was a fairly

5

logical step that my defense counsel was also located in New Jersey, more familiar with the courts and local court rules and procedures in New Jersey. However, this also created a significant logistical problem for me as a defendant, as my defense counsel's office is located in Verona, New Jersey (approximately East Central New Jersey), which depending on the bridge/tunnel traffic is also approximately 3-4 hours driving distance from my New York residence. Both the location of the court and the location of my attorney's office played important role in this matter, as further detailed below;

THAT, at the time of the commencement of the sentencing hearings in January 2016, I was still free on post trial bail, and at that point had been free on bail for over two and half years (over 30 months). I had no reported violations, incidents, or any bail related problems whatsoever. However, upon my innocent and very limited disclosure to the Court's Pretrial Services that over the next several months I would need more often to travel to New Jersey and meet with my attorney in her Verona, NJ office, Pretrial Services posture suddenly changed. I explained to them that all the travels are solely for the purposes of the preparations for my sentencing hearings, and also due to the fact that I discovered some critically important evidence documenting the motive for my previous employer's false trial testimony, but while they did approve the trips, the posture of the Court's Pretrial Services changed. The change in their mood and posture was particularly dramatic when I also disclosed to them that I intended to file a Motion for Bail Pending Appeal, which would basically allow me to remain free on bail for at least another twelve (12) months. At that point, in January 2016, despite the fact that I had no single bail violation or problem for over two years, the employees of the Court's Pretrial Services tried absolutely every trick in the book in order to artificially produce, "force" or insinuate some problems or violations regarding my behavior or actions while free on bail;

THAT, the despicable, disgusting, unethical, wrongful, immoral, illegal, unlawful, criminal and unconstitutional behavior of the employees of the Court's Pretrial Services against me in this matter is described in more detail in the Criminal Complaint which I filed against them with the Director of the Federal Bureau of Investigations (FBI) and the Office of the Inspector General of the U.S. Department of Justice both in Washington, DC, so there is no need to repeat in detail all of their overt acts and deliberate omissions (please see **Exhibit E**). However, for the purposes of

this Affidavit, I will only remind the Honorable Court that, as stated above, prior to just few months before my designated self surrender date I was out free on bail for over two and half years with absolutely no violations, that I obviously was not considered a risk of flight, danger to the community, or to the safety of others as in 2014 I was granted by the Court's Pretrial Services very liberal only once per month in-office reporting requirement, my license to practice law remained completely clean and during the time on bail I was neither charged with, nor committed, any other crimes or criminal violations. As stated above, as for the developments shortly prior to my designated self-surrender date and the revocation of my previous bail, the employees of the Court's Pretrial Services in the submission of their affidavits, and in their other actions, clearly violated numerous provisions of the federal criminal statutes, among others prohibition against making false statements, perjury, obstruction of justice, etc. In this respect, as much as I would welcome the opportunity to have a hearing and for the Honorable Court to further investigate this matter, I urge the Honorable Court to disregard these events when deciding over the current Motion for Bail Pending Appeal, and look into the totality of record and circumstances of my actions and behavior while out on bail since my arrest and the initial arraignment in May 2013.

THAT, in addition to previous lack of violations, since I have been incarcerated by the U.S. Bureau of Prisons since March 23, 2016, I have had no incident reports or any possible problems with the U.S. Bureau of Prisons;

THAT, should the Honorable Court chose to once again review the events that led to the unfortunate revocation of my previous bail, just days before my designated self-surrender date, and hold a special hearing just devoted to that matter, or in any way consider these events relevant for any further bail hearings, including for the instant bail Motion, I would very much appreciate the Honorable Court ordering to the Pretrial Services to produce the records of the GPS device I was wearing in order to fully clarify the exact location and duration of my short "sandwich eating" and parking event breaks which caused my previous bail revocation when I was returning from visiting my attorney's office in New Jersey;

THAT, as for the instant Motion for Bail Pending Appeal, if acceptable to the Honorable Court, in order to avoid any further misunderstandings regarding the terms of the bail with the Court's Pretrial Services, or any other government agency or entity, the Memorandum of Law, enclosed with this affidavit herein, suggests in great detail the terms of the new Bail the movant respectfully proposes herein;

THAT, upon the review of the suggested terms of the bail, the Honorable Court will certainly notice that the proposed terms are in some aspects more liberal than the previous terms of post-trial bail and that some other proposed terms are simply a practical reflection of the reality that certain actions and filings will inevitably have to be done such as federal and state tax filings for certain corporate entities. Finally, some proposed bail provisions fully reflect my honest avoidance of the immigration law practice and/or any immigration law document preparation business, on my own, even if not considered the practice of law, until this criminal matter is decided on an appeal. Since the Court's permission to have a higher degree of the freedom of movement within New York and New Jersey, as well as outside employment and the free access to the courts will greatly assist me in uncovering the real truth in this matter - meaning finding further relevant legal documentation including contract or memorandum of understanding between Flowerson Advertising and ADP and Broadridge regarding the advertising procedures (or at least e-mails confirming the existence of the same), locating all or at least most of the missing advertisements and credit card and other payments for advertisements, hiring private investigators, including computer security and network analysts and specialists, etc, all of these for the purposes of new discovery FRCP Rule 33 motions, and other post-conviction collateral attacks on the current judgment of conviction, I believe that it would be in the interests of basic process fairness and the orderly administration of justice that the Honorable Court grants me such liberal bail terms, as respectfully requested;

THAT, the instant motion has not been filed in order to procrastinate or delay any surrender to U.S. Bureau of Prisons, and I am kindly asking the Honorable Court to grant me liberal bail provisions so that I can have a gainful employment and start making restitution payments to the organizations designated as victims in this matter, with the clear understanding that if I fail in my

appeal and all other post-conviction efforts, I would still need to serve my sentence anyhow and I am not trying to delay the inevitable serving of the sentence, should that prove to be necessary;

THAT, as for the liberal terms of bail suggested herein and the work on uncovering further evidence in this matter, I am pleased to confirm to the Honorable Court, that thanks to my diligent post-trial search and investigation, I am now in the possession of an e-mail where I, in writing, clearly state to the representatives of ADP (one of the so called corporate victims in this matter) that Flowerson Holdings, or Flowerson Advertising, is my firm (agency). This fact alone disproves the existence of any scheme to defraud on my part in this matter. Moreover, it clearly proves that the representatives of ADP and Broadridge, when stating that they were somehow "shocked" to learn about my ownership or connection to the advertising agency, provided a false testimony first to the U.S. Attorney's Office in New Jersey when meeting for the trial preparation purposes, and then directly to the Honorable Court and the trial jury. Taken in totality, with other evidence already known to the Honorable Court, such as the testimony of the government's crown witness Steven Weinberg, Esq, that I, indeed, did inform him regarding the change of the advertising agency many years ago, as well as the fact that the executives of the so called corporate victims in this matter ADP and Broadridge, large Fortune 500 corporations with huge legal and human resources departments, in over ten (10) years period never asked a single question about the advertising process, advertising invoices or the actual advertisements they paid for, and proceeded to sign, under the penalty of perjury, legal documents filed with the U.S. Department of Labor certifying that they verified the existence of the advertisements (and were never prosecuted for that), and then afterwards reaped the full benefits of the process by obtaining green cards for their foreign employees and kept their foreign employees working for their firms on a full time and long terms basis, clearly indicates the lack of any scheme to defraud on my part, and also sheds some interesting light on the so called corporate victims in this matter in terms of the most recent "Yates Memo" issued by the U.S. Department of Justice. I am also in the process of collecting additional documentation for the purposes of the filing of new Rule 33 Motion (new discovery), and other post-conviction relief which will address the above referenced issues in more detail, as stated above;

9

THAT, in order to satisfy both prongs of the statutory provisions regarding bail pending appeal, the issue of the first prong - whether I pose a danger to safety of others and to the community has been largely addressed above, and as for the second prong - concerning substantial questions of law and fact, I provided substantial new facts and information above, and more details are provided in the Memorandum of Law which is enclosed herewith;

Dated : In Danbury, Connecticut, on June 26, 2016

MARIJAN CVJETICANIN

# LAW OFFICES OF Mr. MARIJAN CVJETICANIN, P.C.

6 Lt. John Olsen Ln, St.James, New York 11780, Tel. 631-584-0000, Fax. 631-584-0044, E-mail: Marijan@marijanlaw.com

May,27 2016

New Jersey Office of the Attorney General
Office of the Insurance Frauds Prosecutor
P.O. BOX 094
Trenton, NJ 08625-0094

RE: INSURANCE FRAUD CRIMINAL COMPLAINT
AGAINST THE LAW OFFICES OF WILDES & WEINBERG
MANHATTAN, NEW YORK AND ENGLEWOOD, NEW JERSEY

Dear Sir/Madam

This is to notify you that the partners of the Law Offices of Wildes & Weinberg, P.C., with the office address at 515 Madison Avenue, 6th Floor, NY, NY 10022 and Englewood, NJ, committed insurance fraud, a fraudulent insurance act in excess of $3,000, within the meaning of the applicable provisions of the New York Penal Law Section 176.05. The principals of the firm are Michael J. Wildes, Esq, (D,NJ, former Mayor of Englewood, NJ) and Steven L. Weinberg, Esq, of Scarsdale, New York.

I THE BACKGROUND OF THE CRIME

The background of the crime is as follows. Wildes & Weinberg is a law firm specializing in Immigration Law practice. I was a full time employee of Wildes & Weinberg for over 16 years, from 1996 to 2012, first working as a paralegal (1996 to 2010) and then as an associate attorney (from 2010 to 2012). After a brief but intensive partnership battle I left the firm at the end of September 2012. As a result of some unsettled partnership issues, based on untrue information provided to the Government by Wildes & Weinberg, in May 2013 I was falsely arrested and in June 2015 wrongfully convicted of federal mail fraud in the Federal District Court in New Jersey, mainly due to some immigration advertising invoices (the case is US v. Cvjeticanin, No. 14-CR-274 (MAS)). At this time I am in the process of appealing my conviction to the U.S. Court of Appeals for the 3rd Circuit, and/or filing other post-conviction remedies and collateral attacks on the judgment of conviction, basically claiming lack of scheme to defraud in this matter, but this is not the subject matter of this letter. As part of the incriminating evidence introduced at trial, the U.S. Attorney's Office in New Jersey introduced into the evidence, among other matters, 214 advertising invoices (for legal green card and visa matters) which were allegedly mailed to some of corporate immigration clients in New Jersey. This served as a basis for the mail fraud prosecution in my case.

1

introduced at trial, the U.S. Attorney's Office in New Jersey introduced into the evidence, among other matters, 214 advertising invoices (for legal green card and visa matters) which were allegedly mailed to some of corporate immigration clients in New Jersey. This served as a basis for the mail fraud prosecution in my case.

Upon jury reaching a guilty verdict on 9 counts (9 advertising invoices charged in the superseding indictment out of possible 214 initially introduced as trial evidence), the case entered a lengthy federal sentencing, restitution and forfeiture hearing pursuant to the Federal Sentencing Guidelines, all of which was completed just a month ago. During the restitution and forfeiture hearing, pursuant to its discovery obligations, the Government partially disclosed to me that, due to mail fraud allegations, upon my departure from Wildes & Weinberg in September of 2012, the management of the firm considered it legally necessary in 2013 and 2014 to rectify and re-file 53 out of 214 invoices (cases) introduced by the Government at the trial. The Government, through the U.S. Attorney's Office in New Jersey, partially disclosed the names of the invoices (legal immigration cases) which allegedly had to be re-advertised and re-done by Wildes & Weinberg. At that time three issues immediately became clear.

II CRIME OF INSURANCE FRAUD

1) The first issue was that the Law Offices of Wildes & Weinberg heavily blocked and redacted subject names on almost all invoices which they claimed had to be re-advertised and re-filed in order to remedy alleged mail fraud problems and submitted such redacted documents to the Federal District Court for evidence purposes in restitution hearing. Such "evidence" also included duplicate names and redundant filings for different geographical locations of the jobs offered for green card purposes to foreign nationals, etc, just in order to earn additional legal fees in the form of false insurance reimbursement for the cases in which they already received the payment of legal fees from the clients directly.

2) Second, and even more importantly, based on evidence the defense was able to ascertain and compare from the invoice copies which had substantially blocked and redacted invoice (case) names, on numerous occasions the Law Offices of Wildes & Weinberg submitted to their malpractice insurance carrier in New York for reimbursement purposes, the names of the clients which were not introduced at the trial at all and which had nothing to do with any mail fraud allegedly caused by myself. They basically submitted false insurance claims just to increase their law firm revenue and profit bottom line, with the invoices (legal cases) which had no connection to any charged mail fraud. This practice enabled the partners of Wildes & Weinberg to earn "double" legal fees - one regular fee from the clients and the other one for the same case again in terms of insurance reimbursement.

Enclosed you will find Exhibit A with the list of all 214 invoices (legal advertising matters) which the Government introduced at my trial. Then you will also find Exhibit B - a heavily redacted but still visible client name of HAIYI LI, together with the letter from insurance company to Michael Wildes, Esq, the managing partner of Wildes & Weinberg, informing him of insurance payment

2

(reimbursement) in this matter and also enclosing a copy of the proof of payment to Wildes & Weinberg in this matter.

If you compare Exhibits A and B you can easily notice that the client name of HAIYI LI is not listed on the Exhibit A, meaning that the Government did not claim mail fraud in that legal matter as no advertising invoice was ever sent in that matter as the case is just another legal matter of Wildes & Weinberg unconnected to my alleged mail fraud crimes. However, that fact did not prevent the partners of Wildes & Weinberg from submitting this matter to their insurance carrier as a claim for alleged malpractice reimbursement. By obtaining insurance reimbursement for this matter, the Law Firm of Wildes & Weinberg conveniently earned its legal fee twice - the first time when the client paid them to do the legal work and the second time when based on the false insurance claim that someone working for their firm committed mail fraud in this matter and the paperwork needed to be allegedly "re-advertised" and re-filed, which is simply not true, as no advertising invoice was ever mailed in that matter and the matter was never included in my mail fraud trial evidence. This is simply a false insurance claim, New York and New Jersey insurance fraud in its purest form.

Moreover, in the Exhibit C you will find a copy of the letter from one of Wildes & Weinberg corporate immigration clients, Wall Street firm by the name of Broadridge Financial Solutions, Inc. In the letter Broadridge asked for reimbursements for some of the matters in which they were informed and persuaded by Wildes & Weinberg that were allegedly connected to my presumed mail fraud crimes. Among the names on the list you will find the names of GOHIL VIPUL, NARAYANA CHITTIREDDY and HARIJBHAI PATEL. None of these names ever appeared on the Government evidence list as they were not connected to my alleged mail fraud crimes, which can be easily verified by comparing them with the Exhibit A - the list of all 214 invoices (case names) introduced by the Government at the beginning of my mail fraud trial. What is even more troubling in regards to that letter, is the fact that Steven Weinberg, a senior partner of Wildes & Weinberg, executed a sworn affidavit to the Federal District Court Judge in New Jersey (submitted on his behalf by the U.S. Attorney's Office in New Jersey which did not even bother to check case names against their own evidence list introduced at trial), stating and confirming that he also submitted these cases (case names) and few others on the list to his insurance carrier for reimbursement due to my presumed mail fraud. This evidences not only an insurance fraud, but also perjury or perpetrating the fraud upon the tribunal/obstruction of justice, etc, which I will address in some subsequent legal proceedings.

Moreover, from what the defense was able to learn and is enclosed herewith, the Law Offices of Wildes & Weinberg also received insurance reimbursements for the following matters which were not in any way connected to the mail fraud in my case: the case of SWAPNA ASHOK OUNDHAKAR (insurance check in the amount of $2,860), VENKATA V.K. CANAKALA (insurance check in the amount of $8,750), as well the cases of SHIVAPRAKAS SINDHAVAL, SALONY AGRAWAL and VIJAY B. KANSE. We also believe that there are other legal matters for which Wildes & Weinberg submitted false insurance claims and obtained fraudulent reimbursement from the insurance company, however, as they skillfully redacted and blocked

3

the names on most of the insurance payment notifications, at this time we are uncertain of any other names and will try to obtain them during the further discovery proceedings.

3) Last but not the least, it is also worth examining, for insurance fraud purposes, claims by the partners of Wildes & Weinberg even regarding the group of invoices (legal matters) in which the names fully match with the government's evidence introduced at trial. Based on federal rules and regulations governing labor certification (green card) process for foreign workers and some recent rulings by the U.S. Department of Labor, it is highly questionable whether it was indeed necessary to re-advertise and re-do even these matters as claimed by Wildes & Weinberg, or that was also done with a sole purpose of earning "double legal fees" - one from the actual client and another in the form of insurance reimbursement based on a false insurance claim in exactly the same legal matter. Since the defense has never received the list of names submitted to the insurance company for claim and reimbursement for the largest check issued by the insurance company to Wildes & Weinberg in the amount of $95,584,66, we are unable to ascertain whether there are any other case names for which claims were submitted which are not connected to the presumed mail fraud in this matter.

However, regardless of that third issue which may be subject to different legal interpretations and rulings, based on issues under (1) and (2) above, there are absolutely no doubts that the partners of Wildes & Weinberg submitted to their insurance company false claims with case names which were not introduced at trial and had nothing to do with the mail fraud allegations against me. Since they knew very well that their claims for payments or other benefits pursuant to the insurance policy in force contain materially false information concerning a key material fact (no connection to the federally charged mail fraud in my case), and/or conceal, for the purposes of misleading their insurance carrier, information concerning key material facts, their acts clearly fall within the definition of insurance fraud, as prescribed in the statute at New York Penal Law Section 176.05.

Sincerely,

Marijan Cvjeticanin

4

LIST OF EXHIBITS:

A- List of all 214 invoices (legal advertising matters) introduced by the government at trial

B- False insurance claim and other documents regarding the client file of HAIYI LI (including the proof of relevant claim, payment of the claim and applicable cover letter from insurance company to Michael Wildes, Esq.);

C- Letter from Broadridge Financial Solutions, Inc, listing names (legal cases) for malpractice reimbursement based on their understanding that all of the names were connected to my presumed mail fraud charges, please note that the client names of Gohil Vipul mentioned above bear no connection to any mail fraud allegations against myself, which can be easily verified by reviewing Exhibit A;

D- Affidavit of Steven Weinberg, Esq, submitted at restitution hearing in this matter, confirming that the above cases have also been submitted to the insurance company for reimbursement;

E- A copy of cover letter and check in the amount of $95,584.66 from insurance company to Wilds & Weinberg for which no names (case names) have been provided at the restitution hearing at all and defense is unable to verify at this time whether connected to mail fraud charges in this matter or not;

# Exhibit A

| Invoice Number | First/Last Name, Doc# | 1st Sunday Ad | 2nd Sunday Ad | Online Ad | CWMAG | Recruitment Report Comments |
|---|---|---|---|---|---|---|
| 771-ADP | KADALI, SREEKUMAR | 1/1/2010 | 1/17/2010 | 1/12/2000 | YES, RESUMES | |
| 772-ADP | SHAH, PARAG | | | | | |
| 773-ADP | PINNULA, VIJAYA, #23606 | 03/20/2011, #23973 | 03/27/2011, #23973 | 03/20/2011, #23973 | YES, RESUMES | |
| 774-ADP | NORDIN, KRISTA | ADVERTISING CANCELLED, NOT MARRIED TO US CITIZEN OBTAINED GREEN CARD, OK TO REFUND | | | YES, RESUMES | |
| 779-ADP | KALRA, VINEET, #23628 | 01/10/2010, #20698 | 01/17/2010, #20698 | 01/10/2010, #20698 | YES, RESUMES | |
| 780-ADP | ALI, SUHAIL, #21062 | 04/24/11, #21064 | 05/01/11, #21064 | 04/8/2011, #21078 | YES, RESUMES | |
| 781-ADP | MUNIKAR, SRIJANA, #23467 | 12/12/2010, #21091 | 12/19/2010, #21091 | 08/29/2011, #23462 | YES, RESUMES | |
| 782-ADP | DUBEY, SANJOY | | | | | |
| 783-ADP | MADUGULA, SASHI | | | | | |
| 784-ADP | RAMAMURTHY, SIMHA | | | | | |
| 785-ADP | BHAT, DHEERAJ #22831 | | | | | |
| 786-ADP | GIRIYAPURA, VINAY, #20671 | | | | | |
| 796-ADP | LOPEZ, ERIC #23622 | 11/16/2008, #23930 | 11/23/2008, #23930 | 4/8/2011, #20667 | YES, RESUMES | |
| 797-ADP | SHARMA, KAYLAN, #23378 | 10/14/07, #23383 | 10/21/07, #23387 | 11/11/2008, #23934 | YES, RESUMES | |
| 798-ADP | MEHTA, HARDIK | | | 8/10/2007, #23400 | YES, RESUMES | |
| 800-ADP | MEIRRELES, LEONARDO #23287 | 1/10/2010, #21121 | 1/17/2010, #21121 | 8/30/2011, #23282 | YES, RESUMES | |
| 803-ADP | RIZVI, ALI | | | 6/17/2010 | YES, RESUMES | |
| 804-ADP | YASMIN, FARIDA #21035 | 06/16/11, #21037 | 06/22/11, #21037 | 4/25/2011, #21046 | YES, RESUMES | |
| 806-ADP | SELVARAJ, RAMACHN, #22782 | | | 10/25/2011, #22788 | YES, RESUMES | |
| 815-ADP | BHIRUD, RAHUL | | | 7/28/2010, #20694 | YES, RESUMES | |
| 816-ADP | DASARI, SUDHA, #24059 | 7/24/2011, #24048 | 7/25/2011, #24046 | 03/03/2011, #24066 | YES, RESUMES | |
| 819-ADP | KANAN, ALAGAR RAJ, #24069 | | | | | |
| 820-ADP | BIJANI, ASHWINI, #23637 | 1/24/2010, #23643 | 1/31/2010, #23639 | 12/22/2011, #23237 | YES, RESUMES | |
| 821-ADP | JAGADEVAN, KAMALKANN #23241 | | | 12/22/2011, #23237 | YES, RESUMES | |
| 822-ADP | JAIN, ATUL, #21236 | ADVERTISING CASE CANCELLED BY ADP, GREEN CARD OBTAINED, OK TO REFUND TO ADP | | | | |
| 823-ADP | KHERADA, TANVIR, #23636 | | | 12/20/2011, #23832 | YES, RESUMES | |
| 824-ADP | KRISHNAMOORTH, VISHW, #23511 | 5/24/2008, #23614 | | 11/16/2011, #23507 | YES, RESUMES | |
| 825-ADP | MENG, ZHIKUN, #23898 | | | | YES, RESUMES | |
| 826-ADP | PARUL, SONI, #20415 | 01/18/2011, #20393 | 01/23/2011, #20393 | 5/8/2011, #20415 | YES, RESUMES | |
| 827-ADP | GUL, NADEEM, #21641 | 01/09/2011, #21641 | 01/18/2011, #21641 | 4/1/2011, #21668 | YES, RESUMES | |
| 828-ADP | YELUBOLU, SURYA #23354 | 04/24/2011, #23342 | 05/01/2011, #23342 | 1/23/2011, #23351 | YES, RESUMES | |
| 829-ADP | THOMAS, JOSEPH, #23592 | | | 7/12/2011, #23698 | YES, #23960 RESUMES | |
| 830-ADP | PADMANABHUH, BANU | | | 5/28/2011, #20628 | YES, RESUMES | |
| 831-ADP | SONI, ASHISH, #23689 | 09/04/2011, #20267 | | 11/20/2011, #23695 | YES, RESUMES | |
| 832-ADP | ABULADZE, TEONA | | | | | |
| 836-ADP | MAHADEVAS, LOKESHA #21603 | 04/24/2011, #21616 | 05/01/2011, #21616 | 4/8/2011, #21614 | YES, RESUMES | |
| 837-ADP | SRIRAM, PUTHUCODE, #23406 | 02/01/2009, #23418 | 02/08/2009, #23413 | 1/23/2009, #23423 | YES, RESUMES | |
| 838-ADP | VENKATACHALAM, SENTH, #22316 | | | | YES, RESUMES | |
| 839-ADP | NAYAK, MADHU | | | | YES, RESUMES | |
| 840-ADP | RAVINTALA, PAVAN #23143 | 12/12/2010, #21091 | 12/19/2010, #21091 | 4/2/2012, 323138 | YES, RESUMES | |
| 841-ADP | GADIRAJU, SUNIL-L | | | 6/17/2011 | YES, RESUMES | COUNT #2 OF INDICTMENT |
| 845-ADP | KOGANTI, SUMANTH, #22882 | | | 9/8/2013, #22863 | YES, RESUMES | COUNT #3 OF INDICTMENT |
| 846-ADP | SHI, JUN | | | 4/8/2012, #22473 | YES, RESUMES | |
| 847-ADP | EDEM, SRINIVAS, #20430 | 03/16/2009, #20435 | 03/22/2009, #20435 | 2/13/2009, #20441 | YES, RESUMES | |

| ID | Name | | | | | |
|---|---|---|---|---|---|---|
| 848-ADP | JOGLEKAR, ANAND, 20180 | 1/9/2011, #20176 | 1/16/2011, #20176 | 12/08/2010, #20200 | YES, RESUMES | |
| 849-ADP | WANG, JONATHAN, #21204 | | | | YES, RESUMES | |
| 850-ADP | CHAWA, MAHESH | | | | | |
| 851-ADP | LI, TAO | | | 6/17/2011, #21275 | YES, RESUMES | |
| 852-ADP | FEHLBERG, FELIPE #23323 | 03/16/2009, #23328 | 03/16/2009, #23328 | 7/12/2011, #20551 | YES, RESUMES | |
| 853-ADP | HOU, DEFENG, #20463 | | | 9/2/2011, #23319 | YES, RESUMES | |
| 859-ADP | CHANDAR, PRAVIN, #20467 | 08/21/2011, #20393 | 08/26/2011, #20393 | 4/15/2011, #20479 | YES, RESUMES | |
| 860-ADP | GHARE, TANUJA, #23084 | 4/24/2011 | 5/1/2011 | 3/31/2011, #20463 | YES, RESUMES | |
| 861-ADP | REGULY, ALVARO #23135 | | | 8/29/2011, #23079 | YES, RESUMES | COUNT #5 OF INDICTMENT |
| 862-ADP | BELISLE, SHAWN, #23763 | 08/07/2011, #23763 | 08/14/2011, #23763 | 4/5/2012, #23132 | YES, RESUMES | |
| 863-ADP | YEDLAPALLI, SIRISA, #23655 | | | 7/12/2011, #23767 | YES, RESUMES | |
| 864-ADP | MEAH, MOHAMMED, #20983 | 01/09/2011, #20985 | 08/21/11, #20985 | 7/8/2011, #23651 | YES, RESUMES | |
| 865-ADP | PAIMLA, RANGA, #24086 | 10/16/2011, #24079 | | 4/8/2011, #21000 | YES, RESUMES | |
| 866-ADP | MISHRA, AKASH, #23271 | | | 6/13/2011, #24083 | YES, RESUMES | |
| 867-ADP | DWIVED, VIJAY, #22814 | | | 9/2/2011, #23266 | YES, RESUMES | |
| 868-ADP | BANSAL, MANJARI | | | 12/2/2011, #22811 | YES, RESUMES | |
| 869-ADP | JAYARAMAN, ANBAHZ. #23316 | 5/29/2011 #23290 | 6/5/2011, #23290 | 4/22/2011, #20456 | YES, RESUMES | |
| 870-ADP | SUDJATMIKO, ED, #22826 | | | 5/23/2011, #23312 | YES, RESUMES | |
| 871-ADP | KAUSHAL, DEEPAK | | | 8/31/2011, #22829 | YES, RESUMES | |
| 872-ADP | CHALSANI, BHANU, #20504 | 01/16/2011, #20324 | 01/23/2011, #20324 | 7/12/2011, #20587 | YES, RESUMES | |
| 873-ADP | GOVINDARAJ, RAVIKUMAR | | | 4/1/2011, #20328 | YES, RESUMES | |
| 874-ADP | MOHANDAS, SHANTI #23610 | 05/03/2009, #23614 | 05/10/2009, #23614 | 12/01/2011, #23606 | YES, RESUMES | |
| 875-ADP | LINGINENI, AMAR, #21223 | REQUESTED TO CLOSE AND NOT ADVERTISE, REFUND TO BE ISSUED - SPECIAL COMMENTS | | | | | |
| 876-ADP | CHEN, BO, #22784 | | | 11/18/2011, #22780 | YES, RESUMES | |
| 877-ADP | MITTAL, ABILAKSHA, #23629 | | | 11/21/2011, #23624 | YES, RESUMES | |
| 879-ADP | ARORA, PARVINDER | | | 9/8/2011, #20675 | YES, RESUMES | |
| 880-ADP | KUMAR, SANDEEP, #22857 | | | 12/1/2011, #22853 | YES, RESUMES | |
| 881-ADP | KOKA, SUSHMITA, #22800 | | | 11/22/2011, #22796 | YES, RESUMES | |
| 882-ADP | OBEROI, SANDEEP, #22865 | | | 7/22/2011, #22861 | YES, RESUMES | |
| 883-ADP | GUO, PENG, #23719 | | | 11/23/2012, #23715 | YES, RESUMES | |
| 884-ADP | RADHAKRISHNAN, SRIJ #23749 | 10/07/2012, #20674 | 10/14/2012, #20674 | 4/2/2012, #23745 | YES, RESUMES | |
| 885-ADP | MO, DENGYAO, #23120 | | | 4/19/2012, #23117 | YES, RESUMES | |
| 886-ADP | GUDAPATI, DEEPIKA, #23204 | | | 12/29/2011, #23200 | YES, RESUMES | |
| 887-ADP | ANEGUNTA, JAGAN | | | 2/6/2012, #22476 | YES, RESUMES | |
| 888-ADP | DORAIRAJ, ANEETHA, #23110 | | | 2/13/2012, #23107 | YES, RESUMES | |
| 889-ADP | KONATHALA, SURESH, #23502 | | | 12/29/2011, #23500 | YES, RESUMES | |
| 890-ADP | MURTUZA, MOHAMM #23215 | | | 1/26/2012, #23215 | YES, RESUMES | |
| 891-ADP | JANDHYALA, RAVI, #24112 | | | 9/2/2011, #24107 | YES, RESUMES | |
| 898-ADP | RUPANI, RAJITHA | | | | YES, RESUMES | |
| 899-ADP | VELAGALA, SRIKANTH, #22940 | | | | YES, RESUMES | |
| 900-ADP | MUTHYALA, OM PRAKASH, #20937 | 12/23/2012, #20939 | 12/30/2012, #20939 | 7/2/2012, #20953 | YES, RESUMES | |
| 901-ADP | KAPOOR, ROHAN #21229 | ADP REQUESTED TO CLOSE AND NOT TO ADVERTISE, REFUND TO BE ISSUED - SPECIAL COMMENTS | | | | | |
| 902-ADP | DHALIWAL AMANDEEP #23252 | | | 4/2/2012, #23248 | YES, RESUMES | |
| 903-ADP | GOPALSAMY, NAVANETH. #23188 | | | 1/26/2012, #23192 | YES, RESUMES | |
| 904-ADP | SHEKAR, RAJ #23234 | | | 1/18/2012, #23230 | YES, RESUMES | |

| # | Name | | | | | |
|---|---|---|---|---|---|---|
| 905-ADP | THAKRAL, SAURABH #23226 | | | | | |
| 907-ADP | SOOD, VINEET | | 1/11/2012, #23222 | | YES, RESUMES | |
| 918-ADP | JAYAPRAKASH, JAGAD, #23046 | | 2/13/2012, #23096 | | YES, RESUMES | |
| 920-ADP | KOTHARI, YAMINI #23767 | | 7/23/2012,#23044 | | YES, RESUMES | |
| 921-ADP | CHALSANI, BHANU, #20501 | 08/07/2011, #21641 | 6/18/2012, #20651 | | YES, RESUMES | |
| 922-ADP | SINITSKOL, CHANNON, #23002 | DUPLICATE INVOICE TO INVOICE #872-ADP, DUE TO REFUND TO ADP, ANY ADVERTISING CANCELLED | | | | |
| 923-ADP | PALKAR, SUMEET, #23092 | | 4/8/2012, #22998 | | YES, RESUMES | |
| 1931 | DUBEY, SANJOY #20466 | | 2/7/2012, #23088 | | YES, RESUMES | |
| 1932 | MOOLYA, SANAND, #23066 | INVOICE IS NOT FOR     ADVERTISING | | N/A | INVOICE IS | NOT FOR ADVERTISING |
| 1933 | SANAM, RAJEEV, #22920 | | 4/5/2012, #23084 | | YES, RESUMES | |
| 1934 | BHAR, BHUPINDER, #23644 | | | | YES, RESUMES | |
| 1935 | ANANDAM, RAJEDNR, #23041 | 11/04/2012, #21258 | 5/8/2012, #23640 | | YES, RESUMES | |
| 1936 | POTLURI, PRABAV, #24101 | | 4/20/2012, #23036 | | YES, RESUMES | |
| 1939 | POLA, RAMESH, #23669 | | 11/19/2012, #24098 | | YES, RESUMES | |
| 1940 | ASTHANA, PRATEEK, #23018 | | 6/4/2012, #23684 | | YES, RESUMES | |
| 1941 | SINGH, TARUN #23244 | 10/07/2012, #20204 | 10/14/2012, #20204 | 6/20/2012, #23014 | YES, RESUMES | |
| 1942 | CHALLANGI, SURYA #22963 | | 7/31/2012, #20130 | | YES, RESUMES | COUNT #8 OF INDICTMENT |
| 1943 | GATTU, SRINIVASA #23059 | | 7/2/2012, #22959 | | YES, RESUMES | |
| 1944 | GWALANI, PRATIK #23673 | 4/10/2011, #23990 | 4/17/2011, #23990 | | | |
| 1945 | SHINGANMAKI, GANA, #20171 | 11/25/2012, #20157 | 12/02/2012, #20157 | 5/16/2012, #23666 | YES, RESUMES | |
| 1946 | TATITURI, VENKAT, #23681 | | 9/19/2012, #20169 | | YES, RESUMES | |
| 1947 | DASARI, PHANI #11974 | 10/14/2012, #19968 | 10/21/2012, #19968 | 6/4/2012, #23676 | YES, RESUMES | |
| 1948 | LAKINANA, MANOJ, #22980 | | 10/12/21012, #19968 | | YES, RESUMES | |
| 1949 | BHATNAGAR, MANISH, #22972 | | 5/29/2012,#22975 | | YES, RESUMES | |
| 1950 | GIDIJALA, MAHESH, #20154 | 11/25/2012, #20136 | 12/02/2012, #20136 | 5/16/212, #22967 | YES, RESUMES | |
| 1951 | KANDULA, VENU, #22987 | | 11/16/2012, #20136 | | YES, RESUMES | |
| 1952 | PADMANABHUI, BANU P | 10/07/2012, #20243 | 10/14/2012, #20243 | 7/13/2012, #22986 | YES, RESUMES | |
| 1953 | NARASHIMHAN, SHARADA, #24162 | ADVERTISING CANCELLED AS PER STEVE WEINBERG'S E-MAIL | | 7/2/2012, #20264 | YES, #20251 | |
| 1954 | MACHIRAJU, VENKATA #23162 | | | | | |
| 1955 | ADINARAYANA, SANDEEP #23010 | | 7/3/2012, #23154 | | YES, RESUMES | |
| 1956 | DARSHANA, BAFNA, #22503 | ADVERTISING CASE CANCELLED, TOO LATE IN SEPTEMBER 2012, SUBJET TO REFUND | | 8/28/2012, #23006 | YES, RESUMES | |
| 1957 | MURAMREDDY, SUDARH, #20133 | 11/25/2012, #20120 | 12/02/2012, #20120 | 7/31/2012, #20130 | YES, RESUMES | |
| 1969 | SUNDARESAN, SARAVAN, #24169 | ADVERTISING CASE CANCELLED AS PER STEVEN WEINBERG'S E-MAIL ORDER | | | | |
| 1970 | SHARMA, SUNIL, #22995 | | 6/20/2012, #22990 | | YES, RESUMES | |
| 1971 | VENKATARAMANA, PRAS, #23737 | | 12/2/2012, #23733 | | YES, RESUMES | |
| 1972 | PAIMLA, RANGA, #24088 | ADVERTISING CASE CANCELLED AS PER STEVEN WEINBERG'S E-MAIL ORDER | | | | |
| 1973 | VAROKAS, PANUSUWAN | 12/23/2012, #21569 | 11/23/2012, #21569 | | | |
| 1974 | MALLADI, SREEVALI, #24169 | ADVERTISING CASE CANCELLED AS PER STEVEN WEINBERG'S E-MAIL ORDER | | | YES, RESUMES | |
| 1975 | GIRIYAPURA, VINAY, #20662 | 12/16/2012, #20636 | 12/23/2012, #20636 | 11/23/2012, #20661 | YES, RESUMES | |
| 1976 | KESAVAN, PRASHNT, #23105 | | | | | |
| 1977 | RADHAKRISHN, SIRJIT, #23741 | 10/21/2012, #21258 | 10/28/2012, #21258 | 4/2/2012, #23745 | YES, RESUMES | |
| 1978 | TUMU, DAS, #22500 | | 11/28/2012, #22489 | | YES, RESUMES #22488 | |
| 1979 | DESAI, HEMAL, #20239 | 10/14/2012, #20225 | 10/21/2012, #20225 | 10/12/2012, #20225 | YES, RESUMES | |
| 1984 | GAVAI, CHANDAN, #19997 | 12/02/2012, #19992 | 12/09/2012, #19995 | 11/19/2012, #19997 | Yes, doc #19981 | |
| 1985 | THOMAS, JOE #23660 | INVOICE IS NOT FOR ADVERTISING, WAS FOR SUPERVISED RECRUITMENT, NO ADS | | | | |

| No. | Name | | | | Status / Note |
|---|---|---|---|---|---|
| 1986 | MEAH, MOHAMMED, #23763 | | | | ADVERTISING CASE CANCELLED, TOO LATE IN SEPTEMBER 2012, SUBJECT TO REFUND TO ADP |
| 1987 | LAHIRI, PALAB, #23058 | 12/06/2012, #21922 | | 7/23/2012, #20032 | YES, RESUMES |
| 1988 | BUDKE, PABLO, #21147 | | | | ADVERTISING CASE CANCELLED AS PER STEVEN WEINBERG'S E-MAIL ORDER |
| 1989 | CHAVA, MAHESH | 10/14/2012, #21246 | 10/21/2012, #21246 | 10/02/2012, #21246 | YES, RESUMES |
| 1990 | JOSHI, VEDANG | | | | |
| 1991 | ANDRUSHYNA, KSENYA, #19968 | 12/09/2012, #21410 | 12/18/2012, #21410 | 11/23/2012, #21410 | YES, RESUMES |
| 1995 | YEDLAPALLI, SIRISA, #23648 | 12/22/2012 #19968 | 12/09/2012, #19968 | 11/19/2012, #19968 | YES, RESUMES |
| 1996 | JANDHYALA, RAVI, #24114 | | | | |
| 1998 | KONAKALLA, MURALI #23730 | | | | ADVERTISING CASE CANCELLED AS PER STEVEN WEINBERG'S E-MAIL ORDER |
| 1997 | | | | | |
| 1998 | SHAH, KEYUR, #22898 | | | | ADVERTISING CASE CANCELLED AS PER STEVEN WEINBERG'S E-MAIL ORDER |
| 1999 | PROKOPCHUK, OLEKSI, #20020 | 10/14/2012 | 10/21/2012   9/7/2012, #20017 | Yes, doc #20012 | COUNT #5 OF INDICTMENT |
| 2000 | BALASUBRAMANIAN, LAKSH #24094 | | | | ADVERTISING CASE CANCELLED AS PER STEVEN WEINBERG'S E-MAIL ORDER |
| 2001 | MAHMOOD, ARIF, #21813 | 10/14/2012, #21633 | 10/21/2012, #21633 | 11/19/2012 | YES, RESUMES |
| 2004 | EVAN, SRINIVAS, #22623 | | | | ADVERTISING CASE CANCELLED AS PER STEVEN WEINBERG'S E-MAIL ORDER |
| 2005 | JOGLEKAR, ANAND, #22619 | | | | ADVERTISING CASE CANCELLED, TOO LATE IN SEPTEMBER 2012, DUE FOR REFUND TO ADP |
| 2006 | SHIN, SUYUEN, #22889 | | | | ADVERTISING CASE CANCELLED, TOO LATE IN SEPTEMBER 2012, DUE FOR REFUND TO ADP |
| 2007 | BAFNA, DARSHANA | | | | ADVERTISING CASE CANCELLED, AS PER STEVEN WEINBERG'S E-MAIL ORDER |
| 2008 | DUTT, RAJEEV, #22611 | | | | ADVERTISING CASE CANCELLED, TOO LATE IN SEPTEMBER 2012, DUE FOR REFUND TO ADP |
| 2010 | KHONDETI, BHARAT, #22616 | | | | ADVERTISING CASE CANCELLED, TOO LATE IN SEPTEMBER 2012, DUE FOR REFUND TO ADP |

| BR Code | Name | | | | Status / Note |
|---|---|---|---|---|---|
| 788-BR | KAUR, SATWINDER | 03/20/2011, #21559 | 03/27/2011, #21559 | 3/1/2011, #21555 | YES, RESUMES |
| 787-BR | REDDY NIRMALA GUNDUPA | | | | CASE CANCELLED AND CLOSED BY BROADRIDGE, SUBJECT TO REFUND TO BROADRIDGE |
| 789-BR | PAREKH, TEJAS - L | | | | |
| 769-BR | PARKIN, DANIEL | | | | |
| 778-BR | MANCHIKATLA, RAVI #23857 | 09/30/2011, #23852 | | 08/30/2012, #23833 | YES, #23827 RESUMES |
| 779-BR | PIERRE, RACHEL, #22007 | | | 12/27/2011, #22804 | YES, RESUMES |
| 785-BR | LEVIN, AVI, #24044 | 12/12/2010, #24024 | 12/12/2010, #24024 | 09/14/2010, #24042 | YES, RESUMES |
| 786-BR | HANSATHARINI, JAGANATHAN | | | | |
| 767-BR | SITTIVINAYAGAM, ARAVIN. #24156 | 12/12/2010, #21577 | 12/19/2010, #21582 | 07/11/2011, #24124 | YES, RESUMES |
| 799-BR | MUTHIRAJ, SARAVAN | | | | |
| 810-BR | LAKSHMIRATHAN, ANAND | 05/02/2010, #21100 | 05/09/2010, #21100 | 7/22/2001, #20659 | YES, RESUMES |
| 812-BR | KURUP, SURENDRAN | | | 4/1/2011, #21172 | YES, RESUMES |
| 813-BR | MANSHARMANI, ANITA, #20359 | 07/10/2011, #20335 | 07/17/2011, #20335 | 3/3/2011, #20356 | YES, RESUMES |
| 802-BR | SIDDIQUI, IMRAN | | | | |
| 807-BR | NAJAM, MUDASIR, #23477 | 08/21/2011, #23461 | 08/28/2011, #23461 | 3/3/2011, #23474 | YES, RESUMES |
| 808-BR | KUMAR, JITENDRA | | | | |
| 817-BR | AULAKH, AMRITA #23128 | | | 4/10/2012, #23124 | YES, RESUMES |
| 816-BR | DEEKONDA, SHARADA | 12/18/2010 | | 1/6/2010, #20877 | YES, RESUMES    COUNT #1 INDICTMENT |
| 818-BR | JAVINI, HARINTHA, #23279 | 02/13/2011, #20305 | | 3/17/2011, #20877 | YES, RESUMES |
| 834-BR | SAI, MINEKANTI, #22822 | | | 8/20/2011, #23274 | YES, RESUMES |
| 835-BR | HAYAT, SHAWKAT | | | 12/22/2011, #22818 | YES, RESUMES |
| 836-BR | NALLAGONDA, SUNEEL | | | | |
| 842-BR | MENACHERIL, JOSE #23624 | 09/18/2011, #23812 | 8/26/2011 | 6/6/2011, #23818 | YES, RESUMES |
| 843-BR | PATEL, SIDHARTH | | | 7/25/2011, #20643 | YES, RESUMES    COUNT #4 OF INDICTMENT |
| 844-BR | PRASAD, RAVI - L | 01/16/2011, #23582 | 01/23/2011, #23582 | 03/16/2011-L | YES, RESUMES |
| 856-BR | PANITHASAN, ANNIE, #22868 | | | 3/30/2012, #22464 | YES, RESUMES |

886-BR  SUNDARAM, RAMKUMAR #23376  05/08/2011, #23363  10/23/2011, #23366  6/16/2011, #23973  YES, RESUMES

892-BR  JOSHI, ROSHAN, #23262  4/10/2012, #23266  YES, RESUME

893-BR  KADIYLA, RAJESH  4/27/2012, #22469  YES, RESUMES

896-BR  SUBBAREDDY, SINGAM, #23171  3/30/2012, #23168  YES, RESUME

897-BR  SUBBIAN, GANESH, #23161  3/30/2012, #23146  YES, RESUME

907-BR  VAZARKAR, SANTHOS, #23179  10/07/2012, #20874  10/14/2012, #20874  4/10/2012, #23175  YES, RESUME

908-BR  MARTHAK, JAYEB, #22778  4/10/2012, #22772  YES, RESUMES

909-BR  BHATTACHARYA, GORURAB #23025  5/7/2012, #23021  YES, RESUMES

910-BR  VEMASANI, SANDEEP  9/18/2011  10/2/2011, #22466  5/16/2012, #22466  YES, RESUMES  COUNT #6 OF INDICTMENT

911-BR  TUPE, PRASAD, #23033  5/15/2012, #23028  YES, RESUMES

912-BR  RAJA, SUBRAMANIAM  YES, RESUMES

913-BR  LEVIN, AVI, #24028  YES, RESUMES

1920  SUBRAMANIAM, RAJA, #23076  DUPLICATE INVOICE TO INVOICE #785 AS ADVERTISED, DUE TO THE POSITION CHANGE TO EB-2 POSITION, SUBJECT TO REFUND TO BROADRIDGE

1927  THOMAS, MARYDASAN, #23663  3/18/2012, #23072  YES, RESUMES

1928  DUSI, PAVAN, #22666  5/16/2012, #23666  YES, RESUMES

1929  YANGAM, PRAVEEN, #23712  7/30/2012, #23707  YES, RESUMES

1930  KAUR, GURPREET, #22924  YES, RESUMES

1937  MILLER, DMITRY, #20762  12/16/2012, #20717  12/23/2012, #20717  11/23/2012  YES, RESUMES

1938  KARPOVICH, EVGENYI #23561  12/16/2012  12/23/2012  4/27/2012, #23566  YES, RESUMES  COUNT #7 OF INDICTM.

1960  DANDA, HIMA BINDHU  INVOICE NOT FOR ADVERTISING, SUPERVISED RECRUITMENT NO ADS BILLED

1962  MEMACHERIL,JOSE #23609  INVOICE NOT FOR ADVERTISING, SUPERVISED RECRUITMENT NO ADS BILLED

1964  MANCHIKATLA, RAVI, #23846  INVOICE NOT FOR ADVERTISING

1966  DEEKONDA, SHARADA  INVOICE NOT FOR ADVERTISING

1968  VIDYASANKAR,BASUDEV, #22009  ADVERTISING CASE CANCELLED, TOO LATE IN SEPTEMBER 2012, DUE FOR REFUND TO BROADRIDGE

1967  SINGH, PRIYANK, #22944  INVOICE IS NOT FOR ADVERTISING  NOT FOR ADVERTISING

1968  RUPALI, RATHOD, #23708  12/09/2012, #23994  11/18/2012, #23994  YES, RESUMES

1981  KURUP, SURENDRAN, #22901  INVOICE IS NOT FOR ADVERTISING, FOR EDUCATIONAL EVALUTION IN THIS MATTER, NOT CONNECTED TO ADVERTISING

1982  INVOICE NOT LISTED  12/6/2012, #23994  GOVERNMENT EXHIBIT 220

1983  MAKENA, SRINIVASA  INVOICE IS NOT FOR ADVERTISING, FOR L-1  ADDITIONAL WORK -  INVOICE IS NOT FOR ADVERTISING

1984  GAVAI, CHANDAN

1992  SWAMY, RAJ SHEKAR, #20714  12/18/2012, #20702  12/23/2012, #20702  11/23/2012  YES, RESUMES

1983  SHAH, RAJESH, #22947  ADVERTISING CASE CANCELLED, TOO LATE IN SEPTEMBER 2012, DUE FOR REFUN TO BROADRIDGE

1984  INVOICE NOT LISTED  INVOICE NOT FOR ADVERTISING, FOR L-1 VISA, GOVERNMENT EXHIBIT 225

2003  MATHIAS, MATHEW, #22883  ADVERTISING CASE CANCELLED, TOO LATE IN SEPTEMBER 2012, DUE FOR REFUN TO BROADRIDGE

# Exhibit B



**KAUFMAN BORGEEST & RYAN LLP**

TEL: 914.449.1000   FAX: 914.449.1100    200 SUMMIT LAKE DRIVE, VALHALLA, NY 10595
WWW.KBRLAW.COM

December 29, 2014

ANDREW OLDIS
DIRECT: 914.449.1091
AOLDIS@KBRLAW.COM

BY FED EX AND
EMAIL

Michael Wildes
Wildes & Weinberg, P.C.
515 Madison Avenue, 6th Floor
New York, NY. 10022
michael@wildeslaw.com

Re:  Named Insured        :
     Matter               :   Law Offices of Wildes & Weinberg, P.C. ("the Firm")
     Policy No.           :   Conduct of Marijan Cvjeticanin
     Liberty Claim No.    :   LPA202960-0112 ("the Policy")
                              NEWSPC000024030

Dear Michael:

Enclosed please find check no. 03016672 payable to Wildes & Weinberg, P.C. in the amount of $2,860.00.  This amount represents Liberty's reimbursement to the Firm for the approved portion of the seventh batch of submissions.  The attached spreadsheet provides a breakdown of the enclosed payment.  As you know, this payment is made pursuant and subject to the Confidential Compromise Agreement between Liberty and the Firm.

Please feel free to contact us with any questions.

Very truly yours,

KAUFMAN BORGEEST & RYAN LLP

Andrew Oldis

Encls.

cc:  (via email only)
     Paul Viola, Wildes & Weinberg, P.C.

NEW YORK CITY    LOS ANGELES    NEW JERSEY    STAMFORD    WESTCHESTER    LONG ISLAND

2880130

| # | Date Reimbursement Submitted to KBR | Last Name | First Name | Client Company | Floworson Invoice to Client Company | Proof of Payment to Floworson | DOL Application | Proof of Tainted Application | Prior Filing Fees | New Advertising Fees (Creative Efflacts) | New Filing Fees |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 12/19/2014 | | | ADP | No | No | Yes | Yes | Yes | | $1,475.00 |
| | | | | | | | | TOTAL: | | $0.00 | $1,475.00 |

TOTAL REQUEST:    $1,475.00



| # | Date Reimbursement Submitted to KBR | Last Name | First Name | Client Company | Flowserve Invoice to Client Company | Proof of Payment to Flowserve | DOL Application | Proof of Printout Application | Prior Filing Fees | New Advertising Fees (Creative Effects) | New Filing Fees |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 11/24/2014 | Hou | Dafeng | ADP | Yes | Yes | Yes | Yes | Yes | | $580.00 |
| 2 | 11/24/2014 | | | ADP | | | Yes | Yes | Yes | | $475.00 |
| 3 | 11/24/2014 | Venkatachalam | Santhikraja | ADP | Yes | Yes | Yes | Yes | Yes | | $1,605.00 |
| | | | | | | | | | TOTAL: | $0.00 | $2,660.00 |

TOTAL REQUEST:  $2,660.00

# Exhibit C

 **Broadridge**°

Broadridge Financial Solutions, Inc.
2 Journal Square Plaza, Jersey City, NJ 07306
201 714 3000

<u>VIA UPS OVERNIGHT</u>

November 11, 2015

Steven L. Weinberg, Esq.
Wildes & Weinberg P.C.
515 Madison Avenue – 16th floor
New York, NY 10022

Re:    Expenses Incurred by Broadridge Financial Solutions, Inc. ("Broadridge")
       Resulting from the Malfeasance of Marijan Cvjeticanin

Dear Steven:

Pursuant to our discussion two weeks ago, I am forwarding to you documents and information regarding the losses incurred by Broadridge as a consequence of the conduct of Marijan Cvjeticanin for which Broadridge seeks reimbursement. These expenses are as follows:

<u>Remediation Legal Fees:</u>
1. Legal fees:            $604,920.15
2. Expenses:              <u>$14,000.97</u>
   SUBTOTAL:              $618,921.12

I have enclosed copies of the legal services invoices comprising this amount.

<u>Relocation Costs:</u>
1. CHITTIREDDY, Narayana.         $5,629
2. GAVAI, Chandan.                $5,458
3. GOHIL, Vipul                   $8,857
4. KUMAR, Jitendra                $5,728
5. PATEL, Hardikbhai              $2,383
6. SHAH, Rajesh                   $6,209
7. SITTIVINAYAGAM, Aravindhan     <u>$27,569</u>
                    SUBTOTAL:  $61,833

I will send you an e-mail containing an Excel spreadsheet setting forth the details of these Relocation Costs on Friday.

I appreciate your attention to this most unfortunate matter.

Sincerely,

Mark D. DiGidio
Senior Vice-President & Associate General Counsel

RECYCLED

# Exhibit D

State of New York}

              : ss.:

County of New York}

# AFFIDAVIT

I, Steven Weinberg, being duly sworn, depose and say:

THAT I am a partner in the firm of Wildes & Weinberg and have been associated with this firm for the last 44 years.

THAT my firm and I work exclusively on immigration related matters and represent large corporate entities and individuals in reference to obtaining visas to work and live in the United States.

THAT as part of my duties I personally oversaw our firm's representation of Automatic Data Processing and Broadridge Financial Solutions.

THAT I have worked with Automatic Data Processing for over 25 years and began working with Broadridge Financial Solutions when ADP spun off the company in 2007

THAT as part of my duties I had direct responsibility for supervising the work of Marijan Cvjeticanin. Mr. Cvjeticanin was employed as a case manager on the accounts of Automatic Data Processing and Broadridge Financial Solutions. As part of his duties he was directly involved with supervising staff and personally preparing applications to be filed with the Department of Labor. These applications requested that the Department of Labor certify that American workers were not available to render services required in the application for certification.

THAT as part of the application process employers are required to advertise the position and review responses to the advertisements in order to adhere to regulations and to substantiate the fact that American workers were not available. Part of Mr. Cvjeticanin's responsibilities within Wildes & Weinberg was to draft and place the necessary ads in Sunday publications.

THAT without the knowledge of Wildes & Weinberg Mr. Cvjeticanin created an advertising agency and funneled all ad placements to his agency. He had the opportunity to do this as his responsibility at Wildes & Weinberg was to place the necessary ads based upon the consent of the client. Mr. Cvjeticanin's agency would then directly bill the clients for the ads that were alleged to be placed.

THAT Mr. Cvjeticanin was discharged from Wildes & Weinberg in September of 2012. He was discharged as we ascertained, immediately prior to his discharge, that he was running an ad agency without our knowledge or the client's knowledge. We felt that this was an ethics violation and were very uncomfortable with this situation.

remediation efforts totaled $473,869.07 but with additions including social security payments, health insurance, etc. totaled $531,775. I am attaching hereto all W-2 forms that were issued to workers over this period of time. We have redacted social security numbers and the name of each individual. You will also note that the actual figure that is shown on the W-2 forms is in excess of this $473,869.07 that I have stated previously. This is because some of the workers did not work full time on the remediation process and we felt it would be fair to only include a portion of the applicable salaries. In the 2014 salaries paid for the remediation efforts totaled $431,960.81. This totals out when other benefits are included to $490,245.42. I am attaching W-2 forms for each of the persons who were paid for their remediation efforts in 2014. In the year 2015 salaries dropped to $82,925.23 for a total of $93,414.46 when all benefits are included. This amount totals out to $1,115,435.13 which was salaries paid and stated in my impact statement.

THAT as a result of Mr. Cvjeticanin's criminal activity we were forced to hire outside counsel to guide us through this process. Wildes & Weinberg hired two attorneys, one that advised the firm of our ethical responsibilities and who interacted with the client and the US attorney's office and the other that interacted with our insurance company. The attorneys are Michael Ross whose offices are located at 60 East 42nd Street, New York, NY. The total cost of legal representation by Mr. Ross was $72,074.37. A copy of all bills sent to Wildes & Weinberg and paid by Wildes & Weinberg for Mr. Ross' services are attached.

THAT Wildes & Weinberg also hired the firm of Walsh, Markus, McDougal & Debellis LLP. That firm is located at 229 7th Street, Garden City, NY 11530. The Walsh firm represented Wildes & Weinberg in reference to our consultations with our insurance carrier. All bills issued by Walsh, Markus, McDougal & Debellis are attached. Their total billings for services were $17,970.

THAT as we understood that we could have adverse consequences from the prosecution of Mr. Cvjeticanin, Wildes & Weinberg hired an IT consultant to manage our online reputation. We contacted Joe Priolo and have paid to Soft Solutions the sum of $20,000 for 2013, 2014 and 2015. Bills from the IT consultant are attached.

THAT once we ascertained the Mr. Cvjeticanin conduct created issues in reference to services that Wildes & Weinberg had rendered to our clients Automatic Data Processing and Broadridge Financial Solutions we immediately contacted our malpractice carrier. We informed the carrier of the problem and based upon our report we have experienced extensive increases in our malpractice coverage. Prior to our contacting our carrier our malpractice bill was $23,150 a year. Our bills increased in 2013 to $71,726, in 2014 to $49,749 and in 2015 to $44,004. This is an increase in cost of $96,000 over these three years. I attach hereto copies of our malpractice bills for 2012, 2013, 2014 and 2015.

THAT based upon negotiations the firm had with our malpractice carrier, Liberty Insurance Underwriters, we received from our carrier $165,779.90 which covered the cost of ads and application fees that were advance to the U.S. Citizenship & Immigration Service in the refilling of applications. Our malpractice carrier refused to cover costs for salaries, attorney fees, IT consulting and, of course, our malpractice bill.

THAT Wildes & Weinberg lost $1,504,403.40 in actual monies outlaid in order to remediate the situation caused by Mr. Cvjeticanin's illegal and unethical conduct. This does not include loss of income which far exceeds that number. The loss of income occurred because Wildes & Weinberg were terminated as attorneys for Automatic Data Processing and Broadridge Financial Solutions upon the disclosure of Mr. Cvjeticanin's conduct. While we continued to represent both companies in remediation efforts no bills for new work occurred after Mr. Cvjeticanin's arrest and indictment. During the year in which the discovery was made, as to Mr. Cvjeticanin's conduct, our billing to Automatic Data Process and Broadridge Financial Solutions totaled $1,666,067.21. We no longer render billed services to either of these companies and as a direct result of this we have discharged five employees and have reduced the size of our office to offset our loss of income.

THAT if the court requires any further documentation or statement pertaining to the losses that Wildes & Weinberg has suffered they can be supplied as directed.

_____
STEVEN WEINBERG

SWORN TO before me

This _2_ day of December 2015

_____
NOTARY PUBLIC

MARIA ESTHER ALVAREZ
ID # 2426099
NOTARY PUBLIC
STATE OF NEW JERSEY
My Commission Expires Oct. 12, 2017

# Exhibit E



**KAUFMAN BORGEEST & RYAN LLP**

TEL: 914.449.1000   FAX: 914.449.1100   WWW.KBRLAW.COM
200 SUMMIT LAKE DRIVE, VALHALLA, NY 10595

July 10, 2014

ANDREW OLDIS
DIRECT: 914.449.1091
AOLDIS@KBRLAW.COM

BY FED EX AND
EMAIL

Michael Wildes
Wildes & Weinberg, P.C.
515 Madison Avenue, 6th Floor
New York, NY 10022
michael@wildeslaw.com

Re:  Named Insured            :     Law Offices of Wildes & Weinberg, P.C. ("the Firm")
     Matter                   :     Conduct of Marijan Cvjeticanin
     Policy No.               :     LPA202960-0112 ("the Policy")
     Liberty Claim No.        :     NEWSPC000024030

Dear Michael:

Enclosed please find check no. 03010090 payable to Wildes & Weinberg, P.C. in the amount of $95,584.66. As per our recent conversation, this amount represents Liberty's reimbursement to the Firm for the approved portion of the first batch of submissions. The attached spreadsheet provides a breakdown of the enclosed payment. As you know, this payment is made pursuant and subject to the Confidential Compromise Agreement between Liberty and the Firm.

Please feel free to contact us with any questions.

Very truly yours,

KAUFMAN BORGEEST & RYAN LLP

Andrew Oldis

Andrew Oldis

Encls.

cc:    (via email only)
       Paul Viola, Wildes & Weinberg, P.C.

NEW YORK CITY        WESTCHESTER        LONG ISLAND        NEW JERSEY        LOS ANGELES

2662839

PAY TO THE ORDER OF
WEINER & WEINBERG, P.C.

NINETY FIVE THOUSAND FIVE HUNDRED AND EIGHTY-FOUR AND 66/100 UNITED STATES D



| CHECK NUMBER | 0501D096 |
| DATE OF CHECK | 17 July 2014 |
| PAY | $**95,584.66**USD |
| CLAIM NUMBER | NEWSPC000024030 |

VOID AFTER 180 DAYS

JPMorgan Chase Bank, N.A.
6040 Tarabell Road
Syracuse, NY 13206

50-937/213

VOID IF OVER **USD95,584.66**

⑈000301009011⑈ ⑆021309379⑆  6157677990⑈

*The Secretary of State of the United States of America
hereby requests all whom it may concern to permit the citizen national
of the United States named herein to pass without delay or hindrance
and in case of need to give all lawful aid and protection.*

*Le Secrétaire d'Etat des Etats-Unis d'Amérique
prie par les présentes toutes autorités compétentes de laisser passer le citoyen
ou ressortissant des Etats-Unis titulaire du présent passeport, sans délai ni
difficulté et, en cas de besoin, de lui accorder toute aide et protection légitimes.*

*El Secretario de Estado de los Estados Unidos de América por el presente solicita a las
autoridades competentes permitir el paso del ciudadano o nacional de los Estados Unidos
aquí nombrado, sin demora ni dificultades, y en caso de necesidad, prestarle toda la
ayuda y protección lícitas.*

SIGNATURE OF BEARER/SIGNATURE DU TITULAIRE/FIRMA DEL TITULAR

**NOT VALID UNTIL SIGNED**

PASSPORT
PASSEPORT
PASAPORTE

USA

UNITED STATES OF AMERICA

Type / Type / Tipo    Code / Code / Código    Passport No. / No. du Passeport / No. de Pasaporte
P                     USA                      213375356

Surname / Nom / Apellidos
CVJETICANIN

Given names / Prénoms / Nombres
MARIJAN

Nationality / Nationalité / Nacionalidad
UNITED STATES OF AMERICA

Date of birth / Date de naissance / Fecha de nacimiento
30 Jan 1964

Sex / Sexe / Sexo    Place of birth / Lieu de naissance / Lugar de nacimiento
M                    CROATIA

Date of issue / Date de délivrance / Fecha de expedición
18 Apr 2005

Date of expiration / Date d'expiration / Fecha de caducidad
17 Apr 2015

Authority / Autorité / Autoridad
United States
Department of State

Amendments / Modifications / Enmiendas
See Page 24

P<USACVJETICANIN<<MARIJAN<<<<<<<<<<<<<<<<<<<
2133753566USA6401300M1504170<<<<<<<<<<<<08







New York State Unified Court System



## COURTS

COURTS

LITIGANTS

*Attorney Detail*

ATTORNEYS

*as of 02/17/2016*

JUDGES

JUDGES

| | |
|---|---|
| Attorney Search | |
| Attorney Registration | |
| Registered In-House Counsel Search | |
| In-House Counsel Registration | |
| Resources | |
| E-Courts | |
| Contact Us | |

Registration Number:          4768891

MARIJAN CVJETICANIN
6 LT JOHN OLSEN LN
SAINT JAMES, NY 11780-2511
United States
(Suffolk County)
(631) 584-0000

E-mail Address:                    Mcvjetican@aol.com
Year Admitted in NY:          2010
Appellate Division
Department of Admission:    2
Law School:                          NEW YORK LAW SCHOOL
Registration Status:            Currently registered
Next Registration:              Jan 2018

Disciplinary History:          No record of public discipline

CAREERS

SEARCH

[ Search Again ]

The Detail Report above contains information that has been provided by the attorney listed, with the exception of REGISTRATION STATUS, which is generated from the OCA database. Every effort is made to insure the information in the database is accurate and up-to-date.

The good standing of an attorney and/or any information regarding disciplinary actions must be confirmed with the appropriate Appellate Division Department. Information on how to contact the **Appellate Divisions** of the Supreme Court in New York is available at www.nycourts.gov/courts.

If the name of the attorney you are searching for does not appear, please try again with a different spelling. In addition, please be advised that attorneys listed in this database are listed by the name that corresponds to their name in the Appellate Division Admissions file. There are attorneys who currently use a name that differs from the name under which they were admitted. If you need additional information, please contact the NYS Office of Court Administration, Attorney Registration Unit at 212-428-2800.



# SERBIAN ORTHODOX CATHEDRAL OF ST. SAVA
# СРПСКА ПРАВОСЛАВНА САБОРНА ЦРКВА СВ. САВЕ

**16-20 WEST 26TH STREET**          NEW YORK, NY 10010-2010

Rev. Fr. Djokan Majstorović, Cathedral Dean
Website: www.stsava.org

Office: (212) 242-9240
Fax #: (212) 242-4864

March 4, 2014

       Mr. Visnjic, Mr. Cvijic, Mr. Djurdjevic, Ms. Milentijevic and Mr. Vujinovic,

       This is in response to your letter of February 19, 2014, requesting the files and documents named in your letter of January 17, 2014.

       Please be advised that the Executive Board, on its Special Meeting, made the following decision. The Church Executive Board does not have the authority to release any Church documents and/or records to any person or persons requesting them unless the Board receives such instruction from higher church bodies and authorities, ie: Diocesan Bishop, Diocesan Administrative Board or Council.

       All of the signers of your correspondence have served on the Church Executive Board or the Auditing Board of the Cathedral of St. Sava, from the years 2009 to 2012, therefore, you are all familiar with the workings of the church administration. Yet, during that period not one of you addressed your complaints on any of the Parish Assemblies.

       According to Church Laws and Regulations, the Parish Assembly, among other business prescribed for it, elects the Executive Board, the executive arm of the Assembly, which, together with the Parish Priest, conducts the administrative work of the parish for the given year. At the end of the year the Executive Board, as well as the Auditing Board, give their respective reports to the Assembly on their work during the past year. At the Assembly, members can and do ask any questions and request any explanations that they deem necessary.

       Last year, you presented written grievances to the Diocesan Authorities regarding your request for church documents for the past four years, upon which you were summoned by the Diocesan Board to a meeting to explain and clarify your issues with the St. Sava Board. Your delegation met with the Diocesan authorities, headed by the Diocesan Bishop in August 2013, and subsequently the St. Sava Church Executive Board was summoned and appeared before the same Diocesan Board. After hearing both your representatives and those of the Church Board the Diocese responded by addressing all of the issues presented to them. The Diocese made a strong appeal that we all, in Christian love and mutual respect and unity, work for the benefit of our local parish. You, too, received that rather extensive reply and appeal, yet you persist with your letters, which are harassing, threatening and disruptive to the normal functioning of the Executive Board.

       In closing, we, most sincerely, ask you to heed the call of our Diocesan Bishop and the Diocesan Bodies to join us, so that we could in mutual respect work together for the benefit of our local parish as well as for our Diocese and the church at-large. Should you disregard the plea of the Diocesan Authority and desire to proceed with your allegations please do so through our legal representative: Marijan Cvijeticanin, Esq. 6 Lt. John Olsen Lane, Saint James, NY 11780, Tel: (631) 584-0000.

       May God's blessings be with all of us during this sacred time of Holy Great Lent, that we all may fully seek to serve Him, our Lord and Savior Jesus Christ.

Nenad Milinkovic
Cathedral Executive Board President

# American Bar Association
## Business Law Section

Certifies that

## Marijan Cvjeticanin

is a Member of this Section which is dedicated to serving the public, the profession and its members by furthering the development and improvement of business law.

*Nathaniel L. Doliner, Chair*
2009-2010



**ABA** Business Law Section

AMERICAN BAR ASSOCIATION



# THE NEW YORK STATE BAR ASSOCIATION

certifies that

## Marijan   Cvjeticanin, Esq.

is a member of this Association, which, since its founding in 1876, has concerned itself with the development of the law, improvement of the administration of justice, and public education regarding the value and importance of law in everyday life.

issued March, 2010

*Patricia K. Bucklin*

Executive Director

Staffing the Ask the Experts table

**U S DOL**
**COMMITTEE**

**From:** Cora-Ann V. Pestaina <cora-ann@cyrusmehta.com>
**To:** jbarlekamp <jbarlekamp@kramerlevin.com>; ccaden <ccaden@pryorcashman.com>; lucynum2 <lucynum2@yahoo.com>; Newimmigrant <Newimmigrant@aol.com>; stdipiet <stdipiet@hotmail.com>; jessicahargis <jessicahargis@gmail.com>; AllenEKaye <AllenEKaye@nyc.rr.com>; soonamesq <soonamesq@yahoo.com>; kamalrastogiesq <kamalrastogiesq@hotmail.com>; vseckin <vseckin@seckinlaw.com>; csmith <csmith@fragomen.com>; rohit <rohit@nallaseth.com>; shavit <shavit@yardenlawgroup.com>; lhornung <lhornung@fragomen.com>
**Cc:** Amy Fallon (AFallon@Fragomen.com) <AFallon@Fragomen.com>
**Subject:** Staffing the Ask the Experts table
**Date:** Thu, Sep 22, 2011 10:34 am

Dear DOL committee members:

Below is a list of the upcoming NY AILA meetings. As discussed during our conference call on Tuesday afternoon, at least one member of the DOL committee must volunteer to sit on the *Ask the Experts* panel from 6.30 to 7.00pm before each monthly meeting. Up to two committee members can volunteer per meeting but we must be represented at each meeting. I have volunteered to sit on the panel for tonight's meeting (September 22nd). If anyone is interested in doing it with me, please so indicate. Amy Fallon will sit on the panel for the May 7, 2012 meeting and one other committee member may join her.

Kindly check your calendars and e-mail back (reply all) with the date on which you will be able to volunteer for the panel.

Here are the meeting dates:

September 22nd — Hot Topics (including CIS speaker on Transformation, I-130 centralized filing, Natz expedites for SSI beneficiaries, TPS ext for Haitians, Entrepreneur guidance, etc)
**CORA-ANN PESTAINA**

11/9/2012

October 4th (Tuesday) — Federal Practice

November 8th (Tuesday) — Ethics? Advanced Natz issues? Advanced Family issues?

TABLE 2
PANEL &
EXPERT

January 9th (Monday) — Consular and/or Border Practice

February 13th (Monday) — RFE trends and/or small business issues?

March 5th (Monday) — PERM

April 2nd (Monday) — EOIR

May 7th (Monday) — I-9 and/or other compliance issues?

# SUFFOLK COUNTY BAR ASSOCIATION
## 560 Wheeler Road
## Hauppauge, NY 11788-4357

## 2013-14 CHAIRS & COMMITTEES

|  |  | (Phone #) | (Fax #) |
|---|---|---|---|
| ncil of Committee Chairs | Managing Director Donna England<br>donnaengland2@gmail.com | 588-0250 | 588-0329 |
| rnate Dispute Resolution | Chair Stephen R. Stern<br>srstern@sterlaw.com | 393-2600 | 414-7774 |
| mal Law | Co-chair: Amy Lynn Chaitoff<br>amy@chaitofflaw.com | 265-0155 | 694-1444 |
|  | Co-chair Amanda Reilly<br>mandyriled@yahoo.com | 928-2663 | 928-2216 |
| ellate Practice | Co-chair Paula J. Warmuth<br>pjw@stim-warmuth.com | 732-2000 | 732-2662 |
|  | Co-chair Seth Weinberg<br>smweinberg@lewisjohs.com | 755-0101 | 777-0117 |
| kruptcy & Insolvency Law | Co-chair Michael S. Amato<br>mamato@rmfpc.com | 663-6517 | 663-6717 |
|  | Co-chair Leif I. Rubinstein<br>lrubinstein@tourolaw.edu | 761-7091 | 761-7089 |
| ch Bar | Co-chair William T. Ferris<br>wtferrislaw@aol.com | 234-8585 | 234-8702 |
|  | Co-chair Hon. Derrick J. Robinson<br>drobinso@courts.state.ny.us | 853-7601 | 853-5403 |
| mercial & Corporate Law | Co-chair Donald B. Smith<br>dsmith@dbsmithlaw.com | 231-2121 | 231-2120 |
|  | Co-chair Tamir Young<br>tyoung@weberlawgroup.com | 549-2000 | 549-2015 |
| demnation &<br>. Certiorari | Co-chair Randolf M. Medalie<br>fmmlaw@optonline.net | 968-7600 | 665-4293 |
|  | Co-chair John V. Terrana<br>jterrana@forchellilaw.com | 516-248-1700 | 516-248-1729 |
| nty Court | Co-chair Hon. James C. Hudson<br>jhudson@courts.state.ny.us | 852-3850 | 852-3225 |
|  | Co-chair Scott Lockwood<br>slockwoodesq@aol.com | 242-3369 | 595-1072 |
| litors' Rights Law | Co-chair David A. Loglisci<br>dloglisci@agovinoasselta.com | 248-9880 | 248-9879 |
|  | Co-chair Elliott M. Portman<br>e.portman@rttplaw.com | 475-4400 | 475-9882 |

| | | | |
|---|---|---|---|
| icial Screening | Chair Barry M. Smolowitz<br>barry@bmslaw.com | 544-0759 | 269-1140 |
| or & Employment Law | Co-chair Sima Asad Ali<br>sima.ali@alilawgroup.com | 423-3440 | 824-9028 |
| | Co-chair Troy Kessler<br>tkessler@shulmankessler.com | 499-9100 | 499-9120 |
| dlord Tenant | Co-chair: Stanley J. Somer<br>somer@somerheller.com | 462-2323 | 462-2338 |
| | Co-chair Hon. Stephen Ukeily<br>sukeiley@courts.state.ny.us | 853-4916 | 853-5405 |
| wyer Referral &<br>    Information Service | Co-chair Marc A. Kramer<br>makramer@cardiellolaw.com | 207-2500 | 207-2507 |
| wyers Helping Lawyers | Co-chair Arthur E. Olmstead<br>artolmst@optonline.net | 754-3200 | |
| | Co-chair Elaine A. Turley<br>eturley@eturleylaw.com | 406-7565 | 406-6341 |
| adership Development | Chair Patricia M. Meisenheimer<br>pmeisenheimer@bmblawllp.com | 234-8585 | 234-8702 |
| gislative Review | Chair Vincent J. Messina Jr.<br>vmessina@skmlaw.net | 650-1200 | 650-1207 |
| atrimonial & Family Law | Co-chair Francine H. Moss<br>juddmoss@optonline.net | 981-9110 | 981-9004 |
| | Co-chair Margaret Schaefler<br>mschaefler@aol.com | 236-4440 | 232-1938 |
| embership Services &<br>    Activities | Co-chair Christopher Chimeri<br>info@longislandlawyerny.com | 516-405-5204 | 516-977-3211 |
| | Co-chair Robert H. King<br>rhking28@gmail.com | 516-741-2585 | |
| litary & Veterans Affairs | Co-chair Hon. Peter H. Mayer<br>phmayer@courts.state.ny.us | 852-1760 | 852-2102 |
| | Co-chair Ted Rosenberg<br>trosenberg@lilawyer.com | 751-7900 | 751-7955 |
| unicipal Law | Chair Brian T. Egan<br>egan@egangolden.com | 447-8100 | 447-8181 |
| egligence-Defense Counsel | Co-chair Martin Glushakoff<br>mglushakoff@gmail.com | 244-9110 | 244-9110 |
| | Co-chair Daniel J. Tambasco<br>dtambasco@geico.com | 516-229-4514 | 516-229-4503 |

**Continuing Legal Education Committee**

| Lucy Cheung* (co-chair) | lucynum2@yahoo.com |
|---|---|
| Ceri Koski* (co-chair) | ceri.koski@lauradevine.com |
| Simone Archer | simone@archerharveylaw.com |
| Michael Goldstein | michaeljgoldstein@yahoo.com |
| Alexandre Moller | moller.alexandra@gmail.com |
| Gregory Pietrzak | gpietrzak@mplawusa.com |
| Oliver Qiu | oqiu@bretzlaw.com |
| Shavit Yarden | shavit@yardenlawgroup.com |

**CPC Committee**

| Stuart Reich* (co-chair) | sreich@ReichImmigration.com |
|---|---|
| Roxanne Levine* (co-chair) | rlevine@tarterkrinsky.com |
| Sarah Anstey | sanstey@fragomen.com |
| Betsy Arias | betsyarias@hotmail.com |
| Marijan Cvjeticanin | marijan@wildesweinberg.com |
| Stephanie DiPietro | stdipiet@hotmail.com |
| Ivan Gilbert | ivan.gilbert@wg-law.com |
| Rio Guerrero | RIO@GUERREROYEE.COM |
| Poonam Gupta | pgupta@whitecase.com |
| Kate Kalmykov | kalmykovk@gtlaw.com |
| David Katona | dkatona@katonamir.com |
| Ceridwen Koski | ceri.koski@lauradevine.com |
| Remzi Kulen | kulen@kulenlaw.com |
| Alice Leung | aliceleung_ca@yahoo.ca |
| Maria Lopotukhin | ml@andrewfairlaw.com |
| Barbara Macina | bmacina@mplawusa.com |
| Gayle Oshrin | goshrin@wkgj.com |
| Philippe Radley | pradley@randrose.com |
| Sophie Raven | sraven@ssbb.com |
| Olivia Sanson | osanson@ssbb.com |
| Mami Terai | terai@terailaw.com |
| Rohit Turkhud | rohit@nallaseth.com |

PLEASE REVIEW AND RETURN IMMEDIATELY
VIA EMAIL abapresidentelect@americanbar.org OR FAX (312) 988-5100 TO:
OFFICE OF THE PRESIDENT
AMERICAN BAR ASSOCIATION
321 N. Clark Street
Chicago, Illinois 60654
FY 2013-2014
APPOINTMENTS

Please indicate your acceptance of the appointment and the terms on this form by checking the appropriate box and signing below. Immediate return ensures inclusion in the ABA Redbook.

I ACCEPT

I DECLINE

SIGNATURE

COMMITTEE NAME: Central European and Eurasian Law Initiative Council

(Please provide corrections and fill in missing information. This information will be included in the Redbook)

Name                Marijan Cvjeticanin
Organization
Optional
Address             6 Lt John Olsen Ln
City, State, Zip    Saint James, NY 11780-2511
Country
Telephone           (631) 584-0000
Fax                 (631) 584-0044
Email               mcvjetican@aol.com
ABA ID              01288615

Demographic Information:

| Gender | **X** Male | Practice Type | **X** Solo Practitioner | / / Government |
| | / / Female | | / / Corporate law dept. | / / Other |
| | | | / / Judiciary | |
| Ethnicity | / / African-American | | / / Firm of 2-5 lawyers | |
| | / / Asian/ Pacific | | / / Firm of 6-9 lawyers | |
| | **X** Caucasian | | / / Firm of 10 or more | |
| | / / Hispanic | | / / Law School | |
| | / / Native American | | / / Legal service agency | |
| | / / Other | | / / Military | |

Federal law requires us to inform you that the value of volunteer services is not deductible as a charitable contribution for federal income tax purposes.

In consideration of your appointment, you hereby grant exclusively to the ABA any copyright rights you may have for any written or audio-visual presentation resulting from your ABA-related efforts.

By accepting this leadership appointment, you agree that the ABA's Business Conduct Standards (http://ambar.org/ababcs) ("BCS") govern your conduct as an ABA member and leader when you are engaged in ABA activities. You have read and agree to comply with the BCS.

## RIDER TO CONTRACT OF SALE

**SELLER:**       JAMES R. ORMOND, SURVIVING TENANT BY THE ENTIRETY
                  OF HELEN ORMOND

**PURCHASERS:**   MARIJAN CVJETICANIN AND KATHY CVJETICANIN

**PREMISES:**     6 Lt. John Olsen Lane, St. James, New York 11780

**DATED:**        December    , 2004

---

1.  The Purchaser acknowledges that he has inspected the premises and agrees to take the same in "AS IS" condition. The Sellers have not made and do not make any representations as to the physical condition, income, expense, operation or any other matter of any kind affecting or relating to the aforesaid premises, except as herein specifically set forth and the Purchaser agrees that only the representations contained herein shall be binding upon the Sellers. The Sellers are not liable or responsible or in any way bound by any verbal or written statements, representations, real estate broker's "set-ups" or information pertaining to the above premises furnished by any real estate broker, agent employee, servant or other person unless the same are specifically set forth herein. Sellers represent that the plumbing, heating, electrical systems and all appliances will be in working order and the roof free of leaks at the time of Closing. Sellers' liability per appliance is limited to $400.00. The Sellers are not required to make any repairs to the premises and the personal property located therein prior to or following the closing of title, except to comply with the above representations.

2.  The Premises are to be sold and conveyed:

> **SUBJECT** to any state of facts which an accurate survey may show provided same do not render title unmarketable.

> **SUBJECT** to covenants, restrictions, agreements, and utility easements of record, if any, provided same are not violated by the present use, nor render title unmarketable.

> **SUBJECT** to building and zoning regulations and ordinances of the city, town or village in which the premises lie which are not violated by existing structures or the present use thereof as a one family dwelling.

3.  The Purchaser's down payment herein shall be held in escrow by the Seller's attorney in an attorney's Iola non interest bearing account at HSBC Bank Smithtown, New York until closing of title, or Purchaser's default, (at which time said monies shall be turned over to the Sellers), or Purchaser's inability to secure a mortgage after proof of diligent efforts or other termination of this

1

contract in accordance with the terms set forth herein (at which time said monies shall be returned to the Purchaser). The down payment made herein is accepted by Sellers subject to collection. If this check is not honored, Purchaser shall provide a certified or bank check as a replacement within 72 hours after demand for replacement. Notwithstanding the foregoing, if for any reason whatsoever the check given by the Purchaser as the down payment hereunder is dishonored, Sellers shall have the right to cancel this Contract. Sellers' election to cancel shall not be deemed a waiver by Sellers of their rights to pursue other remedies.

4. This contract is subject to and conditioned upon the Purchasers at their own cost and expense, obtaining a conventional, *$315,000* or adjustable mortgage in the sum of ~~THREE HUNDRED THIRTY FIVE THOUSAND FIVE HUNDRED DOLLARS ($335,500.00)~~ for a term of 25/30 years, with interest at the prevailing rate at closing of title.

The Purchasers agree to make a prompt, diligent, truthful and proper application to a lending institution* for said mortgage. Purchasers represent that there are no judgments or liens of any kind against them and that they have not filed for bankruptcy within the past ten (10) years. In the event the Purchasers are unable to obtain a mortgage commitment as aforesaid within 45 days ~~from the date of this contract~~, then and in that event, upon written notification of either party to the other and the return of the down payment, ~~less $250.00 for the preparation of this contract,~~ deposited hereunder to the Purchasers herein, this contract shall be considered null and void with no further liabilities upon either side. The Sellers shall have the option to extend Purchasers' time within which to obtain a mortgage commitment. For the purpose of this Contract, a mortgage commitment obtained from a lending institution shall be considered firm regardless of any condition that the Purchasers must sell and close title on other real property which the Purchasers presently own prior to closing on the above premises.

*Buyers' need was a un-signed contract*

In the event the Purchasers obtain a mortgage commitment as aforesaid, Purchasers agree to send a copy of said mortgage commitment to Sellers' attorney within said 45 day period or extension period and to keep said commitment in effect until closing of title *within 30 days of the Contract date in Paragraph 7.*

5. The purchaser agrees to order a title inspection report within ~~ten~~ (30) days of receipt of a fully executed Contract. ~~In the event that the report of a reputable title company shows objections and exceptions, the Purchaser shall, at least fifteen (15) days prior to the date set for closing, give written notice of such defects or objections to title to the Sellers' attorney and~~ Sellers shall have the right at Sellers' option, to cure the defect or objections in title within thirty (30) days from the date such *title report* ~~notice~~ is received and the date for the closing of title shall be adjourned accordingly.

*any of title sort shall be deemed ace of exceptions objections*

(a) If the Sellers should be unable to convey a good and marketable title subject to and in accordance with this Contract,

2

*# Lending institution shall be deemed to include mortgage broker, funding company or other lender*

*[handwritten right margin top: expend up to $1000 to cure same. If in excess of $1000, Seller may]*

the sole obligation of the Sellers shall be to ~~refund the~~ *expend up to $1000* refund the Purchaser's down payment hereunder and ~~to~~ reimburse the Purchaser for the cost of title examination.

*[handwritten: in excess of $1000]*

    (b) The Sellers shall not be required to bring any action or proceeding or otherwise incur any expense to render the title to the premises marketable. The Purchaser may, nevertheless, accept such title as the Sellers may be able to convey, without reduction of the Purchase Price or any allowance or credit against the same and without any other liability on the part of the Sellers.

    (c) The term "cost of title examination" is defined for the purpose of this Contract as the expense actually incurred by the Purchaser for title examination, in no event, however, to exceed the net amount which would be charged by a title company in the county where the property is located for title examination of the property without issuance of the policy.

    6. The delivery and acceptance of the Deed at the closing of title shall be deemed to constitute full compliance by the Sellers with the terms, covenants and conditions of this Contract on the Sellers' part to be performed and none of the terms of this Contract except those specifically stated to survive delivery of the Deed shall survive the title closing or possession whichever is later.

    7. The Purchaser shall have the right at his own cost and expense to have the premises inspected for the purpose of determining the existence of active termite or wood-boring insect infestation and damage. In the event such active infestation or damage is found, a copy of the report issued by the inspection company shall be mailed to the Sellers' attorney within FIFTEEN (15) DAYS from the date ~~thereof.~~ Upon receipt of such notice, the Sellers may do one of the following: (a) treat the active condition and damage at his own cost and expense, ~~in which event the~~ Purchasers agree to consummate this transaction pursuant to the further terms hereof; or (b) credit the Purchaser for the cost of treating such condition, in which event the Purchaser agrees to consummate this transaction pursuant to the further terms hereof; or (c) terminate this contract by refunding the sums paid hereunder by the Purchaser. Notice of Sellers' intent to exercise any option aforesaid shall be served upon the Purchaser's attorney within FIFTEEN (15) DAYS after receipt of the inspection report. In the event the Purchaser shall fail to have the premises inspected or fail to serve said written notice postmarked no later than FIFTEEN (15) DAYS from the date ~~hereof,~~ the Purchaser shall be deemed to have waived the provisions of this paragraph and this contract shall remain in full force and effect.

*[handwritten left margin: Buyers' attorney receives a signed contract]*
*[handwritten left margin: subject to Lender's approval]*
*[handwritten right margin: and provide Buyers with a one year written guaranty of the treatment by a licensed exterminator]*
*[handwritten: receipt of a fully signed contract by Purchasers' attorney]*

    8. The Sellers may, at the their option, remain in possession of the premises for a period not exceeding FIVE (5) DAYS after the closing of title, provided that upon the closing of title the Sellers' deposit with their attorney in escrow the sum of $2,000.00 to guarantee delivery of the premises vacant within said period, with the understanding that the sum of $200.00 per day shall be

*[handwritten: plus adjustments]*
*[handwritten bottom: and in satisfactory condition]*

3

*three (3) business days after the*

paid to Purchaser for each day Seller's remain in possession after said period. Said escrow agreement shall not deprive the Purchaser of any legal or equitable remedies for obtaining possession in the event of Sellers' failure to vacate said premises after said FIVE (5) DAY period. The escrowee is hereby authorized to make payment to the Purchaser hereinabove agreed. ~~Upon~~ Sellers vacating the premises, the escrowee shall pay any balance remaining from said escrow agreement over to the Sellers. This paragraph shall survive the closing of title and delivery of deed. *and Seller* *provided Buyers have not given objection to release of the funds.*

9. Purchaser represents and warrants that PRUDENTIAL DOUGLAS ELLIMAN REALTY AND COACH REALTORS brought about the within transaction and agree that the purchase price herein has been fixed and this contract is executed by the Sellers in reliance upon such warranty; and Purchaser further covenants and agrees to defend, indemnify and hold the Sellers free of and harmless from any and all liability, expense, claims, actions, demands or damages for brokerage commissions due by reason of the Purchaser's acts, except for the commissions due to the brokers, if any, above named. This clause shall survive the delivery of the deed. The Brokerage commissions due the above named brokers shall be paid by Seller's as per separate agreement between the Sellers and such brokers.

10. INTENTIONALLY OMITTED.

11. In connection with any litigation arising out of this contract, the prevailing party shall be entitled to recover all costs incurred, including reasonable attorney's fees.

12. The undersigned parties do hereby acknowledge that they are represented by counsel and accordingly do hereby waive any and all rights they may have under <u>General Obligations Law</u> Sec. 5-702, more commonly known as "The Plain Language Law", counsel having explained all contract provisions to their respective clients.

13. Sellers hereby agree that in order to comply with Section 378 Subdivision 5 of the Executive Law, which requires the installation of single station smoke detecting devices in one and two-family dwellings prior to sale, that if no operable smoke detecting devices are presently installed at the premises, such devices will be installed no later than ten (10) days prior to the date of closing, and that Sellers will provide the Purchaser with an opportunity to inspect such devices within ten (10) days prior to closing in order to confirm that the said devices are operable. If said devices are not operable, Sellers agree to have same operable at the time of closing. Sellers make no representations nor assume any responsibility regarding the smoke detectors after closing or possession.

14. In compliance with Section 6045 of the Internal Revenue Code, as amended by the Tax Reform Act of 1986, Purchaser and Sellers will provide their names, addresses, Social Security

Numbers and/or Federal I.D. Numbers. Purchaser and Seller hereby certifies that the names and addresses on this contract are accurate and further certify that their Social Security Numbers and/or Federal I.D. Numbers are accurate as noted below.

15. The Purchaser acknowledges that he has the right to a set of heating or cooling bills or a summary of such bills for the proceeding two (2) year period, pursuant to the Truth in Heating law (Energy Law section 17-103). Purchaser hereby waives his right to such bills or summary and acknowledge that they have not requested them in connection with this transaction.

16. Upon the transfer or return of the deposit monies to the Sellers or Purchaser respectively, by the Escrow Agent or the making of the payment provided for in the event of default, all parties shall be released from all further obligations under this Agreement. Alternatively, in the event of a dispute between the parties regarding the escrow, the Escrow Agent shall have the right, at any time on written notice to the parties, to deposit the sums with a court of competent jurisdiction and be relieved of all liability hereunder. The parties acknowledge that the Escrow Agent shall not be liable to either of the parties for any act or omission on its part unless taken or suffered in bad faith, in willful disregard of this Agreement or involving gross negligence.

The Sellers and Purchaser shall jointly and severally indemnify and hold the Escrow Agent harmless from and against all costs, claims and expenses, including reasonable attorneys' fees, incurred in connection with performance of the Escrow Agent's duties hereunder, except with respect to actions or omissions taken or suffered by the Escrow Agent in bad faith, in willful disregard of the Agreement or involving gross negligence on the part of the Escrow Agent.

17. At or prior to closing of title, the Sellers will:

    (a) Deliver the premises vacant and broom swept clean, free of any residue or equipment not specifically included in this sale and free of all occupancies or claims to occupancy: and

    (b) Deliver a Certificate of Occupancy covering all improvements, presently existing on the premises except shed, decks or if the buildings on the premises were erected and/or constructed prior to the effective date of the commencing of the procedure for the issuing of Certificates of Occupancy in the municipality wherein the premises lie, the Sellers shall deliver proof thereof to the Purchaser.

5

(c)   Notwithstanding anything contained herein to the contrary, should the Sellers: (i) not be able to deliver the aforedescribed certificates or letter, or ii) should the reasonable cost to obtain same exceed $500.00, including the cost of any municipal charges, architectural or other fees and the reasonable cost of construction, alteration or demolition, or (iii) if same cannot reasonably be obtained within sixty (60) days of the proposed closing date set forth herein, or (iv) should a variance or rezoning application be required, then in any such event, either party shall have the right to cancel this Contract except as to (ii) which shall be at Sellers' sole option, whereupon Purchaser's down payment shall be forthwith returned.

18.  Anything to the contrary herein notwithstanding, the Sellers shall not be required to comply with any notice or notices of violations of law or municipal ordinances, orders or requirements, noted in or issued by the Departments of Building, Fire, Labor, Health, or other State or Municipal Departments having jurisdiction against or affecting the premises, if the reasonable cost of curing such violations shall exceed FIVE HUNDRED DOLLARS ($500.00). If such reasonable cost shall exceed FIVE HUNDRED DOLLARS ($500.00) and Sellers shall elect not to cure same, Sellers shall notify Purchaser and Purchaser shall have the right at their option to either take title without abatement of the purchase price or to rescind the contract and obtain a refund of any money previously paid hereunder.

19. All notices or consents required or permitted to be given under this contract shall be given in writing and addressed as follows:

    If to Seller:       Adam A. Minella, P.C.
                        199 East Main Street
                        Smithtown, New York  11787

    If to Purchaser:    Caryn Chambers, Esq.
                        53 Oak Street
                        Smithtown, New York 11787

20.  If Purchaser's lending institution has an office for closing mortgages within the counties of Suffolk or Nassau, the closing shall take place within either of said counties. In the event that the Purchaser chooses a lender who will only close outside the aforementioned counties, the Purchaser agrees to reimburse the Sellers for the additional legal fees paid to its attorney as follows:

In the event a fully executed disclosure statement is attached hereto, it is understood and agreed that the same is being furnished without warranty of any nature. This disclosure is not a substitute for professional testing, Seller(s) and Purchaser's hereby agree notwithstanding the provisions of said act that this is an "AS IS" sale, subject only to the express representations set forth in rider paragraph one (1) of the contract, which representations shall not survive the closing or delivery of possession, if given later.

In the event a fully executed disclosure statement is not attached or previously provided to the Buyer(s), it is acknowledged, agreed and understood that the Seller(s) has elected not to provide same and shall give the purchaser a $500.00 credit at the time of closing/transfer of title against the agreed upon price. Upon receipt of such credit, the buyer shall not be entitled to make any claim whatsoever based upon failure to provide the written disclosure statement and all representations of any nature shall terminate upon closing of title or delivery of possession (whichever is later) unless there is a separate written understanding executed by both parties to the contrary. Seller(s) sole liability in connection with said disclosure shall be limited to $500.00 penalty provided by said Act. This provision shall survive closing.

26. In the event there is a conflict between the printed form of contract and this rider, the terms of the rider shall control.

_____

JAMES R. ORMOND
Seller

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
Social Security Number

_____

MARIJAN CVJETICANIN
Purchaser

578 19 8401
Social Security Number

_____

KATHY CVJETICANIN
Purchaser  CVJETICANIN

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
Social Security Number

8

**LEAD-BASED PAINT INSPECTION CONTINGENCY AND DISCLOSURE**
**ADDENDUM TO CONTRACT OF SALE**

This Addendum is made a part of the agreement (Contract of Sale) dated December  , 2004 between **JAMES R. ORMOND** (Seller) and **MARIJAN CVJETICANIN AND KATHY CVJETICANIN** (Purchasers), for the property located 6 Lt. John Olsen Lane, St. James, New York 11780

*In the event any provision of this Addendum*
*conflicts in whole or in part with the terms of the*
*Contract of Sale, the provisions of this Addendum shall control.*

1.   **Lead Warning Statement.**  EVERY PURCHASER OF ANY INTEREST IN RESIDENTIAL REAL PROPERTY ON WHICH A RESIDENTIAL DWELLING WAS BUILT PRIOR TO 1978 IS NOTIFIED THAT SUCH PROPERTY MAY PRESENT EXPOSURE TO LEAD FROM LEAD-BASED PAINT THAT MAY PLACE YOUNG CHILDREN AT RISK OF DEVELOPING LEAD POISONING. LEAD POISONING IN YOUNG CHILDREN MAY PRODUCE PERMANENT NEUROLOGICAL DAMAGE, INCLUDING LEARNING DISABILITIES, REDUCED INTELLIGENCE QUOTIENT, BEHAVIORAL PROBLEMS, AND IMPAIRED MEMORY.  LEAD POISONING ALSO POSES A PARTICULAR RISK TO PREGNANT WOMEN.  THE SELLER OF ANY INTEREST IN RESIDENTIAL REAL PROPERTY IS REQUIRED TO PROVIDE THE BUYER WITH ANY INFORMATION ON LEAD-BASED PAINT HAZARDS FROM RISK ASSESSMENTS OR INSPECTIONS IN THE SELLER'S POSSESSION AND NOTIFY THE BUYER OF ANY KNOWN LEAD-BASED PAINT HAZARDS, A RISK ASSESSMENT OR INSPECTION FOR POSSIBLE LEAD-BASED PAINT HAZARDS IS RECOMMENDED PRIOR TO PURCHASE.

2.   **Seller's Disclosure (Seller initial).**
_____   (a)   Presence of lead-based paint and/or lead-based paint hazards (check one below):
(i) _____ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

_____

(ii) __✓__ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

_____   (b)   Records and reports available to the Seller (check one below)
(i) _____ Seller has provided the Purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

_____
_____

(ii) __✓__ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

3.   **Lead-based Paint Inspection Contingency.**  If the property was constructed prior to 1978 and includes a residential dwelling  designated as

"target housing" by EPA regulations at 40 CFR section 745.103, then the Contract of Sale is made contingent upon Purchaser's right to undertake a risk assessment or inspection of the property for the presence of lead-based paint and/or lead-based paint hazards at Purchaser's expense.  Purchaser elects the following (check one below):

_____ Purchaser waives the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

_____ Within TEN (10) days after the effective date of the Contract of Sale, Purchaser may have the property inspected for the presence of lead-based paint or lead-based paint hazards, including undertaking a risk assessment.  If lead-based paint or lead-based paint hazards are present, purchaser may terminate the Contract of Sale by giving Seller written notice TWELVE (12) days after the effective date of the Contract of Sale.

4. **Purchaser's Acknowledgment** (Purchaser initial)
   _____ (a)  Purchaser has received copies of all information listed above.
   _____ (b)  Purchaser has received the pamphlet **PROTECT YOUR FAMILY FROM LEAD IN YOUR HOME.**

5. **Agent's Acknowledgment** (Agent initial)
   _____ Agent has informed Seller or Seller's obligations under 42 U.S.C. section 4852d and is aware of his/her responsibility to ensure compliance.

6.  **Certificate of Accuracy.**  The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

_____
JAMES R. ORMOND        Date
Seller

_____ 12/20/04
MARIJAN CVJETICANIN    Date
Purchaser

~~KATHY CVJETICANIN~~   Date
Purchaser

TOGETHER with an easement of ingress and egress in and to the str
in front of said premises to the nearest public highway; exceptin
and reserving the fee in and to said streets, same being reserved
for dedication purposes to the municipal authorities having juris
diction thereof.

SUBJECT to a mortgage held by The Dime Savings Bank of New York

THE WITHIN deed has been made and delivered in the regular cours
business actually conducted by the grantor herein.

Together with the appurtenances and all the estate
rights of the party of the first part in and to said premises; To Have And To Hold the premises herein granted unt
party of the second part, the heirs or successors and assigns of the party of the second part forever.

And the party of the first part covenants that the party of the first part has not done or suffered anything wheret
said premises have been encumbered in any way whatever, except as aforesaid.
And the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of th
part will receive the consideration for this conveyance and will hold the right to receive such consideration as t
fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to th
ment of the cost of the improvement before using any part of the total of the same for any other purpose.
The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

In Witness Whereof, the party of the first part has duly executed this deed the day and year first above w

In Presence Of:

ARON HOMES, INC.

By _Aron Grichman_
President

REAL ESTATE
TRANSFER TAX
Dept. of
Taxation
& Finance    P.B. 10345

STATE OF
NEW YORK
= 11.00 =
DEC 12'73

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT—THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY.

LIBER **7549** PAGE **577**

This Indenture, made the 3ʳᵈ day of December , nineteen hundred and seventy-three,

Between

ARON HOMES, INC., a domestic Corporation having an office at 1262 Suffolk Avenue, Brentwood, New York 11717,

party of the first part, and

JAMES R. ORMOND and HELEN ORMOND, his wife, both residing at 165 Lake Avenue, Nesconset, New York 11767,

party of the second part,

Witnesseth, that the party of the first part, in consideration of Ten Dollars and other valuable consideration paid the party of the second part, does hereby grant and release unto the party of the second part, the heirs or success and assigns of the party of the second part forever,

All that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying a being in the Town of Smithtown, County of Suffolk and State of New York known and designated as Lot No. 12, on a certain map entitled, "P of Per-Dak Woods", and filed in the Office of the Clerk of the C of Suffolk on December 20, 1968 as Map No. 5231.

TOGETHER with an easement of ingress and egress in and to the st in front of said premises to the nearest public highway; excepti and reserving the fee in and to said streets, same being reserve for dedication purposes to the municipal authorities having juri diction thereof.

SUBJECT to a mortgage held by The Dime Savings Bank of New York

THE WITHIN deed has been made and delivered in the regular cours business actually conducted by the grantor herein.

~~Together with all right, title and interest, if any, of the party of the first part in and to any streets and roads abu~~ ~~the above described premises to the center lines thereof;~~ Together with the appurtenances and all the estate rights of the party of the first part in and to said premises; To Have And To Hold the premises herein granted unt party of the second part, the heirs or successors and assigns of the party of the second part forever.

And the party of the first part covenants that the party of the first part has not done or suffered anything whereb said premises have been encumbered in any way whatever, except as aforesaid.

And the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of th part will receive the consideration for this conveyance and will hold the right to receive such consideration fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to p ment of the cost of the improvement before using any part of the total of the same for any other purpose.

The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so require

transferred and set over unto _____
and said assignee hereby assumes all obligations of the purchaser thereunder.

Dated,

19

_____

Pu:

_____

Assignee of Pu

**PREMISES**

Section
Block
Lot
County or Town
Street Numbered Address

TITLE NO. _____

To:

RETURN BY MAIL TO:

Distributed by

Nations Title Insurance of New York Inc.

Zip No.

ar also
ans Plural:

24. Any singular word or term herein shall also be read as in the plural whenever the sense of this contract may r

See rider to contract annexed hereto and made a part hereof.

In Presence Of:

_____
JAMES R. ORMOND

_____
MARIJAN CVJETICANIN

Katica _____
Kathy CVJETICANIN

Closing of title under the within contract is hereby adjourned to

at        o'clock, at                                    ; title to be closed and all adjustments to
as of                                    19
Dated ,                                  19
For value received, the within contract and all the right, title and interest of the purchaser thereunder are hereby a
transferred and set over unto
and said assignee hereby assumes all obligations of the purchaser thereunder.
Dated,                                   19

_____
                                                                                            Pu

_____
                                                                            Assignee of Pu

PREMISES

TITLE NO.
                                          Section
                                          Block
                                          Lot
                                          County or Town
                                          Street Numbered Address

To:

RETURN BY MAIL TO:

Distributed by

If CLOSING shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the rate for the preceding period applied to the latest assessed valuation.

Any errors or omissions in computing apportionments at CLOSING shall be corrected. This provision shall CLOSING.

**Water Meter Readings:**

14. If there be a water meter on the PREMISES, SELLER shall furnish a reading to a date not more than thirty da CLOSING date and the unfixed meter charge and sewer rent, if any, shall be apportioned on the basis of such last

**Allowance for Unpaid Taxes, etc.:**

15. SELLER has the option to credit PURCHASER as an adjustment of the purchase price with the amoun unpaid taxes, assessments, water charges and sewer rents, together with any interest and penalities thereon to a less than five business days after CLOSING, provided that official bills therefore computed to said date are pr CLOSING.

**Use of Purchase Price to Pay Encumbrances:**

16. If there is anything else affecting the sale which SELLER is obligated to pay and discharge at CLOSING, S may use any portion of the balance of the purchase price to discharge it. As an alternative, SELLER may depos with the title insurance company employed by PURCHASER required by it to assure its discharge, but only i insurance company will insure PURCHASER'S title clear of the matter or insure against its enforcement o PREMISES. Upon request made within a reasonable time before CLOSING, PURCHASER agrees to provide certified checks as requested to assist in clearing up these matters.

**Affidavit as to Judgments, Bankruptcies:**

17. If a title examination discloses judgements, bankruptcies or other returns against persons having names th or similar to that of SELLER, SELLER shall deliver a satisfactory detailed affidavit at CLOSING showing tha not against SELLER.

**Deed Transfer and Recording Taxes:**

18. At CLOSING, SELLER shall deliver a certified check payable to the order of the appropriate State, City o officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or recor deed, together with any required tax return. PURCHASER agrees to duly complete the tax return and to check(s) and the tax return to be delivered to the appropriate officer promptly after CLOSING.

**Purchaser's Lien:**

19. All money paid on account of this contract, and the reasonable expenses of examination of the title to the P and of any survey and survey inspection charges are hereby made liens on the PREMISES and collectable PREMISES. Such liens shall not continue after default in performance of the contract by PURCHASER.

**Seller's Inability to convey and Limitation of Liability:**

20. If SELLER is unable to transfer title to PURCHASER in accordance with this contract, SELLER'S so shall be to refund all money paid on account of this contract, plus all charges made for: (i) examining the ti appropriate additional searches made in accordance with this contract, and (iii) survey and survey inspectic Upon such refund and payment this contract shall be considered cancelled, and neither SELLER nor PUF shall have any further rights against the other.

**Condition of Property:**

21. PURCHASER has inspected the buildings on the PREMISES and the personal property included in thi thoroughly acquainted with their condition. PURCHASER agrees to purchase them "as is" and in th condition subject to reasonable use, wear, tear, and natural deterioration between now and CLOSING. PU shall have the right, after reasonable notice to SELLER, to inspect them before CLOSING, and again upon delivery of possession

**Entire Agreement:**

22. All prior understandings and agreements between SELLER and PURCHASER are merged in this completely expresses their full agreement. It has been entered into after full investigation, neither party relyin statements made by anyone else that are not set forth in this contract.

Mortgage executed by the holder of each EXISTING MORTGAGE, in form for recording, certifying the amo
unpaid principal and interest, date of maturity, and rate of interest.

SELLER shall pay the fees for recording such certificate. If the holder of a mortgage is a bank or other inst
defined in Section 274-a, Real Property Law, it may, instead of the certificate, furnish an unqualified letter dated
than thirty (30) days before CLOSING containing the same information. SELLER hereby states that any E
MORTGAGE will not be in default at the time of CLOSING.

**Compliance with State and Municipal Department Violations and Orders:**

11. a. SELLER will comply with all notes or notices of violations of law or municipal ordinances, *of Closing*
requirements noted in or issued by any governmental department having authority as to lands, housing, build
health and labor conditions affecting the PREMISES at the date ~~hereof~~. The PREMISES shall be transferred fr
at CLOSING and this provision shall survive CLOSING. SELLER shall furnish PURCHASER with any auth
necessary to make the searches that could disclose these matters.

**Omit if the Property is not in the City of New York:**

~~b. All obligations affecting the PREMISES, incurred pursuant to the Administrative Code of the City of N~~
~~prior to CLOSING and payable in money shall be discharged by SELLER at CLOSING. This provision sha~~
~~CLOSING.~~

**Installment Assessment:**

12. If at the time of CLOSING the PREMISES are affected by an assessment which is or may become payable i
installments, and the first installment is then a lien, or has been paid, then for the purposes of this contract all th
installments shall be considered due and are to be paid by SELLER at CLOSING.

**Apportionments:**

13. The following are to be apportioned as of midnight of the day before the day of CLOSING/ *or posses*
(a) Rents as and when collected. (b) Interest on EXISTING MORTGAGES(S). (c) Premiums on existing tra
insurance policies and renewals of those expiring prior to CLOSING. (d) Taxes, water charges and sewer ren
basis of the fiscal period for which assessed. (e) Fuel, if any. (f) Vault charges, if any. (g) *Buyers perdiem m*

If CLOSING shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of th
rate for the preceding period applied to the latest assessed valuation.

Any errors or omissions in computing apportionments at CLOSING shall be corrected. This provision sha
CLOSING.

**Water Meter Readings:**

14. If there be a water meter on the PREMISES, SELLER shall furnish a reading to a date not more than thirty d
CLOSING date and the unfixed meter charge and sewer rent, if any, shall be apportioned on the basis of such las

**Allowance for Unpaid Taxes, etc.:**

15. SELLER has the option to credit PURCHASER as an adjustment of the purchase price with the amou
unpaid taxes, assessments, water charges and sewer rents, together with any interest and penalties thereon to a
less than five business days after CLOSING, provided that official bills therefore computed to said date are pr
CLOSING.

**Use of Purchase Price to Pay Encumbrances:**

16. If there is anything else affecting the sale which SELLER is obligated to pay and discharge at CLOSING,
may use any portion of the balance of the purchase price to discharge it. As an alternative, SELLER may depo
with the title insurance company employed by PURCHASER required by it to assure its discharge, but only i
insurance company will insure PURCHASER'S title clear of the matter or insure against its enforcement c
PREMISES. Upon request made within a reasonable time before CLOSING, PURCHASER agrees to provide
certified checks as requested to assist in clearing up these matters.

**Affidavit as to Judgments, Bankruptcies:**

17. If a title examination discloses judgements, bankruptcies or other returns against persons having names th
or similar to that of SELLER, SELLER shall deliver a satisfactory detailed affidavit at CLOSING showing tha
not against SELLER.

**Deed Transfer and Recording Taxes:**

18. At CLOSING, SELLER shall deliver a ~~certified~~ check payable to the order of the appropriate State, City o
officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or record
deed, together with any required tax return. PURCHASER agrees to duly complete the tax return and to
check(s) and the tax return to be delivered to the appropriate officer promptly after CLOSING.

**Purchaser's Lien:**

19. All money paid on account of this contract, and the reasonable expenses of examination of the title to the Pl
and of any survey and survey inspection charges are hereby made liens on the PREMISES and collectable
PREMISES. Such liens shall not continue after default in performance of the contract by PURCHASER.

**Seller's Inability to convey and Limitation of**

20. If SELLER is unable to transfer title to PURCHASER in accordance with this contract, SELLER'S sol
shall be to refund all money paid on account of this contract, plus all charges made for: (i) examining the titl
appropriate additional searches made in accordance with this contract, and (iii) survey and survey inspectio

b. Good certified check drawn on a banking institution in the State of New York, payable to the order of SELLER, in the presence
PURCHASER and duly endorsed by PURCHASER (if an individual), in the presenc
SELLER or SELLER'S attorney.

c. Money other than the purchase price, payable to SELLER at CLOSING, may be by check of PURCHASER (
the amount of   **Five Hundred**                                                           ($ 500.00                ) dolla
d. As otherwise agreed to in writing by SELLER or SELLER'S attorney.

4. The PREMISES are to be transferred subject to:

a. Laws and governmental regulations that affect the use and maintenance of the PREMISES, provided that th
not violated by the buildings and improvements erected on the PREMISES.

b. Consents for the erection of any structures on, under or above any streets on which the PREMISES abut.

c. Encroachments of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway.

5. SELLER shall give and PURCHASER shall accept such title as **any reputable title compa**
**which is** , a member
New York Board of Title Underwriters will be willing to approve and insure in accordance with their standard
title policy, subject only to the matters provided for in this contract.

6. "CLOSING" means the settlement of the obligations of SELLER and PURCHASER to each other un
contract, including the payment of the purchase price to SELLER, and the delivery to PURCHASER of a ba
**and sale deed with covenants** deed in proper statutory form for recording so as to
full ownership (fee simple title) to the PREMISES, free of all encumbrances except as herein stated. The deed will
a covenant by SELLER as required by Section 13 of the Lien Law.
If SELLER is a corporation, it will deliver to PURCHASER at the time of CLOSING (a) a resolution of its
Directors authorizing the sale and delivery of the deed, and (b) a certificate by the Secretary or Assistant Secret
corporation certifying such resolution and setting forth facts showing that the transfer is in conformity
requirements of Section 909 of the Business Corporation Law. The deed in such case shall contain a recital sul
establish compliance with that section.

7. CLOSING will take place at the office of **Adam A. Minella, P.C. or lending inst**
at **11:00 A.M.** o'clock on **or about March 1. 2005** ✱
8. PURCHASER hereby states that PURCHASER has not dealt with any broker in connection with this
than **Prudential Douglas Elliman Realty and Coach Realtors**
and SELLER agrees to pay the broker the commission earned thereby (pursuant to separate agreement).

9. This sale includes all of SELLER'S ownership and rights, if any, in any land lying in the bed of any street o
opened or proposed, in front of or adjoining the PREMISES to the center line thereof. It also includes a
SELLER to any unpaid award by reason of any taking by condemnation and/or for any damage to the PR
reason of change of grade of any street or highway. SELLER will deliver at no additional cost to PURC
CLOSING, or thereafter, on demand, any documents which PURCHASER may require to collect the
damages.

✱ Either party may adjourn this date for up to 3
days. If any party does not close title by
April 1, 2005, they shall pay the other party
$100 per day for each day thereafter
or until the contract is cancelled pursuant to the terms here

*Margin labels:*
Acceptable Funds:
"Subject to" Provisions:
Title Company Approval:
Closing Defined And Form of Deed:
Closing Date and Place:
Broker:
Streets and Assignment of Unpaid Awards:

and that it will remain subject to the prior lien of any EXISTING MORTGAGE even though the EXISTING MORTG
is extended or modified in good faith. The Purchase Money Note and Mortgage shall be drawn on the standard fo
New York Board of Title Underwriters by the attorney for SELLER. PURCHASER shall pay the mortgage recordi
recording fees and the attorney's fee in the amount of $                                   for its prepar

    c. If any required payments are made on an EXISTING MORTGAGE between now and CLOSING which
the unpaid principal amount of an EXISTING MORTGAGE below the amount shown in paragraph 2, then the ba
of the price payable at CLOSING will be adjusted. SELLER agrees that the amount shown in Paragraph 2 is reaso
correct and that only payments required by the EXISTING MORTGAGE will be made.

    d. If there is a mortgage escrow account that is maintained for the purpose of paying taxes or insurance, etc. SE
shall assign it to PURCHASER, if it can be assigned. In that event PURCHASER shall pay the amount in the
account to SELLER at CLOSING.

2. The PREMISES will be conveyed subject to the continuing lien of "EXISTING MORTGAGES(S)" as follo

*Existing*
*Mortgage(s):*

Mortgage now in the unpaid principal amount of $                    and interest at the rate of      pe
year, presently payable          in installments of $                , which include pri
interest,          and with any balance of principal being due and payable on

SELLER hereby states that no EXISTING MORTGAGE contains any provision that permits the holder of the m
to require its immediate payment in full or to change any other term thereof by reason of the fact of CLOSIN

3. All money payable under this contract unless otherwise specified, shall be either:

    a. Cash, but not over one thousand ($1,000.00) Dollars,

    b. Good certified check of PURCHASER, or official check of any bank, savings bank, trust company, or savi

*Acceptable*
*Funds:*

loan association having a banking office in the State of New York, payable to the order of SELLER, or to the
PURCHASER and duly endorsed by PURCHASER (if an individual) to the order of SELLER in the pres
SELLER or SELLER'S attorney.

    c. Money other than the purchase price, payable to SELLER at CLOSING, may be by check of PURCHASE
the amount of     Five Hundred                          ($ 500.00          ) do
    d. As otherwise agreed to in writing by SELLER or SELLER'S attorney.

4. The PREMISES are to be transferred subject to:

    a. Laws and governmental regulations that affect the use and maintenance of the PREMISES, provided tha

*"Subject to"*
*Provisions:*

not violated by the buildings and improvements erected on the PREMISES.

    b. Consents for the erection of any structures on, under or above any streets on which the PREMISES abu

    c. Encroachments of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway.

*Title*
*Company*
*Approval:*

5. SELLER shall give and PURCHASER shall accept such title as    any reputable title comp
                                                                    which is          , a memb
New York Board of Title Underwriters will be willing to approve and insure in accordance with their standar
title policy, subject only to the matters provided for in this contract.

*Closing*
*Defined*
*And*
*Form of*
*Deed:*

6. "CLOSING" means the settlement of the obligations of SELLER and PURCHASER to each other
contract, including the payment of the purchase price to SELLER, and the delivery to PURCHASER of a
   and sale deed with covenants          deed in proper statutory form for recording so a
full ownership (fee simple title) to the PREMISES, free of all encumbrances except as herein stated. The deed w
a covenant by SELLER as required by Section 13 of the Lien Law.

If SELLER is a corporation, it will deliver to PURCHASER at the time of CLOSING (a) a resolution of i
Directors authorizing the sale and delivery of the deed, and (b) a certificate by the Secretary or Assistant Secr
corporation certifying such resolution and setting forth facts showing that the transfer is in conformit
requirements of Section 909 of the Business Corporation Law. The deed in such case shall contain a recital s
establish compliance with that section.

*Closing*

7. CLOSING will take place at the office of Adam A. Minella, P.C. or lending ins

Together with **SELLER'S** interest, if any, in streets and unpaid awards as set forth in Paragraph 9.

*Personal Property:*

The sale also includes all fixtures and articles of personal property attached to or used in connection with the **PREM** unless specifically excluded below. **SELLER** states that they are paid for and owned by **SELLER** free and clear of a other than the **EXISTING MORTGAGE(S)**. They include but are not limited to plumbing, heating, lighti cooking fixtures, bathroom and kitchen cabinets, mantels, door mirrors, venetian blinds, shades, screens, awning: windows, window boxes, storm doors, mail boxes, weather vanes, flagpoles, pumps, shrubbery, fencing, statuary, tool sheds, dishwashers, washing machines, clothes dryers, garbage disposal units, ranges, refrig freezers, air conditioning equipment and installations, and wall to wall carpeting.

Excluded from this sale are:

Furniture and household furnishings,

Dining Room Chandelier and Kitchen Chadelier to be replaced with builders standard fixtures.

$ 595,000.

*Purchase Price:*

1. a. The purchase price is

payable as follows:                                                                $ 30,000

On the signing of this contract, by check subject to collection:              $

By allowance for the principal amount still unpaid on **EXISTING MORTGAGE(S)**:   $

By a Purchase Money Note and Mortgage from **PURCHASER** (or assigns) to **SELLER**:   $565,000

**BALANCE AT CLOSING:**

NO REPRESENTATION IS MADE THAT THIS FORM OF CONTRACT FOR THE SALE AND PURCHA
REAL ESTATE COMPLIES WITH SECTION 5-702 OF THE GENERAL OBLIGATIONS LAW ("I
ENGLISH"). CONSULT YOUR LAWYER BEFORE SIGNING IT.

**NOTE: FIRE AND CASUALTY LOSSES:**
This contract form does not provide for what happens in the event of fire or casualty loss before the title closing.
different provision is made in this contract, Section 5-1311 of the General Obligations Law will apply. One part
law makes a purchaser responsible for fire and casualty loss upon taking of title to or possession of the premis

**CONTRACT OF SALE** made as of the _29th_ day of December, 2004                     , 19
BETWEEN

*Date:*
*Parties:*

> JAMES R. ORMOND, as surviving tenant by the entirety of
> HELEN ORMOND
> Address:   6 Lt. John Olsen Lane, St. James, New York 11780

hereinafter called "**SELLER**", who agrees to sell;

and

> MARIJAN CVJETICANIN AND KATICA CVJETICANIN,
>
> 21-57 Hazen Street, Ste. 1, Flushing New York 11370
> Address:

hereinafter called "**PURCHASER**", who agrees to buy:

*Premises:*

The property, including all buildings and improvements thereon (the "**PREMISES**") (more fully descrit
separate page marked "Schedule A") and also known as:

Street Address:   6 Lt. John Olsen Lane, St. James, New York 11780

Tax Map Designation: Dist: 800 Sect: 58 Blk: 4 Lot: 24

Together with **SELLER'S** interest, if any, in streets and unpaid awards as set forth in Paragraph 9.

*Personal*
*Property:*

The sale also includes all fixtures and articles of personal property attached to or used in connection with the P.
unless specifically excluded below. **SELLER** states that they are paid for and owned by **SELLER** free and clear
other than the **EXISTING MORTGAGE(S)**. They include but are not limited to plumbing, heating, lig
cooking fixtures, bathroom and kitchen cabinets, mantels, door mirrors, venetian blinds, shades, screens, awn
windows, window boxes, storm doors, mail boxes, weather vanes, flagpoles, pumps, shrubbery, fencin
statuary, tool sheds, dishwashers, washing machines, clothes dryers, garbage disposal units, ranges, re
freezers, air conditioning equipment and installations, and wall to wall carpeting.

Excluded from this sale are:
> Furniture and household furnishings,
>
> Dining Room Chandelier and Kitchen Chadelier to be replaced
> with builders standard fixtures.

$595,00

I. a. The purchase price is

HAMLET OF
St. James, NY

Date:    September 08, 2006
Permit No : 119421

# BUILDING DEPARTMENT
## TOWN OF SMITHTOWN
### 99 WEST MAIN STREET
### SMITHTOWN, NEW YORK 11787
### SUFFOLK COUNTY

# CERTIFICATE OF ZONING
# CERTIFICATE OF OCCUPANCY

This certifies that the:         Residential Basement Conversion

located at the         south side of Lt. John A. Olsen Lane

Map of  Per-Dak Woods @ Smithtow    Block:                Lot(s): 12

S.C.T.M.# 0800            89-058.000-0004-024.000      Zone:  R-21

Electrical Certificate:        SBEI 2899

Conforms substantially with the terms and requirements of the New York State Uniform Fire
Prevention and Building Code and the Town of Smithtown Zoning Ordinance, as amended to date,
and may be permitted to be used and/or occupied as a:
  Finished basement 739 sqft. with electric and plumbing to a one family dwelling.

Subject to the following conditions:

Owner:  Marijan & Katica,        6 Lt. John A. Olsen Lane           St. James, NY 11780
        Cvjeticanin

[Not Valid Without Raised Seal]        Signed    _Robt X. Banuta._

CHIEF BUILDING OFFICIAL

The building or any part thereof shall not be used for any purpose other than for which it is certified. Certificate will be null and void if the
use and / or building is changed or altered in any manner or additions are made thereto without authorization from the Building Department.



# TOWN OF SMITHTOWN

Assessor's Office

## Certificate of Assessment

**Supervisor**
Patrick R. Vecchio
**Town Council**
Thomas J. McCarthy
Joanne Gray
Edward R. Wehrheim
Patricia Biancaniello

**Cvjeticanin, Marijan/Katica**

6 Lt John A Olsen Ln
St James, NY  11780

Neighborhood: **Smithtown School district**

Location: **6 Lt John A Olsen Ln**

**Pursuant to Local Law #2 1997 - Town of Smithtown, Suffolk County, N.Y.**

INCREASE IN ASSESSMENT DUE TO INGROUND POOL. FIREPLACE, AND CENTRAL AIR CONDIONTING....

Building Permit No: **119421**     Building Permit No2: **120924**     Property Type: **210**

**Current Suffolk County Tax Map No.:**
District **0800**     Section: **058.00**     Block **04.00**     Lot: **024.000**

| | | |
|---|---|---|
| 1. **Current Tax Rate**:** | $1,664.676 |
| 2. **Prior Assessed Value:** | 7065 |
| 3. **Estimated Assessed Increase:** | 900 |
| 4. **New Assessment effective 12/1/2007** | 7965 |
| 5. **Estimated Taxes**:** | $13,259.14 |
| 6. **Garbage Fees:**** | $217.00 |
| 7. **Estimated Total Taxes**:** | $13,476.14 |

**Note:**     **Tax Rates and Estimated Taxes based on Dec. 1, 2005
Does not include exemptions you may have.

The present tax year commences December 1st and ends the following November 30th. Tax rates usually change on December 1st, so the above information is only a guide and subject to change. All Assessments are annually subject to change and/or review in accordance with the Suffolk County Tax Act and the Real Property Tax Law of the State of New York. Final assessments should be checked after May 1st.

Dated: _9/6/06_
**Not Valid Unless Signed**

**TOWN OF SMITHTOWN
Suffolk County, New York**

Gregory W. Hild, Sole Assessor

# OWNER'S POLICY OF TITLE INSURANCE

Issued by **Lawyers Title Insurance Corporation**



**LandAmerica**
**Lawyers Title**

*Lawyers Title Insurance Corporation is a member of the LandAmerica family of title insurance underwriters.*

**POLICY NUMBER**

C29-0236987

Any notice of claim and any other notice or statement in writing required to be given to the Company under this Policy must be given to the Company at the address shown in Section 18 of the Conditions.

**COVERED RISKS**

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, LAWYERS TITLE INSURANCE CORPORATION, a Nebraska corporation (the "Company") insures, as of Date of Policy and, to the extent stated in Covered Risks 9 and 10, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1. Title being vested other than as stated in Schedule A.
2. Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from
   (a) A defect in the Title caused by
      (i) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;
      (ii) failure of any person or Entity to have authorized a transfer or conveyance;
      (iii) a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;
      (iv) failure to perform those acts necessary to create a document by electronic means authorized by law;
      (v) a document executed under a falsified, expired, or otherwise invalid power of attorney;
      (vi) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or
      (vii) a defective judicial or administrative proceeding.
   (b) The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.
   (c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.
3. Unmarketable Title.
4. No right of access to and from the Land.
5. The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (a) the occupancy, use, or enjoyment of the Land;
   (b) the character, dimensions, or location of any improvement erected on the Land;
   (c) the subdivision of land; or
   (d) environmental protection
   if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.
6. An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.
7. The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.
8. Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.
9. Title being vested other than as stated in Schedule A or being defective
   (a) as a result of the avoidance in whole or in part, or from a court order providing an alternative remedy, of a transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction vesting Title as shown in Schedule A because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws; or
   (b) because the instrument of transfer vesting Title as shown in Schedule A constitutes a preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws by reason of the failure of its recording in the Public Records
      (i) to be timely, or
      (ii) to impart notice of its existence to a purchaser for value or to a judgment or lien creditor.
10. Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 9 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.

**IN WITNESS WHEREOF,** the Company has caused this Policy to be signed with the facsimile signatures of its President and Secretary and sealed as required by its By-Laws.

**LAWYERS TITLE INSURANCE CORPORATION**

Attest:

Secretary



SEAL

By:

President

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2008103000568001001E6439

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 8 |
|---|---|

| Document ID: 2008103000568001 | Document Date: 10-28-2008 | Preparation Date: 10-30-2008 |
|---|---|---|

Document Type: DEED
Document Page Count: 6

| PRESENTER: | RETURN TO: |
|---|---|
| BIG APPLE ABSTRACT CORP.--BA31511(EG) | MARIJAN CVJETICANIN |
| PICK UP -DOM | KATICA CVJETICANIN |
| 42-40 BELL BOULEVARD | 1425 BROADWAY, UNIT 2F |
| BAYSIDE, NY 11361 | ASTORIA, NY 11101 |
| 718-428-6100 | |
| jackl@bigappleabstract.com | |

### PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| QUEENS | 531 | 1002 | Entire Lot | 2F | 1425 BROADWAY |

Property Type: SINGLE RESIDENTIAL CONDO UNIT

### CROSS REFERENCE DATA

CRFN_____ or Document ID_____ or _____ Year ____ Reel ___ Page ____ or File Number_____

### PARTIES

| GRANTOR/SELLER: | GRANTEE/BUYER: |
|---|---|
| 1425 BROADWAY, LLC | MARIJAN CVJETICANIN |
| 214 GROSVENOR STREET | 1425 BROADWAY, UNIT 2F |
| DOUGLASTON, NY 11363 | ASTORIA, NY 11101 |

☒ Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 75.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 3,244.80 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 1,298.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 67.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2008103000568001001SAAB8

| SUPPORTING DOCUMENT COVER PAGE | PAGE 1 OF 1 |
|---|---|

**Document ID:** 2008103000568001     Document Date: 10-28-2008     Preparation Date: 10-30-2008
**Document Type:** DEED

**ASSOCIATED TAX FORM ID:** 2008102200323

**SUPPORTING DOCUMENTS SUBMITTED:**

Page Count

RP - 5217 REAL PROPERTY TRANSFER REPORT                                                2

**REAL PROPERTY TRANSFER REPORT**
STATE OF NEW YORK
STATE BOARD OF REAL PROPERTY SERVICES
**RP - 5217NYC**
(Rev 11/2002)

FOR CITY USE ONLY
C1. County Code
C2. Date Deed Recorded ___ Month / Day / Year
C3. Book OR
C4. Page
C5. CRFN

**PROPERTY INFORMATION**

1. Property Location: 1425 (STREET NUMBER) BROADWAY 2F (STREET NAME) QUEENS (BOROUGH) 11106 (ZIP CODE)

2. Buyer Name: CVJETICANIN (LAST NAME/COMPANY) MARIJAN (FIRST NAME)
CVJETICANIN (LAST NAME/COMPANY) KATICA (FIRST NAME)

3. Tax Billing Address: Indicate where future Tax Bills are to be sent if other than buyer address (at bottom of form)
LAST NAME / COMPANY   FIRST NAME
STREET NUMBER AND STREET NAME   CITY OR TOWN   STATE   ZIP CODE

4. Indicate the number of Assessment Roll parcels transferred on the deed: 1 # of Parcels OR ☐ Part of a Parcel
4A. Planning Board Approval - N/A for NYC
4B. Agricultural District Notice - N/A for NYC

5. Deed Property Size: FRONT FEET X DEPTH OR ACRES

Check the boxes below as they apply:
6. Ownership Type is Condominium ✓
7. New Construction on Vacant Land ☐

8. Seller Name: 1425 BROADWAY, LLC (LAST NAME/COMPANY)   FIRST NAME
LAST NAME / COMPANY   FIRST NAME

9. Check the box below which most accurately describes the use of the property at the time of sale:
A ✓ One Family Residential
B ☐ 2 or 3 Family Residential
C ☐ Residential Vacant Land
D ☐ Non-Residential Vacant Land
E ☐ Commercial
F ☐ Apartment
G ☐ Entertainment / Amusement
H ☐ Community Service
I ☐ Industrial
☐ Public Service

**SALE INFORMATION**

10. Sale Contract Date: 6 / 26 / 2008 (Month/Day/Year)

11. Date of Sale / Transfer: 10 / 28 / 2008 (Month/Day/Year)

12. Full Sale Price $ 3,244,80
( Full Sale Price is the total amount paid for the property including personal property. This payment may be in the form of cash, other property or goods, or the assumption of mortgages or other obligations.) Please round to the nearest whole dollar amount.

13. Indicate the value of personal property included in the sale:

14. Check one or more of these conditions as applicable to transfer:
A ☐ Sale Between Relatives or Former Relatives
B ☐ Sale Between Related Companies or Partners in Business
C ☐ One of the Buyers is also a Seller
D ☐ Buyer or Seller is Government Agency or Lending Institution
E ☐ Deed Type not Warranty or Bargain and Sale (Specify Below)
F ☐ Sale of Fractional or Less than Fee Interest ( Specify Below )
G ☐ Significant Change in Property Between Taxable Status and Sale Dates
H ☐ Sale of Business is Included in Sale Price
I ☐ Other Unusual Factors Affecting Sale Price ( Specify Below )
J ✓ None

**ASSESSMENT INFORMATION - Data should reflect the latest Final Assessment Roll and Tax Bill**

15. Building Class: R, 4
16. Total Assessed Value (of all parcels in transfer):

17. Borough, Block and Lot / Roll Identifier(s) ( If more than three, attach sheet with additional identifier(s) )
QUEENS 531 1002

**CERTIFICATION**   I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and I understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments.

BUYER
BUYER SIGNATURE   DATE
STREET NUMBER   STREET NAME (AFTER SALE)
CITY OR TOWN   STATE   ZIP CODE

BUYER'S ATTORNEY
LAST NAME   FIRST NAME
718 (AREA CODE)   204-2929 (TELEPHONE NUMBER)
SELLER
SELLER SIGNATURE   DATE

2008102200323201



**CERTIFICATION** | I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments.

| BUYER | | | BUYER'S ATTORNEY | | |
|---|---|---|---|---|---|
| BUYER SIGNATURE | | DATE | LAST NAME | | FIRST NAME |
| | | | 718 | 204-2929 | |
| STREET NUMBER | STREET NAME (AFTER SALE) | | AREA CODE | TELEPHONE NUMBER | |
| | | | | SELLER | |
| CITY OR TOWN | STATE | ZIP CODE | SELLER SIGNATURE | | DATE |

2008102200323201

 **Federal Bureau of Prisons**

# U.S. Medical Center for Federal Prisons
1900 W. Sunshine Street
Springfield, MO 65807
417-874-1621

126/75

*** Sensitive But Unclassified ***

| Name CVJETICANIN, MARIJAN | Facility FCI Danbury | Collected 08/31/2016 06:51 |
|---|---|---|
| Reg # 65437-050 | Order Unit J04    SPG Unit | Received 09/01/2016 11:24 |
| DOB 01/30/1964 | Provider Cesar Villa, MLP | Reported 09/01/2016 15:10 |
| Sex    M | | LIS ID    211161001 |

## HEMOGLOBIN A1C

| Hemoglobin A1C | H | 6.9 | <5.7 | % |
|---|---|---|---|---|

5.7 - 6.4 Increased Risk
> 6.4 Diabetes

---

**FLAG LEGEND**    L=Low    Ll=Low Critical    H=High    H!=High Critical    A=Abnormal    Al =Abnormal Critical



Federal
Bureau of
Prisons

# U.S. Medical Center for Federal Prisons
1900 W. Sunshine Street
Springfield, MO 65807
417-874-1621

*** Sensitive But Unclassified ***

| Name CVJETICANIN, MARIJAN | Facility MDC Brooklyn | Collected 04/25/2016 13:27 |
|---|---|---|
| Reg # 65437-050 | Order Unit        SPG Unit | Received 04/26/2016 11:07 |
| DOB 01/30/1964 | Provider Michael Borecky, MD | Reported 04/26/2016 13:47 |
| Sex M | | LIS ID      117161325 |

| CHEMISTRY | | | | |
|---|---|---|---|---|
| Sodium | | 142 | 137-148 | mmol/L |
| Potassium | | 4.5 | 3.5-5.0 | mmol/L |
| Chloride | | 105 | 99-114 | mmol/L |
| CO2 | | 22 | 22-30 | mmol/L |
| BUN | | 17 | 7-22 | mg/dL |
| Creatinine | | 0.66 | 0.66-1.25 | mg/dL |
| eGFR (IDMS) | | >60 | | |

GFR units measured as mL/min/1.73 m^2. If African American multiply by 1.210.
A calculated GFR <60 suggests chronic kidney disease if found over a 3 month period.

| | | | | |
|---|---|---|---|---|
| Calcium | | 9.1 | 8.5-10.9 | mg/dL |
| Glucose | H | 181 | 70-110 | mg/dL |
| AST | | 25 | 11-55 | U/L |
| ALT | | 37 | 11-66 | U/L |
| Alkaline Phosphatase | | 77 | 41-133 | U/L |
| Bilirubin, Total | | 0.8 | 0.2-1.3 | mg/dL |
| Total Protein | | 6.5 | 6.0-8.2 | g/dL |
| Albumin | | 3.8 | 3.6-5.1 | g/dL |
| Globulin | | 2.7 | 2.0-3.7 | g/dL |
| Alb/Glob Ratio | | 1.40 | 1.00-2.30 | |
| Anion Gap | | 15.1 | 9.0-19.0 | |
| BUN/Creat Ratio | | 25.4 | 5.0-30.0 | |
| GGT | | 42 | 10-78 | U/L |
| Bilirubin, Unconjugated | | 0.4 | 0.0-1.1 | mg/dL |
| Bilirubin, Conjugated | | 0.0 | 0.0-0.3 | mg/dL |
| Cholesterol | | 153 | <200 | mg/dL |
| Triglycerides | H | 193 | 10-150 | mg/dL |
| HDL Cholesterol | L | 33 | 40-60 | mg/dL |
| LDL Cholesterol (calc) | | 81 | 0-130 | mg/dL |
| Chol/HDL Ratio | H | 4.6 | 0.0-4.0 | |

| SPECIAL CHEMISTRY | | | | |
|---|---|---|---|---|
| TSH | | 0.769 | 0.465-4.680 | uIU/mL |

| HEMATOLOGY | | | | |
|---|---|---|---|---|
| WBC | | 6.1 | 4.3-11.1 | K/uL |
| RBC | L | 4.42 | 4.46-5.78 | M/uL |
| Hemoglobin | L | 13.4 | 13.6-17.6 | g/dL |

**FLAG LEGEND**    L=Low   Ll=Low Critical   H=High   Hl=High Critical   A=Abnormal   Al =Abnormal Critical



Federal
Bureau of
Prisons

# U.S. Medical Center for Federal Prisons
1900 W. Sunshine Street
Springfield, MO 65807
417-874-1621

*** Sensitive But Unclassified ***

| Name | CVJETICANIN, MARIJAN | Facility | MDC Brooklyn | | Collected | 04/25/2016 13:27 |
|------|----------------------|----------|--------------|--|-----------|-------------------|
| Reg # | 65437-050 | Order Unit | | SPG Unit | Received | 04/26/2016 11:07 |
| DOB | 01/30/1964 | Provider | Michael Borecky, MD | | Reported | 04/26/2016 13:47 |
| Sex | M | | | | LIS ID | 117161325 |

## HEMATOLOGY

| | | | | |
|------|---|------|------------|------|
| Hematocrit | | 40.8 | 40.2-51.4 | % |
| MCV | | 92.3 | 82.5-96.5 | fL |
| MCH | | 30.3 | 27.1-34.9 | pg |
| MCHC | L | 32.8 | 33.0-35.0 | g/dL |
| RDW | | 12.9 | 12.0-14.0 | % |
| Platelet | | 233 | 130-374 | K/uL |
| MPV | | 9.6 | 6.9-10.5 | fL |
| Neutrophils % | | 58.9 | | % |

Therapeutic decision making should be based on absolute values, rather than percentages

| | | | | |
|------|---|------|------------|------|
| Lymphocytes % | | 30.3 | | % |
| Monocytes % | | 6.0 | | % |
| Eosinophils % | | 4.4 | | % |
| Basophils % | | 0.4 | | % |
| Neutrophils # | | 3.6 | 1.9-6.7 | K/uL |
| Lymphocytes # | | 1.9 | 1.3-3.7 | K/uL |
| Monocytes # | | 0.4 | 0.3-1.1 | K/uL |
| Eosinophils # | | 0.3 | 0.0-0.5 | K/uL |
| Basophils # | | 0.0 | 0.0-0.1 | K/uL |

## HEMOGLOBIN A1C

| | | | | |
|------|---|------|------|------|
| Hemoglobin A1C | H | 6.8 | <5.7 | % |

5.7 - 6.4 Increased Risk
> 6.4 Diabetes

---

FLAG LEGEND    L=Low   Ll=Low Critical   H=High   Hl=High Critical   A=Abnormal   Al =Abnormal Critical